## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

1. **Lisa Tran, LLC, an Oklahoma limited liability company,**
2. **Splash, LLC, an Oklahoma limited liability company,**
3. **Dense Farms, LLC, an Oklahoma limited liability company,**
4. **Craft Buds, LLC, an Oklahoma limited liability company,**
5. **918 Boys Ranch, LLC, an Oklahoma limited liability company,**
6. **108 Star, LLC, an Oklahoma limited liability company,**
7. **Ozark Growers, LLC, an Oklahoma limited liability company,**
8. **At Joy Growers, an Oklahoma limited liability company,**
9. **Richard Dopp, an individual,**
10. **Apogee Extracts, an Oklahoma limited liability company,**
11. **One World Tree, an Oklahoma limited liability company,**
12. **Cimarron Syndicate Genetics, an Oklahoma limited liability company,**
13. **Slab Labz, an Oklahoma limited liability company, and**
14. **Plasma Green, Inc.**

**Plaintiffs,**

**vs.**

**Case No.: 25-cv-00512-CDL**

1. **State of Oklahoma ex rel. Oklahoma Medical Marijuana Authority,**
2. **Oklahoma Bureau of Narcotics and Dangerous Drugs,**
3. **Oklahoma State Fire Marshall,**
4. **G. Keith Bryant, Oklahoma State Fire Marshall,**
5. **Governor Kevin Stitt,**
6. **Adria Berry, individually and in her official capacity as Director of the Oklahoma Medical Marijuana Authority,**
7. **Donnie Anderson, individually, and in his official capacity Executive Director of the**

**OBNDD,**
8. **Oklahoma Attorney General's Office,**

**Defendants.**

## FIRST AMENDED MASS ACTION CIVIL RIGHTS COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, AND MONETARY DAMAGES

Plaintiffs, by and through their attorney of record identified below, on behalf of themselves, all similarly situated, bring this mass action lawsuit against all Defendants. In support of their Complaint, Plaintiffs allege and state as follows:

## I.     INTRODUCTION

1. This action arises from the State of Oklahoma's coordinated campaign to suppress and destabilize its medical marijuana industry through unconstitutional residency requirements, protectionist surety-bond mandates, and an inter-agency scheme of administrative obstruction, including arbitrary delays in processing certificates of occupancy ("COs"), pretextual rejections, and license suspensions based on issues wholly created by the State of Oklahoma.

2. Plaintiffs are each licensed medical marijuana operators who invested millions of dollars in reliance on the regulatory framework created by State Question 788 (2018) and its implementing legislation. They now face extinction not through market forces, but through unlawful state action.

3. Oklahoma's statutory and regulatory framework violates the Dormant Commerce Clause and the Equal Protection Clause by imposing durational residency requirements and discriminatory bond obligations.

4. In parallel, Defendants Oklahoma Medical Marijuana Authority ("OMMA"), Oklahoma Bureau of Narcotics and Dangerous Drugs ("OBNDD"), and the State Fire Marshal

engaged in a coordinated pattern of delay and obstruction, refusing to process license renewals due to the absence of Certificates of Occupancy ("COs"), despite knowing that such delays were caused by the State Fire Marshal's backlog and understaffing.

5.  Additionally, the State Fire Marshal processes medical marijuana COs outside of its regular receipt and processing structure, segregating medical marijuana business licenses from other business licenses, and then processing them last or behind non-marijuana business applications. This segregation results in processing times for medical marijuana COs extending 6-12 months longer than for non-marijuana businesses.

6.  These practices evidence unconstitutional animus toward the medical marijuana industry, imposing burdens not applied to comparable regulated industries in Oklahoma and serving no legitimate health or safety objective.

7.  Additionally, Defendants specifically targeted Defendants, and those like Defendants, on the basis of their age, race, and/or sex in violation of 42 U.S.C. § 1983 et seq.

