# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OKLAHOMA

1. Lisa Tran, LLC, an Oklahoma limited liability company,
2. Phoung Tran, owner of Lisa Tran LLC,
3. 32D LLC, an Oklahoma limited liability company,
4. Simply Green Extracts, LLC, an Oklahoma limited liability company,
5. William Lambert, owner of 32D LLC and Simply Green Extracts,
6. Splash Farms, Inc., an Oklahoma corporation,
7. Un Sun Kim, owner of Splash Farms, Inc.,
8. Plasma Green, Inc., an Oklahoma corporation,
9. Qiao Jia Liao, owner of Plasma Green, Inc.
10. Craft Buds, LLC, an Oklahoma limited liability company,
11. Craft Buds Processing, LLC, an Oklahoma limited liability company,
12. William Kuhn, owner of Craft Buds, LLC, and Craft Buds Processing, LLC,
13. 918 Boys Ranch, LLC, an Oklahoma limited liability company,
14. Claud Chiles Sr., owner of 918 Boys Ranch,
15. John Chiles, owner of 918 Boys Ranch,
16. Claud Chiles Jr., owner of 918 Boys Ranch,
17. Ozark Growers, LLC, an Oklahoma limited liability company,
18. Brandon Middick, owner of Ozark Growers, LLC.,
19. Tiffany Blair, owner of Ozark Growers, LLC,
20. Michael Blair, owner of Ozark Growers, LLC,
21. At Joy Growers, LLC, an Oklahoma limited liability company,
22. HHMS LLC, an Oklahoma limited liability company,
23. Darin Atkinson, owner of Plaintiff Joy Growers, LLC and HHMS LLC,
24. Melissa Atkinson, owner of Plaintiff Joy Growers, LLC and HHMS, LLC,
25. Dan Joy, owner of Plaintiff Joy Growers, LLC and HHMS, LLC,
26. Jane Joy, owner of Plaintiff Joy Growers, LLC and HHMS, LLC,
27. Mark Malone, owner of HHMS, LLC,
28. Nancy Malone, owner of HHMS, LLC,
29. Richard Lynn Dopp, an individual,
30. Apogee Extracts, LLC, an Oklahoma limited liability company,
31. Lisa Hector, owner of Apogee Extracts, LLC,

32. Laurence Hicks, owner of Apogee Extracts, LLC,
33. Thomas C. Matsko, owner of Apogee Extracts, LLC,
34. Robert Wills, owner of Apogee Extracts, LLC,
35. Evan Kajander, owner of Apogee Extracts, LLC,
36. Nhu Truong, owner of Apogee Extracts, LLC,
37. Cimarron Syndicate Genetics, LLC, an Oklahoma limited liability company,
38. Slab Labz,LLC, an Oklahoma limited liability company, and
39. Brandan Isley, owner of Cimarron Syndicate Genetics and Slab Labz, LLC,
40. For themselves and those similarly situated,

Plaintiffs,

vs.                                                            Case No.: 25-cv-00512-JDR-CDL

1. State of Oklahoma *ex rel.* Oklahoma Medical Marijuana Authority ("OMMA"),
2. Oklahoma Bureau of Narcotics and Dangerous Drugs Control ("OBNDD"),
3. Oklahoma State Fire Marshall,
4. G. Keith Bryant, Oklahoma State Fire Marshall, in his official and individual capacities,
5. LP Gas Administration,
6. Adria Berry, individually and in her official capacity as Director of OMMA,
7. Donnie Anderson, individually, and in his official capacity Executive Director of the OBNDD,
8. Governor Kevin Stitt, in his official capacity,
9. Oklahoma Attorney General's Office, as a necessary party only,

Defendants.

**SECOND AMENDED CLASS ACTION COMPLAINT
FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, AND DAMAGES**

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................4

II.   JURISDICTION AND VENUE ..............................................................................8

III.  FACTS APPLICABLE TO ALL PLAINTIFFS........................................................8

IV.  PARTIES..............................................................................................................16

     A.    PLAINTIFFS AND SIMILARLY SITUATED CLASS MEMBERS ..........................16

     B.    DEFENDANTS ...........................................................................................43

V.   CLASS ACTION ALLEGATIONS .......................................................................16

VI.  CAUSES OF ACTION .........................................................................................48

     COUNT I – 42 U.S.C. § 1983 (Violation of the Ex Post Facto Clause) ...............48

     COUNT II – 42 U.S.C. § 1983 (Violation of the Substantive Due Process Clause).............51

     COUNT III – 42 U.S.C. § 1983 (Violation of the Equal Protection Clause) ........................53

     COUNT IV – 42 U.S.C. § 1983 (Violation of Procedure Due Process Clause)....................57

     COUNT V – 42 U.S.C. §§ 1983, 1985 (Conspiracy) ............................................58

     COUNT VI – Violation of Oklahoma Constitution Art. 2, §§ 2, 7, 15, and 22.....................61

     COUNT VII – Declaratory Judgment Pursuant to 12 O.S. §§ 1651-57 ...............63

VII. PRAYER FOR RELIEF – APPLICABLE TO ALL COUNTS ...............................65

VIII.RESERVATION OF ADDITIONAL STATE-LAW CLAIMS...............................67

IX.   DEMAND FOR JURY TRIAL..............................................................................67

**SECOND AMENDED CLASS ACTION COMPLAINT**
**FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, AND DAMAGES**

Plaintiffs, by and through their undersigned counsel, on behalf of themselves and all similarly situated, bring this Class Action against all Defendants, and in support state as follows:

## I.    INTRODUCTION

1.    This case is brought by the Named Plaintiffs, on behalf of themselves and other similarly situated class members. All Plaintiffs own legally operating medical marijuana businesses (grows, processors, dispensaries) and have and had been operating for years without incident prior to Defendants' engaging in a scheme to "wipe out everybody and start over," "to make all of these licenses go away," and to "driv[e] out of business . . . even the people that do this legally."

2.    All Plaintiffs and class members annually received a "License Certificate" from the Oklahoma Medical Marijuana Association ("OMMA") stating: "The license issued by the Oklahoma State Department of Health, Oklahoma Medical Marijuana Authority to certify ***the above has fulfilled the requirements of 63 O.S. § 420 et seq. . . .***" (emphasis added).

3.    Despite the finding by OMMA that Plaintiffs and class members have fulfilled the requirements of 63 O.S. § 420 *et seq.*, Defendants have engaged in a pattern and practice of denying Plaintiffs' renewal with the Oklahoma Bureau of Narcotics and Dangerous Drugs Control ("OBNDD") based on the lack of an ex post facto requirement for a Certificate of Occupancy ("COO") and by creating a system that makes it impossible for any business to obtain compliance or survive.

4.    Defendants have engaged in a scheme and pattern and practice to destroy legally operating businesses by, including but not limited to the following: (a) applying retroactively and ex post facto a Certificate of Occupancy ("COO") requirement; (b) back dating laws making it impossible for compliance, such as Defendant Governor Stitt signing in to law on June 14, 2024

that businesses that submitted a "full and complete application for a valid [COO] . . . before February 1, 2024" (63 OK Stat § 426.1 (2024)); (c) refusing to timely process COO applications; (d) rejecting applications for minor errors that could be noted by corrections rather than blanket denials, requiring Plaintiffs and class members to reapply, rather than simply correcting; (e) deliberating sending notices to Plaintiffs and class members spam email, when none had been sent to spam before, so that they miss critical deadlines, and then admitting that email is not an accepted form of service when it applies to Defendants.

5.      Every day that passes without judicial intervention, Plaintiffs and class members are subject to the threats of raids, criminal prosecution, substantial fines, embargoed or ordered destruction of millions of dollars in plants and product that cannot be recouped, forced closure, lay off of employees, default on leases and loans, and permanent closure.

6.      Defendants' policies and practices and ex post facto application of the COO also impact Plaintiffs and class members outdoor grow facilities under the same license number as the indoor grow facilities, despite the fact that under the new ex post facto COO requirement and enforcement, a COO is ***not*** required for an outdoor grow. Defendants are illegally shutting down outdoor grow facilities by revoking the OBN registration as a whole that applies to both.

### *Direct Evidence of Illegal Intent &*
### *Deliberate Destruction of Legitimate Businesses*

7.      In or about June 2024, a representative from the OMMA Defendants stated in effect that "they were going to do whatever they had to do to make all of these licenses go away" and that they "wanted to wipe out everybody and start over."

8.      Defendant OBNDD Director Donnie Anderson acknowledged the overbroad impact in a 2025 statement, stating: **"Even the people that do this legally, we're driving them out of business,"** evidencing an intent to suppress the industry beyond any legitimate regulatory goals.

9.    According to Defendant OBNDD Director Anderson, there should be **no more than eight to ten medical marijuana grows in Oklahoma**. At the time the Director made his apocalyptic statement to the Rogers County Commission in May 2024, there were approximately 3,200 grows in Oklahoma.

10.    Similarly, the OBNDD Facebook page often boasts about reducing the number of registrations by thousands despite relatively few numbers of related arrests.

11.    Engineers in the field, who have dealt with construction for nearly 50 years and worked all over the world have never heard of a "certificate of occupancy" ("COO") where the building has been occupied. For existing buildings, there is no requirement for a COO.

12.    Other businesses that are regulated by the OBNDD Defendants are not required to obtain a COO. This discriminatory enforcement is selective and animus-driven, applied disproportionately to Plaintiffs and class members because they are medical marijuana businesses compared to other regulated industries in Oklahoma, such as pharmaceuticals or agriculture. For example, at least five (5) veterinary clinics in Payne County operate without a COO on record.

13.    Oklahoma State Fire Marshall processes all other non-medical marijuana applications in 2-3 weeks, where medical marijuana applications are taking over 2-3 years.

14.    Even in cases where legal businesses were granted a safe harbor by having applied for their COO before the backdated February 1, 2024 deadline (in the June 14, 2024 amendment to the statute), the OBNDD Defendants made concerted efforts to revoke renewal licenses by sending emails to spam so that deadlines were missed, when the OBNDD Defendants has stated that "We do not accept service . . . by email."

15.    As part of the scheme to drive "[e]ven the people that do this legally" "out of business," if Plaintiffs and class member's renewal applications required even minor corrections,

the renewal application would be rejected, and Plaintiffs and class members would have to start the process over.

### *Other Evidence of Illegal Intent*

16.     The OMMA and OBNDD Defendants knew that the COO issue was going to be applied retroactively and ex post facto. Defendants intentionally withheld information from Plaintiffs and class members to take their renewal fees, and then subsequently shut them down.

17.     In a further attempt to arbitrarily shrink the medical cannabis market from legally operating businesses, OBNDD Defendants increased the annual licensing fees from $500.00 to over $2,000.00, a 400% increase.

18.     Defendants engaged in a pattern and practice of issuing revocations after Plaintiffs paid the exorbitant renewal fees.

19.     Defendants engaged in a pattern and practice of rejecting applications based on minor changes that could be easily corrected and making Plaintiffs and class members reapply and start the process all over, resulting in a new "submission date" beyond the backdated February 1, 2024 "safe harbor" date, and further delays.

20.     Defendants continually changed the "rules of the game" to prevent Plaintiffs and class members from being able to comply with the new ex post facto requirements for a COO. For example, Defendants changed the rules for those Plaintiffs and class members outside of the State Fire Marshall's jurisdiction to use a third party (authority having jurisdiction ("AHJ"), but only providing three (3) options, and then later removing that option while those Plaintiffs and class members had either retained or were in the process of retaining the AHJ. Defendants also continued to change deadline dates that made it impossible for the new retroactive, ex post facto requirement to obtain a COO.

21.     The OBNDD Defendants routinely violate their own procedures. For example, when they seize marijuana, they are required to transfer the product from the business to the

Attorney General's Office in Metrc (the system for tracking each plant), but they fail to do this, so the product is still showing up in the business' possession.

## II.    JURISDICTION AND VENUE

22.    This Court has federal-question jurisdiction under 28 U.S.C. §§ 1331 and 1343(a), *et. seq.* over Plaintiffs and class members' 42 U.S.C. §§ 1983 and 1985 claims, and supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs and class members declaratory judgment claims brought pursuant to 12 O.S. §§ 1651-57 and Oklahoma constitutional claims.[1]

23.    This Court has class-action jurisdiction under 28 U.S.C. § 1332(d) the proposed class exceeds 100 members, minimal diversity exists, and the amount in controversy exceeds $5,000,000 exclusive of interest and costs.

24.    Venue is proper under 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to the claims, including the operation of many of Plaintiffs' and class members' businesses and the economic damages suffered, occurred in this District.

## III.    FACTS APPLICABLE TO ALL PLAINTIFFS

### *The Original Regulatory Scheme (2018–Early 2024): No COO Ever Required*

25.    On June 26, 2018, Oklahoma voters enacted State Question 788, codified at 63 O.S. §§ 420 *et seq.*, creating a medical-marijuana program without any mandatory Certificate of Occupancy ("COO") requirement for commercial licenses.

26.    The implementing statute (63 O.S. §§ 420 *et seq.*) and the Oklahoma Medical Marijuana and Patient Protection Act of 2019 contained no mention of a COO or any requirement to obtain post-construction fire-marshal or building-code certification for commercial grows, processors, or dispensaries.

---

[1]    Plaintiffs and the Class expressly reserve all claims arising under the Oklahoma Governmental Tort Claims Act (51 O.S. §§ 151 *et seq.*), Oklahoma common law, including but not limited to civil conspiracy, tortious interference with business relations, detrimental reliance, abuse of process, and any other state-law theories until such time as notice-of-claim requirements under the OGTCA have been satisfied or have expired.