8.  Plaintiffs seek declaratory and injunctive relief halting these unconstitutional and arbitrary practices, as well as monetary damages under 42 U.S.C. § 1983 for the substantial harm inflicted by Defendants' coordinated misconduct.

## II.   JURISDICTION AND VENUE

9.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), and 28 U.S.C. § 1332(d)(11) (mass action jurisdiction under the Class Action Fairness Act, as the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and minimal diversity exists between plaintiffs and defendants). Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202. Supplemental jurisdiction over state-law claims exists under 28 U.S.C. § 1367.9.  Venue is proper in the

Northern District of Oklahoma pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to the claims, including the operation of many of Plaintiffs' businesses and the economic damages suffered, occurred in this District, notwithstanding that certain Defendants maintain offices in other districts of the State of Oklahoma.

### III.    PARTIES

10.    Plaintiffs are individuals and/or business entities engaged in the lawful cultivation, processing, and/or sale of medical marijuana in Oklahoma. Each Plaintiff timely applied for CO approval, had a lawful excuse for any delay in filing, if applicable, submitted statutorily permitted attestations, and suffered direct harm from Defendants' unconstitutional statutory scheme and unlawful administrative practices, including loss of licenses and income due to suspensions, ongoing threats of raids and closure, costs of surety bonds, attorney fees defending frivolous administrative actions, loss of ability to attract out-of-state investment, and denial of due process in administrative enforcement proceedings, as detailed in Section IV.B.

11.    Plaintiff Lisa Tran, LLC is an Oklahoma limited liability company lawfully engaged in the medical marijuana business in the State of Oklahoma and licensed by Defendants Oklahoma Medical Marijuana Authority (hereinafter "OMMA") and Oklahoma Bureau of Narcotics (hereinafter "OBN").

12.    Plaintiff Splash, LLC is an Oklahoma limited liability company lawfully engaged in the medical marijuana business in the State of Oklahoma and licensed by Defendants OMMA and OBN.

13.    Plaintiff Dense Farms, LLC is an Oklahoma limited liability company lawfully engaged in the medical marijuana business in the State of Oklahoma and licensed by Defendants OMMA and OBN.

14.    Plaintiff Craft Buds, LLC is an Oklahoma limited liability company lawfully engaged in the medical marijuana business in the State of Oklahoma and licensed by Defendants OMMA and OBN.

15.    Plaintiff 918 Boys Ranch, LLC is an Oklahoma limited liability company lawfully engaged in the medical marijuana business in the State of Oklahoma and licensed by Defendants OMMA and OBN.

16.    Plaintiff 108 Star, LLC is an Oklahoma limited liability company lawfully engaged in the medical marijuana business in the State of Oklahoma and licensed by Defendants OMMA and OBN.

17.    Plaintiff Ozark Growers, LLC is an Oklahoma limited liability company lawfully engaged in the medical marijuana business in the State of Oklahoma and licensed by Defendants OMMA and OBN.

18.    Plaintiff At Joy Growers, LLC is an Oklahoma limited liability company lawfully engaged in the medical marijuana business in the State of Oklahoma and licensed by Defendants OMMA and OBN.

19.    Plaintiff Richard Dopp is an individual licensed to cultivate medical marijuana in the State of Oklahoma by Defendants OMMA and OBN.

20.    Plaintiff Apogee Extracts, LLC is an Oklahoma limited liability company lawfully engaged in the medical marijuana business in the State of Oklahoma and licensed by Defendants OMMA and OBN.

21.    Plaintiff One World Tree, LLC is an Oklahoma limited liability company lawfully engaged in the medical marijuana business in the State of Oklahoma and licensed by Defendants OMMA and OBN.

22.    Plaintiff Cimarron Syndicate Genetics, LLC is an Oklahoma limited liability company lawfully engaged in the medical marijuana business in the State of Oklahoma and licensed by Defendants OMMA and OBN.

23.    Plaintiff Slab Labz, LLC is an Oklahoma limited liability company lawfully engaged in the medical marijuana business in the State of Oklahoma and licensed by Defendants OMMA and OBN.