27.     Between July 2018 and June 30, 2024, the OMMA Defendants issued and annually renewed more than 8,200 commercial medical-marijuana licenses (growers, processors, dispensaries, laboratories, and transporters) to individuals and entities, including Plaintiffs and class members, without requiring submission of a COO from a municipality, county, or the Oklahoma State Fire Marshal.

28.     From July 2018 through January 2024, OMMA issued over 14,000 commercial grower licenses, over 2,800 processor licenses, and almost 8,000 dispensary licenses – none of the application forms, checklists, statutes, or rules required a COO.

29.     The only building-related requirement was a generic attestation that the applicant was "in compliance with local zoning and ordinances." No inspection or certificate was demanded.

30.     Plaintiffs and every member of the proposed class relied on this regulatory silence and invested hundreds of millions of dollars or more in real estate, greenhouses, HVAC, security systems, and inventory. Plaintiffs and class members, in reasonable reliance on the statutes and regulations in effect at the time their licenses were issued and renewed, made substantial irrevocable investments in real property, equipment, inventory, leases, employees, taxes, and compliance costs.

### *OBNDD Defendants' Preemptive and Premeditated*
### *Ex Post Facto Applications*

31.     In or about July 2023, OBNDD Defendants published a position statement, stating: "The Oklahoma Bureau of Narcotics and Dangerous Drugs Control will require all medical marijuana manufacturing registrants to provide required certificates of occupancy/final inspection (CO[O]) or an attestation such certificate is not required by law before granting a new registration or renewing an existing registration."

32.     Many Plaintiffs and class members never received this position statement and were not provided with sufficient notice of the ex post facto and retroactive requirements that they would soon be facing.

33.     On June 14, 2024, Defendant Governor Stitt signed into law for the first time requiring ex post facto Plaintiffs and class members to submit a COO and backdating the deadline to February 1, 2024, as well as preventing certain Plaintiffs and class members from obtaining a COO from their local government authority, requiring all COO's to go through the State Fire Marshall Defendants where there is no jurisdictional agreement with the State Fire Marshall.

34.     The amended version of 63 OK Stat § 426.1(E) states in relevant part:

E. 1. Any marijuana-licensed premises, medical marijuana business or any other premises where marijuana or its by-products are licensed to be cultivated, grown, processed, stored or manufactured **shall** submit with its application or request to change location, after notifying the political subdivision of its intent, ***a certificate of occupancy from the political subdivision or State Fire Marshal*** where the facility of the applicant or licensee is to be located certifying compliance with zoning classifications, applicable municipal ordinances and all applicable safety, electrical, fire, plumbing, waste, construction and building specification codes. ***If the political subdivision does not have an authority having a jurisdiction agreement on file with the Office of the State Fire Marshal, the State Fire Marshal shall certify compliance*** with all applicable safety, electrical, fire, plumbing, waste, construction, and building specification codes.

63 OK Stat § 426.1 (2024) (emphasis added).

35.     The June 14, 2024 Amendment also required in relevant part:

***All existing medical marijuana business licensees and registrants that do not possess a valid certificate of occupancy, where required, shall be subject to revocation until such time as a valid certificate of occupancy is obtained for all applicable structures.*** This provision shall not apply to medical marijuana business licensees and registrants who submitted a full and complete application for a valid certificate of occupancy to the State Fire Marshal or political subdivision with an authority having a jurisdiction agreement on file with the State Fire Marshal ***before February 1, 2024***, and while the same application remains under review by the State Fire Marshal or political subdivision. Medical marijuana business licensees and registrants are responsible for compliance with applicable state fire, building, and electrical codes and may be liable for all

damage that results from noncompliance with state fire, building, and electrical codes to the extent authorized by law.

63 OK Stat § 426.1 (2024) (emphasis added).

36.    Originally the amendment to the statute had proposed that marijuana licenses "shall not be denied licensure or registration . . . by failing to provide a [COO] until **_after July 1, 2026_**," but was changed to backdate the requirement to February 1, 2024 at the last minute.

37.    Even setting aside the unconstitutional ex post facto application of a mandatory COO requirement, notice to comply with the law that was passed on June 14, 2024 by February 1, 2024 would have been impossible.

38.    In a further attempt to intentionally shrink the medical marijuana market of legally operating businesses, even those Plaintiffs and class members that were subject to a "safe harbor provision" were subsequently revoked for other arbitrary and capricious reasons.

39.    Both bills were expressly made retroactive to all existing licensees by requiring a COO upon the next renewal or change of premises – with automatic revocation for non-compliance.

40.    All Defendants have engaged in a pattern and practice of setting up roadblocks to Plaintiffs and class members from obtaining a COO in an intentional effort to "drive[] . . . even the people that do this legally . . . out of business," as admitted by the OBNDD Defendant Director Andrews.

41.    The OMMA Defendants have adopted the ex post facto application of the COO requirement. The OMMA Defendants have engaged in a coordinated pattern of delay and obstruction, refusing to process license renewals due to the absence of COO.

42.    The State Fire Marshall Defendants have also engaged in a pattern and practice of delay and routinely claimed that they did not receive or lost packets of COO applications for renewals. These delays are not applied equally, for example: the Fire Marshal processed

thousands of non-marijuana structures in 2024-2025 with minimal backlogs, while medical marijuana applications—comprising a disproportionate volume—are deprioritized through understaffing and targeted scrutiny under specific Marijuana Facility Guidance, evidencing differential treatment without rational basis and reflecting animus toward the industry, and a concerted effort to intentionally destroy legal businesses owned by Plaintiffs and class members.

43.     All Defendants acted under color of state law and pursuant to a stated illegal policy, as well as a pattern and practice.

### *Defendants' Uniform Policy: "No COO = No Renewal"*

44.     Beginning January 19, 2024, the OBNDD Defendants issued form notices ("Notice") to over 2,100 licensees, including Plaintiffs and class members, alleging that their OBNDD renewal application lacked a COO issued by the Oklahoma State Fire Marshal or another authority having jurisdiction (by agreement with the State Fire Marshall). The Notice instructed licensees that they had to produce a COO or request a hearing within thirty (30) days or their renewal application would be considered withdrawn.

45.     Starting in 2024 and continuing to the present, the OMMA Defendants have mailed thousands of non-renewal letters to existing licensees (including Plaintiffs and class members) stating that their licenses will expire and will not be renewed solely because they cannot produce an ex post facto COO.

46.     The OBNDD Defendants issued an internal directive in July 2024 (circulated to all registrants) stating: "Failure to upload a valid Certificate of Occupancy… will result in automatic denial of renewal regardless of any other factor."

47.     The OMMA Defendants adopted the identical policy. Its October 2024 renewal rejection letters contain boilerplate language: "Application denied pursuant to 63 O.S. § 426.1(C) – failure to provide Certificate of Occupancy."

48.     Defendants have refused to, among other things, grandfather in Plaintiffs and class members, even though they have obtained licenses since the inception and renewals every year for their businesses wherein OMMA certified that they have "fulfilled the requirements of 63 O.S. § 420 et seq. . . ."; accept the local Fire Marshall's certifications; accept alternative documentation (*e.g.,* prior fire-marshal letters, tax receipts, or affidavits from landlords for pre-2024 facilities); or even given Plaintiffs and class members a grace period in which to obtain the COO from the State Fire Marshall Defendants in light of the backlog and delays.

### *Administrative Proceedings Before the OBNDD Defendants*

49.     Beginning in July of 2024, the OBNDD Defendants issued Orders to Show Cause, seeking to revoke Plaintiffs' and class members' OBNDD registration, "until such time as a valid certificate of occupancy is obtained for all applicable structures pursuant to 63 O.S. §426.1(E)(5)."

50.     For those Plaintiffs and class members that had luckily submitted a completed application with no errors before the backdated February 1, 2024 deadline, Defendants granted them a "safe harbor" to continue to operate until they received the COO. However, even in these cases, Defendants used other means to ensure revocation, *e.g.*, intentionally sending critical notice emails to spam so that many Plaintiffs and class members that would have "safe harbor" would have their licenses revoked for missing a deadline to provide information. Defendants gave no grace period, exceptions, hearing, or even an opportunity to be heard, and simply revoked their licenses as a result.

51.     Plaintiffs and class members all requested hearings before the OBNDD Defendants.

52.     Before the OBNDD Defendants, Plaintiffs were not allowed discovery or an opportunity to be heard. In fact, Defendant OBNDD Director Anderson interjected himself into

the administrative hearing and denied many Plaintiffs and class members subpoenas and request for discovery over the Hearing Officer.

53.     In most cases, the Hearing Officer for the OBNDD Defendants issued a report and recommendation claiming that "[t]o date, [Plaintiff] has not submitted an OBN required certificate of occupancy for any used or occupied buildings or structures. . . .," when in fact Plaintiffs and class members had submitted their renewal applications, and they have been pending for years as a result of the State Fire Marshall's Defendants delays.

54.     In most cases, the OBNDD Defendants issued a final order revoking Plaintiffs' and class members' OBNDD license because they had not yet received the ex post facto COO from the State Fire Marshall Defendants.

55.     In many cases, Plaintiffs and class members received building permits just before or right after the final orders were issued, and Plaintiffs and class members were not given an opportunity to submit this information to avoid revocation.

56.     In cases where no final orders were issued, Defendants found other ways to revoke or reject the renewal applications as part of the deliberate intent to drive "[e]ven the people that do this legally" "out of business."

***Mass Destruction of Legally Created Businesses (2024-2025)***

57.     OMMA's own public data dashboard shows the following collapse after the COO mandate took effect:

| Year | Growers | Dispensaries | Processors | Total | % Change |
|------|---------|--------------|------------|-------|----------|
| Dec. 2023 | 5041 | 2502 | 1482 | 9025 | |
| Dec. 2024 | 3029 | 1811 | 936 | 5776 | 64% |
| Oct. 2025 | 2520 | 1565 | 785 | 4870 | 84% |

58.     OBNDD registrations followed the same and similar patterns.

59.     Defendants' retroactive imposition and ex post facto enforcement of the mandatory COO requirement has and will continue to have the effect of immediately divesting

Plaintiffs and class members of valuable state-granted property interests, including their commercial licenses, investments in tangible property and legitimate and legal businesses, lawfully acquired and repeatedly renewed for years under the prior statutory and regulatory scheme; imposing punitive penalties and risk of criminal prosecution; deprivation of liberty interests; and violations of equal protection and due process of law both under the United States and Oklahoma Constitutions.

60.     The OBNDD Defendants, in coordination with all of the other Defendants, through this scheme to drive "[e]ven the people that do this legally" "out of business," have placed non-renewed facilities on enforcement lists, conducted raids, embargoed or ordered destruction of millions of dollars in plants and product, and threatened or initiated criminal prosecution against Plaintiffs and class members, and forced many of them out of business.

### Ex Post Facto Application

61.     This is a federal civil-rights class action challenging the retroactive and ex post facto imposition and enforcement of the COO requirement against thousands of lawfully operating Oklahoma medical marijuana businesses that were licensed ***before*** before any COO was ever required.

62.     When Plaintiffs' businesses were built, licensed, and began operating (2019–2023), no Oklahoma statute, rule, or licensing form required a COO.

63.     Plaintiffs and the Class Member invested millions of dollars in reliance on the regulatory scheme then in existence.

64.     Plaintiffs and the class members operated their medical marijuana licenses and legitimate businesses without incident, and in fact, passed all prior inspections with "flying colors" and without incident of citation.

65.     In 2024, from the direction and pressure of all Defendants, the Oklahoma Legislature suddenly rewrote § 426.1 to make a COO mandatory for all existing licensees upon

renewal. Defendants immediately began denying renewals, revoking licenses, locking businesses out of the Metrc tracking system, seizing inventory, and imposing six-figure civil penalties — solely because the licensee did not possess a document that did not exist as a requirement when the business was created.

66.     This retroactive change in the rules of the game violates the Ex Post Facto Clause of the United States Constitution.

67.     The retroactive application of 63 O.S. § 426.1(C)-(E) (as amended April 26, 2024 and June 14, 2024) and related administrative rules punishes class members for conduct that was entirely lawful when performed, in direct violation of the Ex Post Facto Clause.

68.     Plaintiff and the proposed class seek declaratory and injunctive relief, restoration of licenses, return of seized property, and monetary damages.

69.     Defendants' unlawful and retroactive enforcement has already revoked, suspended, or denied renewal of thousands of licenses and registrations, destroyed businesses, seized millions of dollars in inventory, and imposed crippling civil penalties – all for failing to possess a document that was not required when Plaintiffs and class members purchased property, built their businesses, invested millions (and even billions) of dollars individually and collectively, received their licenses without incident, and began operating.

70.     Defendants' continued enforcement and post facto applications will also result in thousands more legitimate businesses being revoked, suspended, or denied renewal of their licenses and registrations, despite legally operating for years, which will also continue to subject Plaintiffs and class members to threat of criminal prosecution, fines, civil penalties, and more.

IV.     PARTIES

A.  PLAINTIFFS AND SIMILARLY SITUATED CLASS MEMBERS

71.     All Plaintiffs have been legally operating for years prior to Defendants' ex post facto and retroactive requirement that Plaintiffs and class members obtain a COO.