24.    Plaintiff Plasma Green, Inc. is an Oklahoma corporation lawfully engaged in the medical marijuana business in the State of Oklahoma and licensed by Defendants OMMA and OBN.

25.    Defendant Adria Berry is the Executive Director of OMMA, responsible for enforcing the challenged provisions and practices, and is sued in her official and individual capacity.

26.    Defendant Donnie Anderson is the Executive Director of OBNDD, responsible for enforcing the challenged provisions and practices, including administrative actions based on CO delays, and is sued in his official and individual capacity.

27.    Defendant Oklahoma State Fire Marshal is responsible for processing CO applications and contributing to delays affecting medical marijuana businesses.

28.    Defendant Keith Bryant is the Oklahoma State Fire Marshal, responsible for processing CO applications and contributing to delays affecting medical marijuana businesses, and is sued in his official capacity.

29.     Defendant Kevin Stitt is the Governor and chief executive officer of the State, responsible for overseeing enforcement of state laws, including the crackdown initiatives, and is sued in his official capacity.

30.     Defendant Oklahoma Medical Marijuana Authority is the state agency responsible for administering and enforcing the medical marijuana licensing regime, including the challenged provisions and coordinated practices, and is sued for prospective injunctive and declaratory relief.

31.     Defendant Oklahoma Bureau of Narcotics and Dangerous Drugs is the state agency responsible for enforcing the challenged provisions and practices, including administrative actions based on CO delays and "straw ownership" accusations, and is sued for prospective injunctive and declaratory relief.

32.     Defendant Oklahoma Attorney General is responsible for defending and enforcing the challenged laws and overseeing enforcement through the Attorney General's task force on illegal marijuana operations, established in June 2025, and is served a copy of this suit in his official capacity for notice purposes.

## IV.     FACTUAL ALLEGATIONS

### A. General Allegations

33.     On June 26, 2018, Oklahoma voters approved State Question 788, legalizing medical marijuana and establishing an initial regulatory framework, including residency requirements for commercial licenses.

34.     The measure was codified in Title 63 O.S. §§ 420 et seq., requiring commercial licensees to be Oklahoma residents and limiting non-resident ownership.

35.     Subsequent amendments, including the Oklahoma Medical Marijuana and Patient Protection Act (HB 2612, 2019), refined definitions but retained residency mandates.

36.     In 2023, Senate Bill 913 amended 63 O.S. § 427.14 to require commercial growers to obtain and submit a $50,000 surety bond unless the licensee owned the premises for at least five years. This bond, ostensibly for reclamation, imposes a discriminatory burden on recent owners and serves as a proxy for residency restrictions.

37.     OMMA administers business licensing under 63 O.S. § 427.14. Subsection (E)(12) defines state residency for license applicants as at least two years immediately preceding the application date or five years of continuous residency during the previous twenty-five years, requiring documentation such as a driver's license, utility bill, deed, or rental agreement. Applicants licensed prior to August 30, 2019, are exempt from this durational requirement.

38.     Section 427.14(E) further requires entity applicants to demonstrate that no less than seventy-five percent (75%) of owners or controlling persons are Oklahoma residents, tethering licensure to in-state residency of a super-majority.

39.    For commercial growers, § 427.14(E)(16) incorporates § 427.26's bond requirement. OAC
       442:10-5-3.3 implements this by compelling each grower to either (a) maintain a surety
       bond of at least $50,000 per license covering the permit area, or (b) submit an attestation
       proving five-year ownership.

40.    The bond/five-year ownership rule imposes recurring costs on new entrants and those
       without long-term ownership, while exempting incumbents. Plaintiffs and similarly
       situated operators incurred substantial premiums solely due to this unlawful mandate.

41.    The residency mandates and bond rule distort Oklahoma's medical marijuana market by
       privileging long-term residents and landholders while disadvantaging out-of-state
       participants, recent purchasers, and lessees. These provisions are protectionist, impose
       durational criteria disapproved in *Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 139
       S. Ct. 2449 (2019), and fail rational-basis review, as the State can achieve public-health
       goals through neutral alternatives like background checks and inspections.