72.     Plaintiff businesses are or were lawfully engaged in the cultivation, processing, and/or sale of medical marijuana in Oklahoma, until they were illegally shut down.

73.     All Plaintiff businesses are or were licensed by Defendants OMMA and OBN.

### *Plaintiff Lisa Tran, LLC*

74.     Plaintiff Lisa Tran, LLC is an Oklahoma limited liability company lawfully engaged in the medical marijuana business in the State of Oklahoma, with OMMA License No. GAAI-EFDU-2EZP and OBNDD Registration No. 10004825, located in Sapulpa, Creek County, Oklahoma.

75.     Plaintiff Phoung Tran is an Oklahoma resident and the 100% owner of Lisa Tran, LLC.

76.     In or about 2022, Plaintiff Lisa Tran, LLC began legally operating a medical marijuana grow facility, which includes 16,000 square feet of "grow."

77.     In or about October 2023, OBNDD and OMMA Defendants informed Plaintiffs that they had to submit a COO with their 10/2023 renewal application. Plaintiffs had never previously been required to submit a COO, despite having operated without incident since 2022.

78.     In or around January 2024, with a notice sent by OBNDD Defendants to Plaintiff alleging that Plaintiffs failed to submit the newly required COO application its 2023 renewal of its OBNDD registration. The notice required that Plaintiffs request a hearing to prevent the OBNDD from considering its application for renewal as withdrawn.

79.     On or about February 4, 2024, Plaintiffs filed a request for hearing before the OBNDD.

80.     On December 24, 2024, the OBNDD Defendants issued an Order to Show Cause seeking to revoke Plaintiffs' OBNDD registration, alleging Plaintiffs committed the violations: "until such time as a valid certificate of occupancy is obtained for all applicable structures pursuant to 63 O.S. §426.1(E)(5)." To add insult to injury, and as further evidence of Defendants'

arbitrary and illegal intent, while Plaintiffs had filed their COO application prior to February 2024, the OBNDD's Defendants' Rule to Show Cause states: ". . . . Respondent is not subject to the safe harbor provision." Order to Show Cause fn. 1.

81.    On July 8, 2025, Plaintiffs logged in to OBN and renewed their annual license and paid the annual fee, which was now $2,512. Plaintiff Lisa Tran LLC was listed as "Active" on OBN at the time.

82.    On July 21, 2025, entered a notice of dismissal of the administrative action (Rule to Show Cause) finding:

> Respondent has been identified as a person subject to the safe harbor from revocation provided by 63 O.S. § 426.1(E). Respondent submitted a full and complete application to the Oklahoma State Fire Marshal or other Authority Having Jurisdiction for a certificate of occupancy before February 1, 2024, which still remains under review. Respondent's application with OBN will not be fully approved until a valid certificate of occupancy is obtained. Respondent's existing registration will remain 'ACTIVE' while the application remains pending with code officials unless otherwise revoked, annulled, denied, or suspended for other reasons.

83.    On August 22, 2025, OBNDD Defendants sent Plaintiffs an email notice that Plaintiff Lisa Tran LLC was permanently inactive because they had not responded in 30 days with information requested. This email did *not* go to Plaintiffs' spam folder. Plaintiffs immediately logged in to OBNDD, they noticed that they were listed as "Inactive." Plaintiffs called OBNDD to find out why they were listed as inactive and were told that an email was sent to Plaintiffs on July 7, 2025, requesting a copy of Plaintiff Phuong Tran's driver's license. Plaintiffs never received this email. Plaintiffs then found the July 7, 2025 email in their spam folder, despite ensuring that OBNDD emails were marked to not go to "spam," and despite the fact that *all* other emails from OBNDD went to Plaintiffs inbox.

84.    OBNDD Defendants' application rejection was from Plaintiffs' 2023 OBN packet because they did not ask for an updated ID or any other documents on the 2025 renewal.

85.    OBNDD Defendants revoked Plaintiffs' OBN license without a hearing or an opportunity to cure and provide the information.

86.    As a result of Defendants' actions and inactions, and pattern and practice, and deliberate attempts to drive "[e]ven the people that do this legally" "out of business,", Plaintiffs have suffered additional irreparable and monetary damages.

### 32D LLC

87.    Plaintiff 32D, LLC is an Oklahoma limited liability company lawfully engaged in the medical marijuana business in the State of Oklahoma, with OMMA License No. GAAI-7A4V-HNX3 and OBNDD Registration No. 10001125, located in Stillwater, Payne County, Oklahoma.

88.    Plaintiff William Lambert is an Oklahoma resident and the 100% owner of Plaintiff Simply Green Extracts, LLC.

89.    In or about June 2019, Plaintiffs began legally operating a medical marijuana grow facility.

90.    In or about August 2023, the OMMA and OMBDD Defendants informed Plaintiffs that they had to submit a COO with their 2023 renewal application for fiscal year 2024. Plaintiffs had never previously been required to submit a COO, despite having operated without incident since 2019.

91.    In or about October 2023, Plaintiffs hired Landmark Solutions to assist them with the ex post facto renewal application process.

92.    In or around January 2024, with a notice sent by OBNDD Defendants to Plaintiff alleging that Plaintiffs failed to submit the newly required COO application its 2023 renewal of its OBNDD registration. The notice required that Plaintiffs request a hearing to prevent the OBNDD from considering its application for renewal as withdrawn.

93.     On or about October 31, 2023, Plaintiffs' renewal application was submitted with the ex post facto COO application.

94.     On or about March 28, 2024, Plaintiffs filed a request for hearing before the OBNDD.

95.     On December 27, 2024, the OBNDD Defendants issued an Order to Show Cause seeking to revoke Plaintiffs' OBNDD registration, "until such time as a valid certificate of occupancy is obtained for all applicable structures pursuant to 63 O.S. §426.1(E)(5)."

96.     Before the OBNDD Defendants, Plaintiffs were not allowed discovery or an opportunity to be heard.

97.     On November 24, 2025, the Hearing Officer for the OBNDD Defendants issued a report and recommendation claiming that "[t]o date, [Plaintiff] has not submitted an OBN required certificate of occupancy for any used or occupied buildings or structures. . . .," when in fact on October 31, 2023, Plaintiffs submitted their renewal application, and it has been "pending" since then.

98.     Plaintiffs have not received a final order, but based on the facts as set forth herein, the final order is imminent and will result in revocation of Plaintiffs' active OBNDD and OMMA licenses.

99.     As a result of Defendants' actions and inactions, and pattern and practice, and deliberate attempts to drive "[e]ven the people that do this legally" "out of business,", Plaintiffs have suffered additional irreparable and monetary damages.

### Simply Green Extracts, LLC

100.    Plaintiff Simply Green Extracts, LLC is an Oklahoma limited liability company lawfully engaged in the medical marijuana business in the State of Oklahoma, with OMMA License No. PAAA-N1K4-NRFY and OBNDD Registration No. 67404, located in Stillwater, Payne County, Oklahoma. Plaintiffs own the property.

101.    Plaintiff William Lambert is an Oklahoma resident and the 100% owner of Plaintiff Simply Green Extracts, LLC.

102.    In or about June 2019, Plaintiffs began legally operating a medical marijuana processing facility, which includes 2400 square feet of "processing".

103.    In or about August 2023, the OMMA and OMBDD Defendants informed Plaintiffs that they had to submit a COO with their 2023 renewal application for fiscal year 2024. Plaintiffs had never previously been required to submit a COO, despite having operated without incident since 2019.

104.    In or about October 2023, Plaintiffs hired Landmark Solutions to assist them with the ex post facto renewal application process.

105.    In or around January 2024, with a notice sent by OBNDD Defendants to Plaintiff alleging that Plaintiffs failed to submit the newly required COO application its 2023 renewal of its OBNDD registration. The notice required that Plaintiffs request a hearing to prevent the OBNDD from considering its application for renewal as withdrawn.

106.    On or about October 31, 2023, Plaintiffs' renewal application was submitted with the ex post facto COO application.

107.    On or about March 28, 2024, Plaintiffs filed a request for hearing before the OBNDD.

108.    On December 27, 2024, the OBNDD Defendants issued an Order to Show Cause seeking to revoke Plaintiffs' OBNDD registration, "until such time as a valid certificate of occupancy is obtained for all applicable structures pursuant to 63 O.S. §426.1(E)(5)."

109.    Before the OBNDD Defendants, Plaintiffs were not allowed discovery or an opportunity to be heard.

110.    On November 24, 2025, the Hearing Officer for the OBNDD Defendants issued a report and recommendation claiming that "[t]o date, [Plaintiff] has not submitted an OBN

required certificate of occupancy for any used or occupied buildings or structures. . . .," when in fact on October 31, 2023, Plaintiffs submitted their renewal application, and it has been "pending" since then.

111.    Plaintiffs have not received a final order, but based on the facts as set forth herein, the final order is imminent and will result in revocation of Plaintiffs' active OBNDD and OMMA licenses.

112.    As a result of Defendants' actions and inactions, and pattern and practice, and deliberate attempts to drive "[e]ven the people that do this legally" "out of business,", Plaintiffs have suffered additional irreparable and monetary damages.

### *Plaintiff Splash Farm, Inc.*

113.    Plaintiff Splash Farm, Inc. is an Oklahoma corporation lawfully engaged in the medical marijuana business in the State of Oklahoma, with OMMA License No. GAAI-E8KL-K7MO and OBNDD Registration No. 10009667, located in Pocasset, Grady County, Oklahoma. Plaintiffs own the property.

114.    Plaintiff Un Sun Kim is 100% owner of Splash Farm, Inc.

115.    In or about 2021, Plaintiffs began legally operating a medical marijuana grow facility, which includes six (6) buildings, with 30,000 square feet of grow space.

116.    Plaintiffs applied for the newly required ex post facto COO on or about August 29, 2023.

117.    Plaintiffs transferred ownership from Amie Seals to Plaintiff Un Sun Kim. Defendant OMMA approved the transfer in or about October/November 2023, and Plaintiffs received a renewed OMMA license under the new ownership which certified that Plaintiffs "fulfilled the requirements of 63 O.S. § 420 et seq. . . ."

118.    On December 27, 2024, the OBNDD Defendants issued an Order to Show Cause seeking to revoke Plaintiffs' OBNDD registration, alleging Plaintiffs committed the violations:

"until such time as a valid certificate of occupancy is obtained for all applicable structures pursuant to 63 O.S. §426.1(E)(5)." To add insult to injury, and as further evidence of Defendants' arbitrary and illegal intent, while Plaintiffs had filed their COO application prior to February 2024, the OBNDD's Defendants' Rule to Show Cause states: ". . . . Respondent is not subject to the safe harbor provision." Order to Show Cause fn. 1.

119.    The OBNDD Defendants told Plaintiffs that they could not approve the transfer of ownership until Plaintiffs obtained their COO.

120.    In or about September 2025, Plaintiffs filed their renewed application with OBN based on finally receiving the COO after waiting for two (2) years.

121.    On September 4, 2025, the OBNDD Defendants issued a "Notice of Registration Termination" to Plaintiffs based on the transfer from Amie Seals to Plaintiff Un Sun Kim. If Plaintiffs had received the COO in a timely manner, like all other non-medical cannabis related COO applications, then Plaintiffs OBNDD registration would not have been revoked.

122.    Just seven (7) days later, on September 11, 2025, the timing of which is very suspicious, Plaintiff Splash Farms received the COO from the Oklahoma State Fire Marshall Defendants after waiting for over two (2) years. If they had received their COO prior to the transfer, their OBNDD registration would not have been revoked.

123.    As a result of Defendants' actions and inactions, and pattern and practice, and deliberate attempts to drive "[e]ven the people that do this legally" "out of business,", Plaintiffs have suffered additional irreparable and monetary damages.

### Plaintiff Plasma Green, Inc.

124.    Plaintiff Plasma Green, Inc. is an Oklahoma corporation lawfully engaged in the medical marijuana business in the State of Oklahoma, with OMMA License No. GAAI NPNV-LRFS and OBNDD Registration No. 10007212, located in Alex, Grady County, Oklahoma. Plaintiffs own the property.

125. Plaintiff Qiao Jia Liao is 100% owner of Plasma Green Inc.

126. In or about 2021, Plaintiffs began legally operating a medical marijuana grow facility.

127. Plaintiffs applied for the newly required ex post facto COO on or about August 29, 2023.

128. In or about October/November 2023, Plaintiffs transferred ownership from Willard Glasco to Plaintiff Qui Jia Liao. Defendant OMMA authorized the transfer.

129. The OBNDD Defendants told Plaintiffs that they could not approve the transfer of ownership until Plaintiffs obtained their COO, as a result Plaintiffs were stuck in the middle and unable to operate under the new ownership.

130. On or about June 25, 2025, Plaintiffs received a notice from the OBNDD Defendants, stating that their renewal was rejected due to ownership discrepancy, and their registration was terminated on July 25, 2025.

131. On December 27, 2024, the OBNDD Defendants issued an Order to Show Cause seeking to revoke Plaintiffs' OBNDD registration, alleging Plaintiffs committed the violations: "until such time as a valid certificate of occupancy is obtained for all applicable structures pursuant to 63 O.S. §426.1(E)(5)." To add insult to injury, and as further evidence of Defendants' arbitrary and illegal intent, while Plaintiffs had filed their COO application prior to February 2024, the OBNDD's Defendants' Rule to Show Cause states: ". . . . Respondent is not subject to the safe harbor provision." Order to Show Cause fn. 1.