42.    Beginning in 2022 and intensifying through 2025, the State engaged in a widespread
       crackdown on medical marijuana businesses, both legal and illegal, under Governor Stitt's
       directives since 2022 to address "out-of-control" operations. This includes a moratorium
       on new licenses extended to 2026, enhanced enforcement via OBNDD's Marijuana
       Enforcement Teams, resulting in a 40% decline in licensed businesses from mid-2024 to
       mid-2025 (from approximately 8,000 to 3,000 growers), with over 3,000 licenses expired
       or revoked in 2024 alone and more than 6,000 farms shut down by OBNDD through
       enforcement or administrative actions by mid-2025.

43.    In 2023–2024, Oklahoma required all marijuana businesses to submit applications for a
       Certificate of Occupancy from the State Fire Marshal by February 1, 2024. The deadline

was impossible to meet for many due to a statewide shortage of engineers and architects needed for compliance certifications, leading to widespread administrative limbo as the Fire Marshal could not process applications timely.

44.    Recognizing this impossibility, the Legislature enacted Senate Bill 1635 (2024), signed by Governor Stitt and effective in June 2024, permitting operators who had timely filed CO applications before February 1, 2024, to submit an attestation in lieu of waiting for final issuance.

45.    Plaintiffs notified Defendants of these issues, but OMMA and OBNDD arbitrarily rejected attestations, citing shifting and pretextual grounds, despite the purpose being to address the backlog without harming existing businesses trying to comply.

46.    These delays are not applied equally; the Fire Marshal processed thousands of non-marijuana structures in 2024-2025 with minimal backlogs, while medical marijuana applications—comprising a disproportionate volume—are deprioritized through understaffing and targeted scrutiny under specific Marijuana Facility Guidance, evidencing differential treatment without rational basis and reflecting animus toward the industry.

47.    OBNDD leverages these delays through administrative actions, revoking or denying registrations for failure to obtain timely COs or accepted attestations, despite timely applications to the Fire Marshal and OMMA. OBNDD uses these administrative actions to financially strain businesses through incurred legal fees and to force settlements or closures.

48.    OBNDD "turns off" licenses without warning, suspends businesses summarily, relies on email service that fails to comply with due process requirements for actual notice under

Oklahoma administrative law, and routinely denies discovery and the right to call witnesses in administrative hearings, further depriving operators of due process.

49. The agencies' actions constitute a conspiracy to delay and suppress the industry: OMMA imposes licensing hurdles and rejects attestations on pretextual grounds, the Fire Marshal creates bottlenecks through understaffing and delays (despite allowing third-party reviews starting in 2024-2025), and OBNDD enforces suspensions based on missing documents and delayed processing, creating a self-reinforcing cycle of delay and enforcement designed to eliminate operators from the market. This "regulatory triangle" is reflected in joint emergency rules (e.g., effective July 12, 2025, mandating Fire Marshal COs), shared enforcement teams, and a coordinated scheme documented in industry analyses and lawsuits, serving no legitimate interest beyond protectionism and industry contraction.

50. Plaintiffs are medical marijuana operators forced to comply with these requirements, incurring bond costs, facing residency barriers, enduring CO delays and attestation rejections, and suffering administrative shutdowns. Each Plaintiff experienced concrete injuries, including denial/revocation of licensure, lost revenue from closures, lost business opportunities by delayed license renewals, hampered investment opportunities due to residency limits, ongoing threats of raids and closure, and denial of due process in administrative proceedings.

**B. OBNDD's Discriminatory Enforcement Against Alleged "Straw Ownership"**

51. In addition to the residency mandates, bond requirements, CO delays, and attestation rejections, OBNDD engaged in discriminatory enforcement by arbitrarily accusing lawfully structured medical marijuana businesses of engaging in "straw ownership,"

thereby justifying license suspensions, revocations, and shutdowns without sufficient evidence or due process.