132. On or about August 11, 2025, Plaintiffs finally received their COO from the Oklahoma State Fire Marshall Defendants.

133. In or about September 2025, Plaintiffs filed their renewed application with OBN based on finally receiving the COO after waiting for two (2) years.

134.    On September 10, 2025, the OBNDD Defendants issued a "Notice of Registration Termination" to Plaintiffs based on the transfer from Willard Glasco to Plaintiff Qui Jia Liao. If Plaintiffs had received the COO in a timely manner, like all other non-medical cannabis related COO applications, then Plaintiffs OBNDD registration would not have been revoked.

135.    As a result of Defendants' actions and inactions, and pattern and practice, and deliberate attempts to drive "[e]ven the people that do this legally" "out of business,", Plaintiffs have suffered additional irreparable and monetary damages.

### *Plaintiffs Craft Buds, LLC and Craft Buds Processing, LLC*

136.    Plaintiffs Craft Buds, LLC is an Oklahoma limited liability company that was lawfully engaged in the medical marijuana business in the State of Oklahoma, with OMMA License No. GAAA-NJZF-ILFV and OBNDD Registration No. 59369 located in SAPULPA, Creek County, Oklahoma. Plaintiffs own the property.

137.    Plaintiffs Craft Buds Processing, LLC is an Oklahoma limited liability company that were lawfully engaged in the medical marijuana business in the State of Oklahoma, with OMMA License No. PAAA-4JOY-D6HJ and OBNDD Registration No. 70595 located in SAPULPA, Creek County, Oklahoma. Plaintiffs own the property.

138.    Plaintiff William Kuhn is 100% of both Craft Buds, LLC and Craft Buds Processing, LLC.

139.    In July 2023, Defendant OMMA approved the sale to Mr. Kuhn.

140.    Plaintiff William Kuhn invested millions of dollars in these medical marijuana businesses.

141.    Upon approval by OMMA of the sale, Plaintiff Kuhn paid $9,000 in application fees to OMMA and OBNDD.

142.    On August 17, 2022, Plaintiffs Craft Buds, LLC and Craft Buds Processing, LLC received their registrations from OBNDD with a renewal date of October 31, 2023.

143.     On October 17, 2022, Plaintiff Craft Buds Processing, LLC received its License Certificate from OMMA, which states: "The license issued by the Oklahoma State Department of Health, Oklahoma Medical Marijuana Authority to certify *the above has fulfilled the requirements of 63 O.S. § 420 et seq. . . .*" (Emphasis added.) The license had an expiration and renewal date of October 17, 2023.

144.     On November 27, 2022, Plaintiff Craft Buds, LLC received its License Certificate from OMMA, which states: "The license issued by the Oklahoma State Department of Health, Oklahoma Medical Marijuana Authority to certify *the above has fulfilled the requirements of 63 O.S. § 420 et seq. . . .*" (Emphasis added.) The license had an expiration and renewal date of November 27, 2023.

145.     Plaintiffs detrimentally relied on Defendants' representations as to what was required for the business licenses before he invested over $1,500,000.00.

146.     In or about August 2023, the OMMA and OBNDD Defendants informed Plaintiffs that they had to submit a COO with their 2023 renewal application for fiscal year 2024. Plaintiffs had never previously been required to submit a COO, despite having operated without incident since 2017.

147.     Plaintiffs specifically bought this business because it was one of the oldest licenses without any incidents of infractions, and one of the cleanest facilities in the industry.

148.     In or about October 2023, the OMMA Defendants told Plaintiffs that their license would be put on suspension pending renewal and compliance with the ex post facto COO requirements. However, Plaintiffs never received any suspension notice at that time, but on OBN their application showed as "rejected" pending the Fire Marshall Defendants' review and approval.

149.    Plaintiffs made absolutely no changes to the buildings or structures from the time OMMA and OBNDD originally approved the licenses and registrations year after year (since 2017) to warrant a sudden halt in Plaintiffs' operations.

150.    In June or July 2024, the OMMA Defendants updated Plaintiffs' licenses to suspension, and Plaintiffs were locked out of Metrc. As a result, Plaintiffs were forced to close the businesses.

151.    Defendants deprived Plaintiffs of a hearing or an opportunity to be heard prior to suspending their operations.

152.    In or about August 2024, Plaintiffs filled out their second renewal application and for a COO.

153.    The State Fire Marshall Defendants were unresponsive, despite Plaintiffs repeated calls and attempts to move the process along and to get information.

154.    Plaintiffs did not receive any notices that they had to apply for this ex post facto COO before February 2024.

155.    On September 8, 2024, the OBNDD Defendants issued an Order to Show Cause seeking to revoke Plaintiffs' OBNDD registration, "until such time as a valid certificate of occupancy is obtained for all applicable structures pursuant to 63 O.S. §426.1(E)(5)."

156.    The Order to Show Cause states: "Respondent is an OBNDD applicant for renewal *currently authorized* to manufacture and distribute controlled dangerous substances (Marijuana) within the State of Oklahoma pursuant to 63 O.S. § 2-302," (emphasis added), despite the fact that in June or July 2024, the OBNDD Defendants suspended Plaintiffs registrations.

157.    Defendants forced Plaintiffs to close their businesses entirely because they were not able to operate, employees quit, and the entire investment was lost.

158.    As a result of Defendants' actions and inactions, and pattern and practice, and deliberate attempts to drive "[e]ven the people that do this legally" "out of business,", Plaintiffs have suffered additional irreparable and monetary damages. Plaintiffs were forced to file for bankruptcy and lost over $3,500,000.00 as a result of Defendants' conduct.

### Plaintiff 918 Boys Ranch, LLC

159.    Plaintiff 918 Boys Ranch, LLC is an Oklahoma limited liability company lawfully engaged in the medical marijuana business in the State of Oklahoma, with OMMA License No. GAAA-XGVY-WH1O and OBNDD Registration No. 10003968, located in Haskell, Muskogee County, Oklahoma. Plaintiffs own the property.

160.    Plaintiff Claud Chiles Sr. is a 75% owner of Plaintiff 918 Boys Ranch; Plaintiff John Chiles is a 12.5% owner; and Claud Chiles Jr. is a 12.5% owner.

161.    In 2022, Plaintiffs began legally operating a medical marijuana grow facility.

162.    In or about August 2023, the OMMA and OBNDD Defendants informed Plaintiffs that they had to submit a COO with their 2023 renewal application for fiscal year 2024. Plaintiffs had never previously been required to submit a COO, despite having operated without incident since 2019.

163.    Plaintiffs were told that they were to get their COO from the Muskogee Fire Marshall, which is what they attempted to do. Then later, Plaintiffs were told that Muskogee Fire Marshall did not have jurisdiction to issue a COO and that they had to obtain one from the Oklahoma State Fire Marshall, resulting in further delays.

164.    On September 15, 2024, the OBNDD Defendants issued an Order to Show Cause seeking to revoke Plaintiffs' OBNDD registration, "until such time as a valid certificate of occupancy is obtained for all applicable structures pursuant to 63 O.S. §426.1(E)(5)."

165.    Before the OBNDD Defendants, Plaintiffs were not allowed discovery or an opportunity to be heard.

166. On September 8, 2025, the OBNDD Defendants issued a final order revoking Plaintiffs' OBNDD license because Plaintiffs has not yet received the ex post facto COO from the State Fire Marshall Defendants.

167. The night before the final order, Plaintiffs received their building permit, which is a necessary step in the final process to receiving a COO.

168. As of October 8, 2025, Plaintiffs have been listed as "Inactive" on OBN.

169. Plaintiffs are just now in the final stages of receiving their COO, despite having applied in May 2024.

170. As a result of Defendants' actions and inactions, and pattern and practice, and deliberate attempts to drive "[e]ven the people that do this legally" "out of business,", Plaintiffs have suffered additional irreparable and monetary damages.

### *Plaintiff Ozark Growers, LLC*

171. Plaintiff Ozark Growers, LLC is an Oklahoma limited liability company lawfully engaged in the medical marijuana business in the State of Oklahoma, with OMMA License No. GAAI-JST7-46WR and OBNDD Registration No. 10007196, located in Wyandotte, Ottowa County, Oklahoma. Plaintiffs own the property.

172. Plaintiff Brandon Middick is a 75% owner of Plaintiff Ozark Growers, LLC.

173. Plaintiff Tiffany Blair is a 12.5% owner of Plaintiff Ozark Growers, LLC.

174. Plaintiff Michael Blair is a 12.5% owner of Plaintiff Ozark Growers, LLC.

175. In or about 2021, Plaintiffs purchased the property and put a substantial amount of money into the business to operate a medical marijuana grow facility. Plaintiffs also worked with the local fire department, like other Class Plaintiffs, that were not in the jurisdiction of the Oklahoma State Fire Marshall, to ensure that they met all of the requirements for building codes and inspections. Plaintiffs passed all inspections with "flying colors."

176.     In or about October 2023, the OMMA and OBNDD Defendants informed Plaintiffs that they had to submit a COO with their 2023 renewal application for fiscal year 2024. Plaintiffs had never previously been required to submit a COO, despite having operated without incident since 2019.

177.     Plaintiffs went to their local Fire Marshall and obtained a COO.

178.     In or about October 2023 and February 2024, Plaintiffs submitted the COO to the OBNDD Defendants and the OMMA Defendants respectively as part of their renewal applications for 2024.

179.     The OMMA Defendants approved Plaintiffs renewal application; however, the OBNDD Defendants delayed processing the application.

180.     Plaintiffs have had two (2) OMMA licenses renewed based on the COO from the local Fire Marshall, yet the OBNDD Defendants delayed in processing the application, and never communicated to Plaintiffs any issues.

181.     On or about April 22, 2025, Plaintiffs received a letter from the OBNDD Defendants stating that their renewal application was "Denied," stating that "The applicant has failed to show proof of a certificate of occupancy."

182.     Based on the arbitrary and malicious rejection by the OBNDD Defendants, Plaintiffs submitted an application with the Oklahoma State Fire Marshall Defendants.

183.     In or about October 2025, Plaintiffs received their building permit based on their application to the Oklahoma State Fire Marshall Defendants in January 2025 – *ten (10) months later* (which is a short time frame in comparison to some Plaintiffs and class members having to wait years). Plaintiffs are waiting for their final inspection from the Oklahoma State Fire Marshall Defendants, which could be another five (5) to six (6) months or longer. The delays are intended to and do cripple legitimate businesses like Plaintiffs.

184.    As a result of Defendants' actions and inactions, and pattern and practice, and deliberate attempts to drive "[e]ven the people that do this legally" "out of business,", Plaintiffs have suffered additional irreparable and monetary damages.

### *Plaintiff At Joy Growers, LLC*

185.    Plaintiff At Joy Growers, LLC, d/b/a/ Pot Belly Farms, is an Oklahoma limited liability company lawfully engaged in the medical marijuana business in the State of Oklahoma, with OMMA License Nos. GAAI-6IC9-YBBG (indoor), GAAO-6IC9-YBBG (outdoor), and PAAA-QV7G-Q4QZ (processing) and OBNDD Registration No. 77283, located in Quapaw, Ottawa County, Oklahoma. Plaintiffs own the property.

186.    Plaintiff Darin Atkinson is 38% owner of Plaintiff Joy Growers, LLC.

187.    Plaintiff Melissa Atkinson is 37% owner of Plaintiff Joy Growers, LLC.

188.    Plaintiff Dan Joy is 13% owner of Plaintiff Joy Growers, LLC.

189.    Plaintiff Jane Joy is 12% owner of Plaintiff Joy Growers, LLC.

190.    In or about 2020, Plaintiffs began legally operating a medical marijuana grow facility, which includes an indoor and an outdoor grow and processing under the same OMMA and OBNDD licenses.

191.    In or about August 2023, the OMMA and OBNDD Defendants informed Plaintiffs that they had to submit a COO with their 2023 renewal application for fiscal year 2024. Plaintiffs had never previously been required to submit a COO, despite having operated without incident since 2019.

192.    In or about September 2023, Plaintiffs started the process of obtaining a COO for their OBNDD renewal application.

193.    On or about September 5, 2023, a representative from OBNDD advised Plaintiff Darin Atkinson and the local Fire Marshall for Ottawa County that OBNDD would accept the

local Fire Marshall's COO, that was now, ex post facto, required for their renewal application, which had to be submitted by October 31, 2023.

194.     On or about October 19, 2023, Plaintiffs submitted the completed renewal application with the COO from the local Fire Marshall to the Oklahoma State Fire Marshall Defendants, which was accepted.

195.     On or about October 31, 2023, Plaintiffs' application with the Oklahoma State Fire Marshall was rejected, stating that the local Fire Marshall was now not accepted. Plaintiffs were forced to start the process all over as a result.

196.     Defendants offered that Plaintiffs could use a third party (providing them with only three (3) options) to process the COO applications, and then later while they were in the process of retaining a third party, removed that as an option.

197.     Because Defendants constantly changed the "rules of the game" and outright rejected Plaintiffs' application over minor changes, Plaintiffs were not able to submit their renewal application to the Oklahoma State Fire Marshall Defendants until October 10, 2024.

198.     Plaintiffs were forced to wait for over one (1) year for a response from the Oklahoma State Fire Marshall Defendants.

199.     In or about September 2025, Plaintiffs finally received a response from the State Fire Marshall Defendants, in which Defendants gave Plaintiffs seven (7) days to make a correction.[2] Plaintiffs complied.