52.  The scheme adopted by Defendants unlawfully targeted medical marijuana businesses, particularly those owned by persons of Asian and/or Eastern European ancestry.

53.  Under Oklahoma law, medical marijuana businesses must be at least 75% owned by Oklahoma residents who meet durational residency requirements, as set forth in 63 O.S. § 427.14(E). However, OBNDD has expanded this provision through administrative overreach to target businesses organized as corporations or limited liability companies (LLCs) under legitimate Oklahoma statutes, including the Oklahoma General Corporation Act (18 O.S. §§ 1001 et seq.) and the Oklahoma Limited Liability Company Act (18 O.S. §§ 2000 et seq.), which permit flexible ownership structures without mandating disclosure of every beneficial interest unless required by specific regulatory schemes.

54.  "Straw ownership," as defined in Senate Bill 475 (effective 2023), refers to a third party used nominally in a medical marijuana transaction to circumvent residency rules. Despite this definition, OBNDD has applied it broadly and arbitrarily, accusing businesses of fraud even when ownership documentation complies with state corporate laws and OMMA application requirements, often based on mere suspicion of out-of-state influence rather than concrete evidence of control or illegal activity.

55.  This practice is part of the broader crackdown, where OBNDD's Marijuana Enforcement Teams (established 2022) conducted raids and investigations leading to the shutdown of over 3,000 farms since 2022, many under the pretext of straw ownership schemes. For instance, OBNDD has publicly stated that it reduced active grows from 8,400 in 2022 to

approximately 3,000 by mid-2025, attributing much of this decline to the elimination of fraudulent operations, including those allegedly using straw owners.

56.    However, these accusations frequently target legal entities without substantiation. In many cases, OBNDD extends such claims to businesses where ownership is lawfully vested in Oklahoma residents through corporate or LLC structures, ignoring the protections afforded by Oklahoma's business entity laws that allow for layered ownership without automatic presumption of fraud.

57.    OBNDD's approach lacks clear guidelines or evidentiary standards, resulting in vague and pretextual denials. For example, OMMA, in coordination with OBNDD, denied license renewals or revocations based on suspected straw ownership and similar 2025 denials, where administrative law judges upheld denials despite the business's compliance with formal application processes. Such actions deprive operators of property interests without adequate notice or opportunity to contest the allegations through discovery or witnesses.

58.    This discriminatory enforcement is selective and animus-driven, applied disproportionately to medical marijuana businesses compared to other regulated industries in Oklahoma, such as pharmaceuticals or agriculture, where similar corporate structures are not scrutinized or labeled as fraudulent. OBNDD Director Donnie Anderson acknowledged the overbroad impact in 2025 statements, noting, **"Even the people that do this legally, we're driving them out of business,"** evidencing an intent to suppress the industry beyond legitimate regulatory goals.

59.    The accusations often tie into unsubstantiated claims of ties to transnational criminal organizations, such as Chinese mafias or cartels, but OBNDD proceeds with suspensions and raids without proving actual illegal control, relying instead on circumstantial evidence

like foreign investment or complex ownership chains permissible under Oklahoma corporate law.

60.    This pattern integrates with the inter-agency conspiracy: OMMA provides initial licensing scrutiny, the Fire Marshal delays COs, and OBNDD uses straw ownership claims as a final pretext for enforcement, creating a cycle that disadvantages lawful operators. Plaintiffs suffered from these accusations, facing investigations, license threats, and closures despite their businesses being structured in full compliance with Oklahoma entity laws.

61.    This enforcement often resorts to racial profiling.

62.    As a result, Plaintiffs and class members incur additional harms, including reputational damage, lost investments in compliant structures, and exclusion from the market, violating due process by applying vague standards arbitrarily and equal protection by targeting marijuana businesses unequally.