200.     On December 27, 2024, the OBNDD Defendants issued an Order to Show Cause seeking to revoke Plaintiffs' OBNDD registration, "until such time as a valid certificate of occupancy is obtained for all applicable structures pursuant to 63 O.S. §426.1(E)(5)."

201.     Plaintiffs requested a hearing before the OBNDD.

---

[2]     Had Defendants allowed Plaintiffs to make a correction to their COO application in 2023 when they originally submitted it, Plaintiff would have fallen under the safe harbor provisions.

202.     Plaintiffs were not allowed discovery or an opportunity to be heard before the OBNDD Defendants.

203.     On October 15, 2025, the Hearing Officer for the OBNDD Defendants issued a report and recommendation claiming that "[t]o date, [Plaintiff] has not submitted an OBN required certificate of occupancy for any used or occupied buildings or structures. . . .," when in fact on October 19, 2023, Plaintiffs submitted their renewal application with the COO, which was later deemed by the OBNDD Defendants as unauthorized because it was issued by the local Fire Marshal.

204.     On or about November 14, 2025, the OBNDD Defendants issued a final order revoking Plaintiffs' OBNDD license because Plaintiffs has not yet received the ex post facto COO from the State Fire Marshal Defendants.

205.     The OBNDD Final Order also states in relevant part that "[Plaintiffs'] OBNDD registration is hereby **REVOKED** *effective thirty (30) days from the date this final order is filed*. Upon the effective date of revocation, Respondent shall not be permitted to possess, manufacture, distribute, dispense, prescribe, administer, or use for scientific purposes any controlled dangerous substance within or into the State of Oklahoma." (Emphasis added.)

206.     But then the Final Order goes on to provide conflicting terms stating that "[Plaintiffs] *shall immediately cease* any further disposition, purchase, distribution, sale, or transfer of controlled dangerous substances." (Emphasis added.)

207.     Despite these conflicting terms, Plaintiffs OBNDD license remained "ACTIVE" through OBNDD through December 14, 2025.

208.     The OBNDD Defendants' revocation order also impacts Plaintiffs' outdoor grow, despite the fact that no COO is required for an outdoor grow.

209.    Plaintiffs are still facing constant changes to the "rules of the game" to receive a final inspection from the State Fire Marshall Defendants to obtain their COO and begin operating again.

210.    As a result of Defendants' actions and inactions, and pattern and practice, and deliberate attempts to drive "[e]ven the people that do this legally" "out of business,", Plaintiffs have suffered additional irreparable and monetary damages.

### *Plaintiff Happy Harry's Medicine Shop*

211.    Plaintiff HHMS LLC Dispensary ("Happy Harry's Medicine Shop"), is an Oklahoma limited liability company lawfully engaged in the medical marijuana business in the State of Oklahoma, with OMMA License No. DAAA-C28Z-90F7 and OBNDD Registration No. 10008291, located in Wyandotte, Ottawa County, Oklahoma. Plaintiffs own the property.

212.    Plaintiff Darin Atkinson is 32.5% owner of Plaintiff HHMS LLC Dispensary.

213.    Plaintiff Melissa Atkinson is 32.5% owner of Plaintiff HHMS LLC Dispensary.

214.    Plaintiff Dan Joy is 12.5% owner of Plaintiff HHMS LLC Dispensary.

215.    Plaintiff Jane Joy is 12.5% owner of Plaintiff HHMS LLC Dispensary.

216.    Plaintiff Mark Malone is 5% owner of Plaintiff HHMS LLC Dispensary.

217.    Plaintiff Nancy Malone is 5% owner of Plaintiff HHMS LLC Dispensary.

218.    In or about 2020, Plaintiffs began legally operating a medical marijuana dispensary.

219.    In or about 2020, Plaintiffs began legally operating a medical marijuana dispensary facility.

220.    In or about August 2023, the OMMA and OBNDD Defendants informed Plaintiffs that they had to submit a COO with their 2023 renewal application for fiscal year 2024. Plaintiffs had never previously been required to submit a COO, despite having operated without incident since 2019.

221.    In or about September 2023, Plaintiffs started the process of obtaining a COO for their OBNDD renewal application.

222.    Plaintiffs incorporate by way of reference Paragraphs 191 through 199 (before notice by OBN) *supra.*

223.    The OMMA and OBNDD Defendants notified Plaintiffs that they would be required to obtain a COO for the dispensary for their 2026 renewal application.

224.    Plaintiffs submitted their COO application for the dispensary in August 2025.

225.    Plaintiffs are still facing constant changes to the "rules of the game" to receive a final inspection from the State Fire Marshall Defendants to obtain their COO.

226.    As a result of Defendants' actions and inactions, and pattern and practice, and deliberate attempts to drive "[e]ven the people that do this legally" "out of business,", Plaintiffs have suffered additional irreparable and monetary damages.

### ***Plaintiff Richard Dopp***

227.    Plaintiffs Richard Dopp, a/k/a Richard Lynn Dopp, and d/b/a Doc's Med Grow operates and lawfully engaged in the medical marijuana business in the State of Oklahoma, with OMMA License Nos. GAAO-4JUR-CZAP (grow) and OBNDD Registration No. 73835, located in Miami, Ottawa County, Oklahoma.

228.    Plaintiff Richard Dopp is 100% owner.

229.    In or about 2019, Plaintiff began legally operating a medical marijuana grow facility, and in or about 2021, a dispensary at the same location, and was issued OMMA License No. DAAA-W4MD-ZGG9, which was under same OBNDD Registration No. 73835 Manufacturer.

230.    In or about 2022-2023, the OMMA Defendants notified Plaintiff that he could no longer operate under "Doc's Med Grow," because it was not a registered LLC, forcing a business

name change to Richard Dopp on the grow license, and Richard Lynn Dopp on the dispensary license. However, OMMA never fixed Plaintiff's middle name on the licenses.

231.    Plaintiff received notices from the OMMA and OBNDD Defendants, advising Plaintiff that he was required to have a COO.

232.    Plaintiff subsequently applied for a COO.

233.    In or about September 2023, Plaintiff's COO application was rejected.

234.    Plaintiff was forced to hire an attorney to assist in submitting additional COO application paperwork, which was filed on or about December 6, 2023.

235.    Plaintiff then acquired a separate OBNDD Registration No. 10014231 under "Richard Lynn Dopp" for his dispensary as a safeguard measure due to COO requirements, whereas OBNDD Registration No. 73835 was pending renewal for the grow.

236.    On December 27, 2024, the OBNDD Defendants issued an Order to Show Cause seeking to revoke Plaintiffs' OBNDD registration (No. 73835), "until such time as a valid certificate of occupancy is obtained for all applicable structures pursuant to 63 O.S. §426.1(E)(5)."

237.    Before the OBNDD Defendants, Plaintiffs were not allowed discovery or an opportunity to be heard.

238.    On or about April 29, 2025, Plaintiff's registration renewal for Registration No. 73835 was rejected allowing 30 days to correct deficiencies and resubmit.

239.    Plaintiff telephoned OBNDD to determine what deficiency needed correction and was advised the business name on his OBNDD registration No. 73835 application did not match his OMMA Grow license and therefore needed to file a complete new application and submit another filing fee.

240.    Plaintiff complied by filing within the 30-day timeframe.

241.    At some point, but as early as April 29, 2025, the OBNDD Defendants inactivated Plaintiff's Registration No. 73835, without giving Plaintiff any notice, resulting in Plaintiff having to dispose of approximately 1,369 plants prematurely.

242.    Plaintiff hired attorneys again to attempt to resolve that inactivation issue.

243.    As a result of the OBNDD Defendants' actions, as referenced above, a new OBNDD Registration No. 10019259 was obtained under Richard Dopp for the outdoor grow.

244.    On or about August 26, 2025, Plaintiffs received an email from the OBNDD Defendants stating that he "failed to provide information," and that he had 30 days to comply; however, the email did not specify what information he failed to provide. Plaintiff Dopp called OBNDD and was told that he needed to send the building permit, which he did.

245.    Plaintiffs received their building permit and are waiting on the COO from the Oklahoma State Fire Marshall Defendants.

246.    Plaintiffs' dispensary (OBN#10014231) is still listed as "Active" with OBN but with an expiration date of October 31, 2025, which is already passed. Plaintiff has not received any notices from Defendants, or an opportunity to be heard regarding his dispensary license.

247.    As a result of Defendants' actions and inactions, and pattern and practice, and deliberate attempts to drive "[e]ven the people that do this legally" "out of business,", Plaintiffs have suffered additional irreparable and monetary damages.

### *Plaintiff Apogee Extracts, LLC*

248.    Plaintiff Apogee Extracts, LLC is an Oklahoma limited liability company lawfully engaged in the medical marijuana business in the State of Oklahoma, with OMMA License No. PAAA-AMHFO7IV (processor) and OBNDD Registration No. 10003269, located in Ada, Pontotoc County, Oklahoma.

249.    Plaintiff Lisa Hector is 75% owner; Plaintiff Laurence Hicks is 5.9375% owner; Plaintiff Thomas C. Matsko is 5.9375% owner; Plaintiff Robert Wills is 5.9375% owner;

Plaintiff Evan Kajander is 5.9375% owner; and Plaintiff Nhu Truong is 1.25% owner of Plaintiff Apogee Extracts.

250.    Plaintiffs were issued a processing license with OMMA originally on October 20, 2021.

251.    All licenses from the OMMA Defendants certified that "***the [Plaintiff Apogee Extracts] has fulfilled the requirements of 63 O.S. § 420 et seq. . . .***" (Emphasis added.)

252.    Plaintiffs received renewals of their licenses from OMMA every year through 2023.

253.    Plaintiffs also received their OBNDD Registration without incident, with the last expiring on October 31, 2023.

254.    Despite having been legally operating since 2021, the Oklahoma LP Gas Board retroactively required Plaintiff to have a "class 6 gas permit." A representative of the LP Gas Board told Plaintiffs that they would need to comply with codes that are meant for LPG storage facilities with tanks larger than 5,000 lbs, despite the fact that Plaintiffs did not have tanks this large and were not an LPG storage facility. The LP Gas Board refused to give Plaintiffs code references, but told them that they would be required to meet them.

255.    In or about February 2023, Plaintiffs submitted the ex post facto application for the retroactive application of the COO.

256.    Plaintiffs were also required to re-submit their application to the LP Gas Board.

257.    In or about July 2023, Plaintiffs received their first inspection from the LP Gas Board Defendants, and were told that they would need to make several major changes to their equipment and building to get approval, including flying their engineering firm CPCetz out to the facility to be onsite during the inspection. None of which were discussed during Plaintiffs' initial application process. Again, Defendant government agencies changing the rules of the game to delay and destroy legally operating medical marijuana businesses.

258.    In or about August 2023, the State Fire Marshall Defendants approved Plaintiffs' building permits, but the operations of Plaintiffs processing business was delayed because of the new, additional requirements from the Fire Marshall Defendants and the LP Gas Board Defendants.

259.    The intentional and deliberate delays continued for years.

260.    In September 2024, Plaintiffs received their final inspection and were told that they would receive their COO and class 6 gas permit "within a couple of weeks." Despite this, the delays and intentional stalling to destroy legitimate businesses continued.

261.    Finally in August 2025, almost another year later, Plaintiffs received their COO.

262.    However, Defendant LP Gas Board attempted to require Plaintiffs to pay a "$2,500 renewal for class 6 gas permit" even though a permit had never been required or issued before.

263.    Finally in October 2025, Plaintiffs received their class 6 gas permit from Defendant LP Gas Board.

264.    Plaintiffs were forced to close and lost millions of dollars that they had invested and in profits because of Defendants ex post facto requirements and delays. Plaintiffs are now unable to operate because they have lost money and are forced to close; all of their investors have left, and they are forced to short sell the business as a result.

265.    As a result of Defendants' actions and inactions, and pattern and practice, and deliberate attempts to drive "[e]ven the people that do this legally" "out of business,", Plaintiffs have suffered additional irreparable and monetary damages.

### *Plaintiff Cimarron Syndicate Genetics, LLC*

266.    Plaintiff Cimarron Syndicate Genetics, LLC is an Oklahoma limited liability company lawfully engaged in the medical marijuana business in the State of Oklahoma, with

39

OMMA License No. GAAI-4KV9-ITK6 and OBNDD Registration No. 66600, located in Stillwater, Payne County, Oklahoma.

267.    Plaintiff Brandan Isley is 100% owner of Plaintiff Cimarron Syndicate Genetics, LLC.

268.    In or about 2019, Plaintiffs began legally operating a medical marijuana grow facility.

269.    In or about June or July 2023, Plaintiffs received information that OBNDD was going to require COO's for renewals. Plaintiff Isley called OBNDD and was told that they were only requiring COO's for new businesses and not those already established, but that it was a good idea to go ahead and apply.

270.    Plaintiffs had never previously been required to submit a COO, despite having operated without incident since 2019.

271.    Plaintiffs submitted their COO application in March 2024. Plaintiff received a rejection the following week, rather than a request for corrections, which pushed the applications back even further.

272.    Plaintiffs COO application was finally accepted in October 2024.

273.    Almost a year after the application was accepted, the State Fire Marshall Defendants were still asking for information.

274.    On December 27, 2024, the OBNDD Defendants issued an Order to Show Cause seeking to revoke Plaintiffs' OBNDD registration, "until such time as a valid certificate of occupancy is obtained for all applicable structures pursuant to 63 O.S. §426.1(E)(5)."