## V.    MASS ACTION ALLEGATIONS

63.    Plaintiffs bring this action as a mass action on behalf of themselves and other similarly situated medical marijuana operators who voluntarily join this lawsuit, each asserting individual claims against Defendants for violations arising from the same unconstitutional and unlawful practices, including residency requirements, bond mandates, CO delays, attestation rejections, administrative shutdowns, and selective enforcement against alleged "straw ownership."

64.    Plaintiffs anticipate additional parties joining this lawsuit as plaintiffs, each with monetary claims exceeding $75,000, exclusive of interest and costs, to satisfy the jurisdictional requirements of 28 U.S.C. § 1332(d)(11). The aggregate amount in controversy exceeds

$5,000,000, and at least one plaintiff or defendant is a citizen of a different state, establishing diversity jurisdiction.

65.    The claims of the plaintiffs share common questions of law and fact, including: (a) whether the residency and bond requirements violate the Dormant Commerce Clause; (b) whether CO delays, attestation rejections, and license suspensions violate due process; (c) whether Defendants' coordinated actions constitute a conspiracy under 42 U.S.C. § 1983; and (d) whether selective enforcement against alleged "straw ownership" and racial targeting violates equal protection. These common issues make joinder in a mass action efficient and appropriate.

66.    Each plaintiff's claims are individual but arise from the same pattern of Defendants' misconduct, making a mass action the most effective way to adjudicate these claims while preserving each plaintiff's control over their case.

67.    By bringing this mass action, plaintiffs seek to maximize judicial efficiency by consolidating similar claims in one lawsuit, avoiding duplicative litigation while allowing additional plaintiffs to join pursuant to Federal Rule of Civil Procedure 20.

## VI.    CAUSES OF ACTION

### A.  First Cause of Action: Violation of Dormant Commerce Clause (U.S. Const. art. I, § 8)

68.    Plaintiffs incorporate the preceding paragraphs.

69.    The residency and bond requirements discriminate against interstate commerce without a legitimate local purpose, violating the Dormant Commerce Clause.

70.    Plaintiffs seek declaratory judgment that these requirements are unconstitutional.

### B.  Second Cause of Action: Violation of Equal Protection Clause (U.S. Const. amend. XIV)

71.    Plaintiffs incorporate the preceding paragraphs.

72.     The residency, bond, CO processing, differential treatment, attestation rejection, and suspension practices arbitrarily classify individuals based on residency, ownership duration, and business type without rational relation to a legitimate state interest, as evidenced by disproportionate targeting of Asian and Eastern European-owned businesses.

73.     Plaintiffs seek declaratory judgment that these requirements and practices are unconstitutional.

**C.  Third Cause of Action: Violation of Procedural Due Process (U.S. Const. amend. XIV)**

74.     Plaintiffs incorporate the preceding paragraphs.

75.     Defendants' delays in CO processing, arbitrary rejections of attestations, denials of discovery and witnesses in administrative hearings, and administrative shutdowns without notice deprive Plaintiffs of protected property interests (licenses and business operations) without adequate notice, opportunity for hearing, or timely resolution, violating procedural due process under *Mathews v. Eldridge*, 424 U.S. 319 (1976).

76.     Plaintiffs seek declaratory judgment and injunctive relief.

**D.  Fourth Cause of Action: Violation of Substantive Due Process (U.S. Const. amend. XIV)**

77.     Plaintiffs incorporate the preceding paragraphs.

78.     The arbitrary and conspiratorial enforcement actions, including pretextual attestation rejections and suspensions based on state-created delays, shock the conscience and serve no legitimate purpose, violating substantive due process.