275.    Before the OBNDD Defendants, Plaintiffs were not allowed discovery or an opportunity to be heard.

276.    On October 10, 2025, the Hearing Officer for the OBNDD Defendants issued a report and recommendation claiming that "[t]o date, [Plaintiff] has not submitted an OBN

required certificate of occupancy for any used or occupied buildings or structures. . . .," when in fact in March 2024, Plaintiffs submitted their renewal application, and it has been "pending" since then.

277.    On October 31, 2025, the OBNDD Defendants issued a final order revoking Plaintiffs' OBNDD license because Plaintiffs has not yet received the ex post facto COO from the State Fire Marshall Defendants.

278.    As a result of Defendants' actions and inactions, and pattern and practice, and deliberate attempts to drive "[e]ven the people that do this legally" "out of business,", Plaintiffs have suffered additional irreparable and monetary damages.

### Plaintiff Slab Labz, LLC

279.    Plaintiff Slab Labz, LLC is an Oklahoma limited liability company lawfully engaged in the medical marijuana business in the State of Oklahoma, with OMMA License No. PAAA-E1GY-MM0I and OBNDD Registration No. 66872, located in Stillwater, Payne County, Oklahoma.

280.    Plaintiff Brandan Isley is 100% owner of Plaintiff Slab Labz, LLC.

281.    In or about 2019, Plaintiffs began legally operating a medical marijuana processing facility.

282.    In or about June or July 2023, Plaintiffs received information that OBNDD was going to require COO's for renewals. Plaintiff Isley called OBNDD and was told that they were only requiring COO's for new businesses and not those already established, but that it was a good idea to go ahead and apply.

283.    Plaintiffs had never previously been required to submit a COO, despite having operated without incident since 2019.

284.    Plaintiffs submitted their COO application in March 2024. Plaintiff received a rejection the following week, rather than a request for corrections, which pushed the applications back even further.

285.    Plaintiffs COO application was finally accepted in October 2024.

286.    Almost a year after the application was accepted, the State Fire Marshall Defendants were still asking for information.

287.    On December 27, 2024, the OBNDD Defendants issued an Order to Show Cause seeking to revoke Plaintiffs' OBNDD registration, "until such time as a valid certificate of occupancy is obtained for all applicable structures pursuant to 63 O.S. §426.1(E)(5)."

288.    Before the OBNDD Defendants, Plaintiffs were not allowed discovery or an opportunity to be heard.

289.    On October 10, 2025, the Hearing Officer for the OBNDD Defendants issued a report and recommendation claiming that "[t]o date, [Plaintiff] has not submitted an OBN required certificate of occupancy for any used or occupied buildings or structures. . . .," when in fact in March 2024, Plaintiffs submitted their renewal application, and it has been "pending" since then.

290.    On October 31, 2025, the OBNDD Defendants issued a final order revoking Plaintiffs' OBNDD license because Plaintiffs has not yet received the ex post facto COO from the State Fire Marshall Defendants.

291.    As a result of Defendants' actions and inactions, and pattern and practice, and deliberate attempts to drive "[e]ven the people that do this legally" "out of business,", Plaintiffs have suffered additional irreparable and monetary damages.

## B. DEFENDANTS

### *The OMMA Defendants*

292.    Defendant Oklahoma Medical Marijuana Authority ("OMMA") is the state agency responsible for administering and enforcing the medical marijuana licensing regime, including the challenged provisions and coordinated pattern and practices.

293.    Defendant Adria Berry is the Executive Director of OMMA and is responsible for enforcing the challenged provisions and practices and is sued in her official and individual capacity.

294.    Defendant Adria Berry is a policy maker and has policy making authority.

295.    These Defendants are collectively referred to as "the OMMA Defendants."

### *The OBNDD Defendants*

296.    Defendant Oklahoma Bureau of Narcotics and Dangerous Drugs Control (OBNDD) is the state agency responsible for enforcing the challenged provisions and pattern and practices, including administrative actions based on COO ex post facto requirements and delays, and other actions as alleged herein to drive "[e]ven the people that do this legally" "out of business."

297.    Defendant Donnie Anderson is the Executive Director of OBNDD, responsible for enforcing the challenged pattern and practices, and is sued in his official and individual capacity.

298.    Defendant Anderson is a policy maker and has policy making authority.

299.    These Defendants are collectively referred to as "the OBNDD Defendants."

### *The State Fire Marshall Defendants*

300.    Defendant Oklahoma State Fire Marshal is responsible for processing COO applications and contributing to delays affecting Plaintiffs and class members.

301.    Defendant Keith Bryant is the Oklahoma State Fire Marshal, responsible for processing COO applications and contributing to delays affecting Plaintiffs and class members, and is sued in his individual and official capacity.

302.    Defendant Bryant is a policy maker and has policy making authority.

303.    These Defendants are collectively referred to as "the State Fire Marshall Defendants."

### LP Gas Administration

304.    Defendant LP Gas Administration is responsible for processing COO applications as it relates to processing labs that use LP gas, and contributing to delays affecting Plaintiffs and class members.

### Governor Kevin Stitt

305.    Defendant Kevin Stitt is the Governor and chief executive officer of the State of Oklahoma, a policy maker, and responsible for overseeing enforcement of state laws, including the crackdown initiatives, and is sued in his official capacity.

### Attorney General As Necessary Party

306.    Defendant Oklahoma Attorney General is a necessary Party and is served a copy of this suit in his official capacity for notice purposes.

307.    Defendants OMMA, OBNDD, Bryant, Anderson, and Governor Stitt are sued in their official capacity for prospective declaratory and injunctive relief only as to those claims.

308.    Defendants OMMA, OBNDD, Bryant, Governor Kevin Stitt, Berry, Anderson are sued in their official capacity under all other claims.

309.    The individual Defendants Berry, Anderson, and Bryant are also sed in their individual capacities for monetary damages under 42 U.S.C. § 1983 and the State law claims.

## V.     CLASS ACTION ALLEGATIONS

310.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on behalf of the following class (Class Definitions):

a.     **Injunctive and Declaratory Relief Class (Rule 23(b)(2)):** All persons or entities that held a valid OMMA commercial license (grower, processor, or dispensary) as of June 14, 2024, and who remain subject to the certificate of occupancy (COO) requirement imposed by the 2024 amendments to 63 O.S. § 426.1(C)-(E).

b.     **Damages Subclass (Rule 23(b)(3)):** All persons or entities that held a valid OMMA commercial license (grower, processor, or dispensary) as of June 14, 202, 2024, and whose license renewal was denied, whose license was revoked or suspended, or who were otherwise subjected to enforcement action (including fines, seizure, or forced closure) by OMMA or the OBNDD, based in whole or in part on non-compliance with the certificate of occupancy requirement imposed by the 2024 amendments to 63 O.S. § 426.1(C)-(E).

c.     **Intentional Destruction Class (Rule 23(a), (b)(2), and (b)(3)):** All persons or entities that held a valid OMMA commercial license (grower, processor, or dispensary) at any time between January 1, 2023, and the present, and whose business operations were adversely affected by enforcement actions taken by the OBNDD Defendants, where such actions were part of a policy or practice that included public statements acknowledging the intent to drive even legally compliant medical marijuana businesses out of operation.

### *Scale of Harm (Supporting Numerosity, Commonality, and Typicality)*

311.     Pursuant to and consistent with Fed. R. Civ. P. Rule 23(a)(1), the class meets the numerosity requirement, as it comprises several thousand members (conservatively 2,000–5,000

based on public OMMA/OBNDD data showing mass non-renewals in 2024–2025). Joinder is impracticable.

312.    As of December 2025, more than 4,000 commercial licenses – nearly half of all active commercial licenses in Oklahoma – have received COO-related deficiency or non-renewal notices.

313.    Over 2,000 licensed grows and processors have already been forced to cease operations or destroy inventory because of inability to obtain a COO for premises that have been legally operating since 2019-2023.

314.    The average licensed commercial grow in Oklahoma represents an investment of $750,000 to $4 million in buildings, equipment, irrigation, lighting, and compliance infrastructure, even before the ex post facto and retroactive COO requirement – the vast majority of which is now worthless or subject to forced sale at distress prices.

315.    More than 12,000 Oklahoma jobs (direct employees, trimmers, lab techs, dispensary staff) have been or will imminently be eliminated as a direct result of these retroactive COO non-renewals.

### Common Questions of Law and Fact (Rule 23 / 23 O.S. § 2023)

316.    Pursuant to Rule 23(a)(2), there are common questions of law and fact predominate, including:

   a.    Whether the imposition of the COO requirement on preexisting OMMA commercial licensees through the 2024 amendments to 63 O.S. § 426.1(C)-(E) constitutes impermissibly retroactive legislation in violation of the United States Constitution Article I, §§ 9, Clause 3, and 10, Clause 1 (Ex Post Facto);

   b.    Whether the imposition of the COO requirement on preexisting OMMA commercial licensees through the 2024 amendments to 63 O.S. § 426.1(C)-(E) constitutes impermissibly retroactive legislation in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution and Article 2, § 7 of the Oklahoma Constitution;

c. Whether licensees who complied with all applicable statutes, rules, and requirements in effect at the time of their initial licensure and subsequent renewals acquired protected property or liberty interests under the Due Process Clauses of the United States and Oklahoma Constitutions;

d. Whether the application of the COO requirement to preexisting licensees, without grandfathering or a reasonable phase-out period for compliant businesses, is arbitrary, capricious, or shocks the conscience in violation of substantive due process under the United States and Oklahoma Constitutions;

e. Whether Defendants' actions in enforcing the COO requirement against preexisting licensees violate procedural due process or equal protection under the Fourteenth Amendment to the United States Constitution or corresponding provisions of the Oklahoma Constitution;

f. Whether the coordinated enforcement actions of Defendants amount to a civil conspiracy in deprivation of class members' constitutional rights under 42 U.S.C. §§ 1983 and 1985;

g. Whether the coordinated enforcement actions of Defendants amount to a deprivation of class members' constitutional rights to Equal Protection and Due Process of law under 42 U.S.C. § 1983;

h. The nature and scope of declaratory and injunctive relief necessary to remedy the constitutional violations and prevent ongoing irreparable harm to class members.

317. Pursuant to Rule 23(a)(3), the Named Plaintiff's claims arise from the same

practice and are based on the same legal theory as the class, including:

a. Whether the imposition of the COO requirement on preexisting OMMA commercial licensees through the 2024 amendments to 63 O.S. § 426.1(C)-(E) constitutes impermissibly retroactive legislation in violation of the United States Constitution Article I, §§ 9, Clause 3, and 10, Clause 1 (Ex Post Facto);

b. Whether the imposition of the COO requirement on preexisting OMMA commercial licensees through the 2024 amendments to 63 O.S. § 426.1(C)-(E) constitutes impermissibly retroactive legislation in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution and Article 2, § 7 of the Oklahoma Constitution;

c. Whether licensees who complied with all applicable statutes, rules, and requirements in effect at the time of their initial licensure and subsequent renewals acquired protected property or liberty interests under the Due Process Clauses of the United States and Oklahoma Constitutions;

     d.     Whether the application of the COO requirement to preexisting licensees, without grandfathering or a reasonable phase-out period for compliant businesses, is arbitrary, capricious, or shocks the conscience in violation of substantive due process under the United States and Oklahoma Constitutions;

     e.     Whether Defendants' actions in enforcing the COO requirement against preexisting licensees violate procedural due process or equal protection under the Fourteenth Amendment to the United States Constitution or corresponding provisions of the Oklahoma Constitution;

     f.     Whether the coordinated enforcement actions of Defendants amount to a civil conspiracy in deprivation of class members' constitutional rights under 42 U.S.C. §§ 1983 and 1985;

     g.     Whether the coordinated enforcement actions of Defendants amount to a deprivation of class members' constitutional rights to Equal Protection and Due Process of law under 42 U.S.C. § 1983;

     h.     The nature and scope of declaratory and injunctive relief necessary to remedy the constitutional violations and prevent ongoing irreparable harm to class members.

318.    The Named Plaintiff's interests are aligned with and not antagonistic to those of the class, as all seek the same relief from the uniform retroactive application and enforcement of the COO requirement against preexisting compliant licensees.

319.    The Named Plaintiff's interests are aligned with and not antagonistic to those of the class, as all seek the same relief from the enforcement actions taken by the OBNDD Defendants, where such actions were part of a policy or practice that included public statements acknowledging the intent to drive even legally compliant medical marijuana businesses out of operation.

320.    Pursuant to Rule 23(a)(4), Plaintiffs and proposed class counsel have no conflicts and are committed to vigorously prosecuting the action.

321.    This action is maintainable under Rule 23(b)(2) because Defendants have acted on grounds that apply generally to the class, making final injunctive and declaratory relief appropriate respecting the class as a whole.

322.     This action is also maintainable under Rule 23(b)(3) because questions of law and fact common to class members predominate over individual questions, and a class action is superior to thousands of individual lawsuits.

## VI.    CAUSES OF ACTION

**COUNT I – 42 U.S.C. § 1983**
**Violation of the Ex Post Facto Clause**
**Article I, §§ 9, Clause 3, and 10, Clause 1 of the United States Constitution**
**(Against All Defendants)**

323.     Plaintiff and the Class incorporate by reference all preceding paragraphs.

324.     Article I, Section 10, Clause 1 of the United States Constitution states: "No . . . ex post facto Law shall be passed."