79.     Plaintiffs seek declaratory judgment and injunctive relief.

**E.  Fifth Cause of Action: Civil Conspiracy Under 42 U.S.C. § 1983**

80.     Plaintiffs incorporate the preceding paragraphs.

81.     Defendants, acting in concert under color of law, conspired to deprive Plaintiffs of constitutional rights through coordinated delays, attestation rejections, and shutdowns, as evidenced by joint rules, enforcement teams, and the regulatory triangle, meeting the standards of *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

82.     Plaintiffs seek economic damages and punitive damages where permissible.

**F.   Sixth Cause of Action: Equal Protection – Arbitrary Industry Targeting (U.S. Const. amend. XIV)**

83.     Plaintiffs incorporate the preceding paragraphs.

84.     Defendants selectively targeted marijuana operators, particularly those of Asian and Eastern European ancestry, as evidenced by lawsuits and reports from 2024-2025 alleging anti-Asian bias in raids and enforcement, with burdens (e.g., CO delays, attestation rejections, and suspensions) not imposed on comparable industries, reflecting unconstitutional animus.

85.     Plaintiffs seek declaratory judgment that these practices are unconstitutional.

**G.   Seventh Cause of Action: Violation of Due Process – Arbitrary "Straw Ownership" Enforcement (U.S. Const. amend. XIV)**

86.     Plaintiffs incorporate the preceding paragraphs.

87.     OBNDD's vague and arbitrary application of "straw ownership" accusations deprives Plaintiffs of property interests without clear standards, notice, or fair hearings, violating procedural and substantive due process.

88.     Plaintiffs seek declaratory judgment and injunctive relief.

**H.   Eighth Cause of Action: Violation of Equal Protection – Selective Enforcement of "Straw Ownership" (U.S. Const. amend. XIV)**

89.     Plaintiffs incorporate the preceding paragraphs.

90.     By selectively enforcing "straw ownership" against medical marijuana businesses while ignoring similar structures in other industries, Defendants arbitrarily discriminate without rational basis, violating equal protection.

91.     Plaintiffs seek declaratory judgment and injunctive relief.

**I.   Ninth Cause of Action: 42 U.S.C. § 1983 – Monetary Damages**

92.     Plaintiffs incorporate the preceding paragraphs.

93.     Defendants, under color of law, deprived Plaintiffs of constitutional rights, causing damages including bond costs, lost revenue from delays/shutdowns, business interference, and attorney fees, with punitive damages sought where permissible.

94.     Plaintiffs seek recovery of all economic damages and punitive damages where applicable.

**J.   Tenth Cause of Action: Civil Conspiracy (Oklahoma Law – Supplemental Jurisdiction)**

95.     Plaintiffs incorporate the preceding paragraphs.

96.     Defendants conspired to commit unlawful acts (e.g., arbitrary delays, rejections, and shutdowns) or lawful acts unlawfully, resulting in tortious harms to Plaintiffs' businesses, as recognized under Oklahoma common law, jointly and severally.

97.     Plaintiffs seek all economic damages caused because of this civil conspiracy from each Defendant, jointly and severally.

**K.  Eleventh Cause of Action: Tortious Interference with Business Relations (Oklahoma Law – Supplemental Jurisdiction)**

98.     Plaintiffs incorporate the preceding paragraphs.

99.     Defendants intentionally and wrongfully interfered with Plaintiffs' existing or prospective business relations (e.g., contracts with suppliers, customers, or lessees) through delays, rejections, and shutdowns, without justification, causing economic harm.  Plaintiffs can establish the following by Defendants: (1) interference with a business or contractual right;

(2) malicious and wrongful interference; (3) not justified, privileged, or excusable; and (4) resulting damage, jointly and severally.

100.    Plaintiffs seek all economic damages caused because of Defendants' conduct, jointly and severally, and punitive damages where applicable.

**L.  Twelfth Cause of Action: Unfair Competition (Oklahoma Law – Supplemental Jurisdiction)**

101.    Plaintiffs incorporate the preceding paragraphs.

102.    Defendants' discriminatory practices constitute unfair competition under 78 O.S. § 51 et seq., by creating an uneven playing field that disadvantages Plaintiffs relative to non-marijuana businesses or favored incumbents, jointly and severally.