325.     Article I, Section 10, Clause 1 of the United States Constitution states in relevant part: "No State shall . . . pass any . . . ex post facto Law, or Law impairing the Obligation of Contracts. . . ."

326.     An ex post facto law is "[a] law passed after the occurrence of a fact or commission of an act, which retrospectively changes the legal consequences or relations of such fact or deed." *Starkey v. Oklahoma Dep't of Corr.*, 2013 OK 43, ¶¶ 36-37, 305 P.3d 1004, 1018.

327.     As the Supreme Court held in *Landgraf v. USI Film Prods.*: "The largest category of cases in which we have applied the presumption against statutory retroactivity has involved new provisions affecting ***contractual*** or ***property rights***, matters in which predictability and stability are of prime importance. 511 U.S. 244, 271, 114 S. Ct. 1483, 1500 (1994) (and fn. 25 citing cases therein). In *Landgraf*, Justice Stevens wrote that these constitutional protections: "demonstrate that retroactive statutes raise particular concerns. The Legislature's unmatched powers allow it to sweep away settled expectations suddenly and without individualized consideration. Its responsivity to political pressures poses a risk that it may be tempted to use

retroactive legislation as a means of retribution against unpopular groups or individuals." 511 U.S. at 271, 114 S. Ct. at 1500.

328.    "[T]he traditional presumption [is] against applying statutes affecting substantive rights, liabilities, or duties to conduct arising before their enactment." *Landgraf*, 511 U.S. at 278.

329.    As Justice Marshall observed in his opinion for the Court in *Weaver v. Graham*, the Ex Post Facto Clause not only ensures that individuals have "fair warning," but also "[t]he ban also restricts governmental power by restraining arbitrary and potentially vindictive legislation." 450 U. S. 24, 28-29, 101 S.Ct. 960 (1981). "[A] law need not impair a 'vested right' to violate the *ex post facto* prohibition. Evaluating whether a right has vested is important for claims under the Contracts or Due Process Clauses, which solely protect preexisting entitlements." *Id.* at 30.

330.    Defendants' application of Oklahoma's retroactive COO revocation results in among the following: disadvantages class members by revoking vested license rights and imposing severe economic sanctions, total destruction of a licensed business, permanent occupational debarment, physical seizure of property, forfeiture of property, banishment from a lawful trade, raids, criminal prosecution, criminal penalties, arrest, substantial fines, embargoed or ordered destruction of millions of dollars in plants and product that cannot be recouped, forced closure, all of which are classic forms of punishment.

331.    Further, the application results in strict liability for failing to possess a document that did not exist when the business was created.

332.    Defendant OBNDD Director Anderson admitted: "Even the people that do this legally, we're driving them out of business," which is evidence of an explicit deterrent and unlawful purpose.

333.     Defendants' application of Oklahoma's retroactive COO revocation also results in destroying 70–80% of an entire state industry segment, and more than $2.9 billion in economic output, which is grossly disproportionate to any conceivable regulatory goal.

334.     The retroactive COO requirement is therefore subject to, and violates, the Ex Post Facto Clause.

335.     Defendants acted under color of state law and pursuant to a stated policy, and pattern and practice, when they denied and stalled renewals, revoked licenses, seized property, and imposed retroactive requirements on existing and legally operating businesses, and imposed civil penalties, and other monetary damages on Plaintiffs and class members solely for failing to possess a COO that was not required when their businesses were licensed.

336.     These actions proximately caused Plaintiff and the Class severe economic loss, destruction of property interests, and emotional distress.

337.     Plaintiff and the Class have no adequate remedy at law.

338.     Plaintiff and the Class are entitled to declaratory relief, permanent injunctive relief, compensatory damages, and punitive damages.

**WHEREFORE**, Plaintiff and the Class pray for judgment as set forth below.


**COUNT II – 42 U.S.C. § 1983**
**Violation of the Substantive Due Process / 14th Amendment**
**(Against All Defendants)**

339.     Plaintiff and the Class incorporate by reference all preceding paragraphs.

340.     The Fourteenth Amendment forbids any State from depriving any person of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1.

341.     Substantive due process has two strands relevant here:

          a.     protection of fundamental rights; and

b.     prohibition on government action that "shocks the conscience" or is

arbitrary and oppressive regardless of procedural fairness.

342.     Statements made by the OBNDD Defendants – "Even the people that do this

legally, we're driving them out of business," they were going to "wipe out everybody and start

over," and they were going "to make all of these licenses go away," – provides direct evidence

that Defendants' concerted actions are arbitrary, oppressive, and lacks any legitimate public

purpose, especially when applied backward in time.

343.     Defendants' action lacks a legitimate legislative purpose furthered by rational

means, especially when coupled with the totality of the evidence, including the fact that all

Plaintiffs and class members were certified by the OMMA that they have "fulfilled the

requirements of 63 O.S. § 420 et seq. . . ."

344.     It is undisputed that the COO mandate is retroactive, as the COO requirement did

not exist in the statute when Plaintiffs and class members obtained their licenses (2018-2023).

345.     Senate Bill 1635 (2024) expressly made the new requirement applicable to all

existing licensees upon the next renewal or change of premises.

346.     This is textbook retroactivity, as it attaches new legal consequences to events

completed before its enactment.

347.     The retroactive application is arbitrary, oppressive, and lacks any legitimate

public purpose.

348.     A legitimate purpose exists only for prospective building-code compliance, *i.e.*,

public safety.

349.     No legitimate purpose is served by applying that requirement retroactively to

destroy thousands of businesses that were lawfully built and licensed under the prior regime, and

that were certified as complying with 63 O.S. § 420 et seq. . . ."

350.    Defendants cannot articulate, and have never articulated, how revoking an existing medical marijuana license holder like Plaintiffs and class members, many of which had been operating since 2019, and some as early as 2017, would make the public safer, when the facility has operated without incident for years.

351.    The only purposes served by retroactivity are punishment, deterrence, and industry contraction. Defendant Director Anderson's statement – "even the people that do this legally, we're driving them out of business" (among other statements by representatives of OBNDD and OMMA) – is direct evidence of illegitimate punitive intent.

352.    The scale of destruction confirms arbitrariness.

353.    Defendants had less drastic alternatives, such as grandfathering, phased compliance, amnesty, and not backdating the statute to several months (February 1, 2024) before it was passed in June 2024, but deliberately chose the most destructive path.

354.    Retroactive legislation that "takes property without just compensation or due process simply to save money" or to "punish past conduct" is unconstitutional.

355.    The retroactive COO mandate shocks the judicial conscience and is truly irrational.

356.    Defendants acted under color of state law, and pursuant to a pattern and practice, and stated policy.

357.    Defendants' arbitrary retroactive enforcement directly and proximately caused the total destruction of Plaintiffs' and the class members' constitutionally protected property interests in their licenses and businesses.

358.    Plaintiffs and the class members have no adequate remedy at law.

359.    Plaintiff and the Class are therefore entitled to the same declaratory, injunctive, and monetary relief on this claim as on the Ex Post Facto claim.

**WHEREFORE**, Plaintiff and the Class pray for judgment as set forth below.

**COUNT III – 42 U.S.C. § 1983**
**Violation of the Equal Protection Clause / 14th Amendment**
**(Against All Defendants)**

360.    Plaintiff and the Class incorporate by reference all preceding paragraphs.

361.    The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

362.    Plaintiffs and class members are legally operating medical marijuana businesses (growers, processors, and dispensaries) that have complied with all requirements under 63 O.S. § 420 *et seq*., as evidenced by annually issued License Certificates from OMMA certifying fulfillment of statutory requirements.

363.    Defendants, acting under color of state law, and pursuant to a policy and practice, have intentionally treated Plaintiffs and class members differently from other similarly situated businesses by imposing and enforcing unique, retroactive, and insurmountable regulatory barriers solely on medical marijuana licensees, with no rational basis for such differential treatment.

364.    The Equal Protection Clause prohibits state action that discriminates against an identifiable class without rational basis, particularly where motivated by animus or a desire to harm a politically unpopular or disliked group.

365.    Plaintiffs and class members constitute an identifiable class: lawfully licensed and operating medical marijuana businesses in Oklahoma, a discrete group targeted for suppression despite full compliance with applicable laws.

366.    Defendants have intentionally subjected this class to discriminatory treatment compared to similarly situated regulated industries (*e.g.*, pharmaceuticals, agriculture, veterinary clinics, and other OBNDD-regulated entities).

367.    This differential treatment is not rationally related to any legitimate state interest but is instead driven by illegitimate animus toward the medical marijuana industry, as directly evidenced by:

a.    Retroactively applying a COO requirement to existing, legally operating, medical marijuana facilities, despite no such requirement existing at the time of initial licensure or prior renewals;

b.    Backdating compliance deadlines (*e.g.*, via amendments effective June 14, 2024, requiring COO applications before February 1, 2024);

c.    Delaying processing of COO applications for medical marijuana businesses (often exceeding 2-3 years) while processing non-marijuana applications in 2-3 weeks;

d.    Rejecting renewal applications for minor, correctable errors and requiring full re-submission, resetting deadlines and ensuring non-compliance;

e.    Directing critical notices to spam folders to cause missed deadlines, while disclaiming email as valid service when convenient;

f.    Revoking entire registrations (affecting both indoor and outdoor grows under the same license) despite outdoor grows not requiring a COO; and

g.    Selectively enforcing these requirements only against medical marijuana businesses.

368.    Other similarly situated businesses regulated by Defendants or under comparable state oversight – such as pharmaceutical operations, agricultural facilities, and veterinary clinics (including at least five in Payne County operating without recorded COOs) – are not subjected to retroactive COO requirements for existing occupied structures, prolonged processing delays, or equivalent procedural impediments.

369.     Existing occupied buildings generally do not require new COOs under standard building codes, yet Defendants impose this ex post facto burden exclusively on Plaintiffs and class members.

370.     This differential treatment lacks any rational relationship to a legitimate governmental interest, such as public safety or regulatory compliance, as evidenced by:

a.     Direct statements from OMMA representatives in June 2024 expressing intent to "do whatever they had to do to make all of these licenses go away" and "wipe out everybody and start over";

b.     Defendant OBNDD Director Anderson's public acknowledgment that enforcement is "driving out of business . . . even the people that do this legally," while advocating for no more than 8-10 grows statewide (contrasted with more than 3,200 existing at the time);

c.     Boasting on OBNDD's public platforms about reducing registrations by thousands with minimal arrests;

d.     Withholding information about impending retroactive requirements to collect renewal fees before initiating shutdowns;

e.     Procedural sabotage (*e.g.*, spam notices, rule changes, fee hikes) designed to ensure failure;

f.     Selective, disproportionate application of burdens not imposed on comparable industries;

g.     Imposing a 400% fee increase and repeatedly changing compliance rules to prevent success;

h.     Taking fees for renewals and then not processing the renewals in a timely manner; and

i.     Overbroad revocation impacting compliant outdoor operations.

371.    Defendants' actions reflect illegitimate animus and a bare desire to harm or eliminate the class of legally operating medical marijuana businesses, rather than advance any conceivable legitimate regulatory goal.

372.    Such animus-driven discrimination violates equal protection principles, rendering the policies irrational and unconstitutional.

373.    As a direct and proximate result of Defendants' violations, Plaintiffs and class members have suffered and continue to suffer irreparable harm, including threats of raids, criminal prosecution, fines, product destruction, forced closures, employee layoffs, loan/lease defaults, and permanent business loss.

374.    Plaintiffs have no adequate remedy at law.

**WHEREFORE**, Plaintiff and the Class pray for judgment as set forth below.

### COUNT IV – 42 U.S.C. § 1983
### Violation of the Procedural Due Process Clause / 14th Amendment
### (Against All Defendants)

375.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

376.    The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

377.    Plaintiffs and class members possess a constitutionally protected property interest in their medical marijuana business licenses and OBNDD registrations, which were issued after OMMA certified that they had fulfilled all statutory requirements under 63 O.S. § 420 *et seq.*, as evidenced by annually issued License Certificates. These licenses entitle Plaintiffs to continue operating their lawful businesses, subject only to compliance with existing laws and fair regulatory processes.

378.    Defendants, acting under color of state law, and pursuant to a policy and practice, have deprived Plaintiffs and class members of these protected property interests without adequate procedural due process by engaging in a pattern and practice of arbitrary denials, non-renewals, and revocations of licenses and registrations through manipulative and unfair procedures designed to ensure non-compliance and business destruction.

379.    Defendants' actions, as alleged herein, constitute arbitrary and manipulative procedural barriers that preclude meaningful opportunity to be heard or to comply, rendering any nominal administrative processes illusory and inadequate.

380.    Defendants' conduct lacks fair notice, opportunity for correction, or impartial review, and is motivated by an expressed intent to eliminate legally operating businesses, as evidenced by statements from OMMA representatives (*e.g.*, intent to "make all of these licenses go away" and "wipe out everybody and start over") and Defendant OBNDD Director Anderson (*e.g.*, acknowledging enforcement is "driving out of business . . . even the people that do this legally," while advocating for drastic industry reduction).

381.    As a direct and proximate result of Defendants' violations, Plaintiffs and class members have been and continue to be deprived of their property interests without due process, suffering irreparable harm including threats of raids, criminal prosecution, substantial fines, embargo and destruction of millions of dollars in plants and products, forced closures, employee layoffs, defaults on leases and loans, and permanent business loss.