103.    Plaintiffs seek damages and injunctive relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request this Court:

A. Declare the residency requirements in 63 O.S. §§ 420 et seq. unconstitutional;

B. Declare the bond requirement in 63 O.S. § 427.14 unconstitutional;

C. Declare the CO delay practices, attestation rejections, differential treatment, and administrative shutdowns unconstitutional;

D. Declare OBNDD's practices regarding "straw ownership" accusations unconstitutional as applied to lawfully structured entities;

E. Permanently enjoin Defendants from enforcing "straw ownership" claims without clear evidentiary standards and due process;

F. Compel Defendants to establish clear guidelines and evidentiary standards for "straw ownership" accusations;

G. Permanently enjoin Defendants from enforcing the challenged provisions and practices;

H. Compel Defendants to timely process CO applications and honor valid attestations;

I. Require Defendants to afford due process in all administrative proceedings, including discovery and the right to call witnesses;

J. Award monetary damages to Plaintiffs and the class for losses caused by unconstitutional suspensions, delays, attestation rejections, and discriminatory requirements, including lost profits, and attorney fees, **IN AN AMOUNT IN EXCESS OF ONE BILLION DOLLARS ($1,000,000,000.00)**;

K. Award punitive damages, where applicable, to Plaintiffs and the class to punish Defendants for their actions **IN AN AMOUNT IN EXCESS OF ONE BILLION DOLLARS ($1,000,000,000.00)**;

L. Award reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

M. Permit additional plaintiffs to join this mass action pursuant to Federal Rule of Civil Procedure 20, as their claims arise from the same transactions or occurrences and share common questions of law or fact

N. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

*/s/ R. Charles Wilkin*
R. Charles Wilkin, OBA # 18491
WILKIN LAW FIRM, PLLC
2118 S. Atlanta Pl.
(918) 727-2275
charles.wilkin@wilkinlawfirm.com
*Attorney for Plaintiffs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

1.  **Lisa Tran, LLC, an Oklahoma limited liability company,**
2.  **Splash, LLC, an Oklahoma limited liability company,**
3.  **Dense Farms, LLC, an Oklahoma limited liability company,**
4.  **Craft Buds, LLC, an Oklahoma limited liability company,**
5.  **918 Boys Ranch, LLC, an Oklahoma limited liability company,**
6.  **108 Star, LLC, an Oklahoma limited liability company,**
7.  **Ozark Growers, LLC, an Oklahoma limited liability company,**
8.  **At Joy Growers, LLC, an Oklahoma limited liability company,**
9.  **Richard Dopp, an individual,**
10. **Apogee Extracts, LLC, an Oklahoma limited liability company,**
11. **One World Tree, LLC, an Oklahoma limited liability company,**
12. **Cimarron Syndicate Genetics, LLC,  an Oklahoma limited liability company,**
13. **Slab Labz, LLC, an Oklahoma limited liability company, and**
14. **Plasma Green, Inc.**

**Plaintiffs,**

**vs.**

**Case No.: 25-cv-00512-CDL**

1.  **State of Oklahoma ex rel. Oklahoma Medical Marijuana Authority,**
2.  **Oklahoma Bureau of Narcotics and Dangerous Drugs,**
3.  **Oklahoma State Fire Marshall,**
4.  **G. Keith Bryant, Oklahoma State Fire Marshall,**
5.  **Governor Kevin Stitt,**
6.  **Adria Berry, individually and in her official capacity as Director of the Oklahoma Medical Marijuana Authority,**
7.  **Donnie Anderson, individually, and in his official capacity Executive Director of the**

**OBNDD,**
8. **Oklahoma Attorney General's Office,**

**Defendants.**

I hereby certify that on November 11th, 2025 I electronically transmitted this FRIST AMENDED MASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, AND MONETARY DAMAGES to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

G. Keith Bryant
Kevin Stitt
Adria Barry
Donnie Anderson
Gentner Drummond

Date: 11/11/2025                         */s/ Jessica Colburn*
                                         Jessica Colburn
                                         Paralegal for Wilkin Law Firm