382.    Plaintiffs have no adequate remedy at law.

**WHEREFORE**, Plaintiff and the Class pray for judgment as set forth below.

**COUNT V – 42 U.S.C. §§ 1983, 1985**
**Civil Conspiracy to Deprive Constitutional Rights**
**(Against Individual-Capacity Defendants Berry, Anderson, and Bryant)**

383.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

384.    Defendants Berry, Anderson, and Bryant are sued in their individual capacities.

385.    At all relevant times, Defendants Berry, Anderson, and Bryant acted under color of state law and conspired among themselves and with others to deprive Plaintiffs and class members of their constitutional rights under the Equal Protection Clause and Due Process Clauses of the Fourteenth Amendment, in violation of 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3).

386.    Defendants reached an agreement, expressed through coordinated actions, public statements, and joint enforcement efforts, to implement and enforce a scheme designed to arbitrarily and maliciously destroy legally operating medical marijuana businesses, including those of Plaintiffs and class members, by imposing retroactive, impossible-to-satisfy regulatory barriers and procedural traps.

387.    Specifically, the conspiratorial agreement and overt acts in furtherance thereof include, but are not limited to the following:

   a.    Coordinated retroactive application of Certificate of Occupancy (COO) requirements and backdated compliance deadlines;

   b.    Deliberate delays in processing COO applications for medical marijuana businesses;

   c.    Rejection of renewal applications for minor correctable errors, requiring re-submission to ensure missed deadlines;

   d.    Manipulation of notice delivery (*e.g.*, routing to spam) to cause missed deadlines;

   e.    Overbroad revocations affecting compliant outdoor operations;

   f.    Repeated changes to compliance rules and options to prevent success;

   g.    Withholding information to collect fees before shutdowns; and

      h.     Selective enforcement exclusively against medical marijuana licensees while exempting similarly situated regulated industries.

388.    This conspiracy was motivated by class-based animus against lawfully licensed medical marijuana businesses as an identifiable group, with the intent to deprive them of equal protection of the laws and due process, as evidenced by:

      a.     Statements expressing desire to "wipe out everybody and start over" and "make all of these licenses go away";

      b.     Defendant Anderson's public acknowledgment that enforcement is "driving out of business . . . even the people that do this legally" and advocacy for reducing the industry to only 8-10 grows;

      c.     Joint public boasting of drastic registration reductions unrelated to legitimate compliance or safety goals; and

      d.     Coordinated efforts exceeding any rational regulatory purpose, aimed at suppressing the class despite compliance.

389.    As a direct and proximate result of this conspiracy, Defendants deprived Plaintiffs and class members of their protected property interests without due process and denied them equal protection by subjecting them to irrational, discriminatory treatment compared to other regulated businesses.

390.    The conspiratorial acts caused Plaintiffs and class members to suffer irreparable harm, including threats of raids, criminal prosecution, fines, product destruction, forced closures, employee layoffs, defaults on leases and loans, and permanent business loss.

391.    Plaintiffs have no adequate remedy at law.

**WHEREFORE**, Plaintiff and the Class pray for judgment as set forth below.

## COUNT VI – Violation of Oklahoma Constitution Art. 2, §§ 2, 7, 15, and 22
## (Inherent Rights, Due Process, Ex Post Facto Laws, and Liberty of Speech and Press)
## (Against All Official-Capacity Defendants)

392.     Plaintiffs and the class members incorporate by reference all preceding paragraphs.

393.     The same policies and practices that violate the U.S. Constitution independently violate the parallel provisions of the Oklahoma Constitution, which provide co-extensive or greater protection.

394.     Article 2, § 2 of the Oklahoma Constitution provides that all persons have inherent rights to life, liberty, the pursuit of happiness, and the enjoyment of the gains of their own industry.

395.     Article 2, § 7 of the Oklahoma Constitution provides that no person shall be deprived of life, liberty, or property without due process of law.

396.     Article 2, § 15 of the Oklahoma Constitution prohibits the passage of any ex post facto law or any law impairing the obligation of contracts.

397.     Article 2, § 22 of the Oklahoma Constitution protects the liberty of speech and press.

398.     Defendants, in their official capacities, have violated these provisions through the same pattern and practice of arbitrary, retroactive, and discriminatory enforcement against Plaintiffs' and class members' legally operating medical marijuana businesses, as detailed in the preceding Counts.

399.     Specifically, Defendants' retroactive imposition of COO requirements, backdated compliance deadlines (*e.g.*, requiring applications before February 1, 2024, via legislation signed June 14, 2024), deliberate processing delays, rejection of applications for minor correctable errors, manipulation of notices (*e.g.*, routing to spam), overbroad revocations, rule changes to

prevent compliance, and selective enforcement solely against medical marijuana licensees constitute:

a.   An ex post facto application of law in violation of Article 2, § 15, by punishing or burdening past compliant conduct with new requirements not in existence at the time of licensure or prior renewals;

b.   A deprivation of protected property and liberty interests in licensed businesses without due process of law in violation of Article 2, § 7, by rendering compliance impossible and administrative processes illusory;

c.   An infringement on inherent rights to pursue lawful industry and enjoy the gains thereof in violation of Article 2, § 2, by arbitrarily destroying legitimate businesses through animus-driven actions exceeding any legitimate regulatory purpose; and

d.   A broader chilling effect on protected liberties, including speech and association within the regulated industry, in violation of Article 2, § 22.

400.    These violations are evidenced by officials' statements of intent to eliminate licenses and suppress the industry (*e.g.*, "wipe out everybody and start over," driving "even the people that do this legally" out of business), disproportionate burdens not imposed on similarly situated regulated industries, and procedural sabotage designed to ensure failure.

401.    As a direct and proximate result, Plaintiffs and class members have suffered irreparable harm, including loss of property interests, business destruction, and deprivation of inherent rights.

402.    Plaintiffs have no adequate remedy at law.

**WHEREFORE**, Plaintiff and the Class pray for judgment as set forth below.

**COUNT VII – Declaratory Judgment Pursuant to 12 O.S. §§ 1651-57**
**(Against All Official-Capacity Defendants,**
**OBNDD, OMMA, State Fire Marshall's Office, and LP Gas Board)**

403.    Plaintiffs and the Class incorporate by reference all preceding paragraphs of this Complaint.

404.    This Court has jurisdiction to render declaratory judgments pursuant to the Oklahoma Declaratory Judgments Act, 12 O.S. §§ 1651-1657, which authorizes district courts (and in this case the federal district courts pursuant to supplemental jurisdiction, 28 U.S.C. § 1367 over Plaintiffs and class members declaratory judgment claims brought pursuant to 12 O.S. §§ 1651-57 and Oklahoma constitutional claims) to determine rights, status, or other legal relations under statutes, municipal ordinances, contracts, or other governmental regulations where a justiciable controversy exists.

405.    A justiciable controversy exists between Plaintiffs and class members, on one hand, and Defendants in their official capacities (including OMMA, OBNDD, the State Fire Marshal's Office, and the LP Gas Board), on the other, regarding the validity, interpretation, and application of certain provisions of Oklahoma law governing medical marijuana licensure, particularly the retroactive imposition and enforcement of COO requirements under amendments effected by Senate Bill 1635 (2024) and related statutes (63 O.S. § 426.1 *et seq*.).

406.    Plaintiffs and class members bring this declaratory judgment action to determine the constitutionality or applicability of the statute at issue.

407.    Plaintiffs have shown a realistic risk of sustaining a direct injury due to the statute's application or enforcement, and in fact have sustained direct injuries.

408.    Plaintiffs and class members seek declarations resolving the following controversies:

    a.    That the retroactive application of COO requirements to existing, previously compliant and legally operating medical marijuana licensees

constitutes an unlawful ex post facto burden and violates principles of fair

notice and reliance on prior certifications of compliance by OMMA;

b.      That backdated compliance deadlines (*e.g.*, requiring submission of a full

and complete COO application before February 1, 2024, via legislation

effective June 14, 2024) are arbitrary, impossible for many licensees to

meet, and invalid as applied to Plaintiffs and class members;

c.      That Defendants' practices of deliberate delays in processing COO

applications, rejection for minor correctable errors requiring full re-

submission, manipulation of notices to cause missed deadlines, overbroad

revocations affecting outdoor grows not subject to COO requirements, and

selective enforcement solely against medical marijuana businesses exceed

statutory authority and render the regulatory scheme unenforceable;

d.      That COO requirements do not apply to outdoor grow facilities or existing

occupied structures where no COO was historically required under

standard building codes;

e.      That Plaintiffs and class members who timely pursued compliance

(including those entitled to safe harbor provisions or attestations under SB

1635) retain valid licenses and registrations pending fair processing, free

from threats of revocation, raids, or destruction of property; and

f.      That the overall scheme, as implemented, lacks statutory basis for its

animus-driven and discriminatory application, contrary to the intent of

Oklahoma's medical marijuana laws.

409.    These controversies are ripe for adjudication, as Defendants' ongoing

enforcement actions directly threaten Plaintiffs' and class members' property interests,

businesses, and livelihoods, creating immediate uncertainty and irreparable harm absent judicial clarification.

410.    Declaratory relief will terminate the uncertainty and controversy, providing guidance to all parties and preventing further unconstitutional or unlawful deprivations.

411.    Plaintiffs have no adequate remedy at law other than this declaratory judgment.

**WHEREFORE**, Plaintiff and the Class pray for judgment as set forth below.

## VI.    PRAYER FOR RELIEF – APPLICABLE TO ALL COUNTS

WHEREFORE, Plaintiffs and the proposed class respectfully pray that this Court:

B.    Certify this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), with the classes defined as set forth herein; appoint the Named Plaintiffs as class representatives; and appoint undersigned counsel as class counsel;

C.    Declare that Defendants' retroactive imposition and enforcement of the Certificate of Occupancy (COO) requirement under 63 O.S. § 426.1 (as amended), including backdated deadlines and related practices, violates:

(1)    The Ex Post Facto Clause (U.S. Const. art. I, §§ 9, 10);

(2)    The Substantive and Procedural Due Process Clauses and Equal Protection Clause of the Fourteenth Amendment (42 U.S.C. § 1983);

(3)    The parallel provisions of the Oklahoma Constitution (Art. 2, §§ 2, 7, 15, 22); and

(4)    Principles of fair notice, vested rights, and non-arbitrary regulation;

D.    Declare, pursuant to 12 O.S. §§ 1651-1657 and 28 U.S.C. § 2201, the specific rights and legal relations of the parties as follows:

(1) The retroactive COO requirement is invalid as applied to preexisting licensees, who complied with all prior statutory and regulatory requirements;

(2) Backdated compliance deadlines are arbitrary and unenforceable;

(3) COO requirements do not apply to outdoor grows or existing occupied structures without historical COO mandates;

(4) Defendants' practices of delays, rejections for minor errors, notice manipulation, and selective enforcement exceed statutory authority; and

(5) The enforcement scheme lacks legitimate basis where motivated by animus against the industry;

E. Enter preliminary and permanent injunctions enjoining all Defendants, their agents, employees, and successors from:

(1) Enforcing the retroactive COO requirement against Plaintiffs and class members;

(2) Denying renewals, revoking licenses/registrations, or initiating enforcement actions (including raids, seizures, embargoes, product destruction, fines, or prosecutions) based solely or primarily on COO non-compliance for preexisting facilities;

(3) Continuing manipulative practices (*e.g.*, delays, spam routing of notices, rule changes to prevent compliance); and

(4) Revoking licenses affecting compliant outdoor operations;

F. Order Defendants to immediately:

(1) Reinstate all licenses, registrations, and Metrc access suspended, revoked, or denied based on the challenged COO enforcement;

(2) Return or compensate for seized or destroyed property; and

      (3)     Cease threats of criminal prosecution or civil penalties tied to the unconstitutional practices;

G.     Award compensatory damages to Plaintiffs and class members for economic losses, property destruction, lost profits, and other harms proximately caused by Defendants' violations;

H.     Award punitive damages against the individual-capacity Defendants (Berry, Anderson, and Bryant) for conduct motivated by evil intent, reckless indifference, or animus;

I.     Award reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and other applicable law;

J.     Retain jurisdiction to monitor and enforce compliance with any judgment, injunction, or declaratory relief; and

K.     Grant such other and further relief as the Court deems just, equitable, and proper, including pre- and post-judgment interest where applicable.

## VII.   RESERVATION OF ADDITIONAL STATE-LAW CLAIMS

Plaintiffs and the class expressly reserve all claims arising under the Oklahoma Governmental Tort Claims Act ("OGTCA"), 51 O.S. §§ 151 *et seq*., Oklahoma common law, including, but not limited to: civil conspiracy, tortious interference with business relations, detrimental reliance, abuse of process, and violations of the Oklahoma Constitution, and any other state-law theories until such time as notice-of-claim requirements under the OGTCA have been satisfied or have expired.

## VIII.  DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

**ATTORNEYS FOR PLAINTIFFS AND CLASS MEMBERS**


*/s/Dana L. Kurtz*
Dana L. Kurtz, OBA #18092
**WILKIN LAW FIRM, PLLC**
2118 South Atlanta Place
Tulsa, OK 74134
(918) 727-2275
dana.kurtz@wilkinlawfirm.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 15, 2025, I electronically transmitted the foregoing to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

| | |
|---|---|
| Devan A Pederson | devan.pederson@oag.ok.gov |
| Alejandra J Brigida | alejandra.brigida@oag.ok.gov |
| Anthony Reding | aj.reding@oag.ok.gov |

*/s/Dana L. Kurtz*

_____

Dana L. Kurtz