**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

Lisa Tran, LLC, an Oklahoma limited liability
company, for themselves and those similarly
situated, *et al.*,

         Plaintiffs,

  vs.

State of Oklahoma *ex rel.* Oklahoma Medical
Marijuana Authority ("OMMA"), *et al.*,

         Defendants.

Case No.: 25-cv-00512-CDL

---

**BRIEF IN SUPPORT OF EMERGENCY MOTION BY**
**PLAINTIFFS AT JOY GROWERS AND THEIR OWNERS**
**FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

---

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 2

II.    FACTUAL BACKGROUND ............................................................................... 4

III.    LEGAL STANDARD ......................................................................................... 6

IV.    ARGUMENT ...................................................................................................... 8

     A.    Likelihood of Success on the Merits ...................................................... 8

         1.    Plaintiffs Have a Likelihood of Success on the Merits of Their Substantive Due Process Claim ................................................................................... 9

         2.    Plaintiffs Have a Likelihood of Success on the Merits of Their Ex Post Facto Claim .................................................................................. 12

         3.    Plaintiffs Have a Likelihood of Success on the Merits of Their Equal Protection Claim ................................................................................. 14

         4.    Plaintiffs Have a Likelihood of Success on the Merits of Their Procedural Due Process Claim ................................................................................. 18

         5.    Plaintiffs Have a Likelihood of Success on the Merits of Their Declaratory Judgment Claim ................................................................................... 19

     B.    Moving Plaintiffs Will Suffer Irreparable Harm Absent Relief ........................... 19

     C.    Balance of Equities Favors Moving Plaintiffs ...................................................... 21

     D.    The Public Interest Favors Injunctive Relief ....................................................... 22

V.    REQUEST FOR HEARING AND BOND ................................................................... 23

VI.    CONCLUSION ............................................................................................... 23

**Cases**

*Abay v. City of Denver*, 445 F. Supp. 3d 1286 (D. Colo. 2020)..........................................7, 8

*Awad v. Ziriax*, 670 F.3d 1111 (10th Cir. 2012) ...................................................... passim

*Browne v. City of Grand Junction*, 27 F. Supp. 3d 1161 (D. Colo. 2014) ............................21, 22

*C3E Management LLC, et al. v. Oklahoma State Bureau of Narcotics and Dangerous Drugs Control*, Case No. 25-cv-192 ..............................................................................2, 8

*Canna Plus Farm LLC v. Oklahoma State Bureau of Narcotics and Dangerous Drugs Control*, Case No. 25-cv-19 ...............................................................................2, 8

*Canna-Buds LLC v. Oklahoma State Bureau of Narcotics and Dangerous Drugs Control*, Case No. 25-cv-108 ..............................................................................2, 9

*City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432 (1985). ...........................17

*Collins v. Youngblood*, 497 U.S. 37 (1990)........................................................12

*Coquina Oil Corp. v. Transwestern Pipeline Co.*, 825 F.2d 1461 (10th Cir. 1987).......................23

*Dean v. State ex rel. Doak*, 2012 OK CIV APP 105, 292 P.3d 58.................................19

*Elrod v. Burns*, 427 U.S. 347 (1976)............................................................20

*Fish v. Kobach*, 840 F.3d 710 (10th Cir. 2016) ...................................................7

*G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071 (6th Cir. 1994).................22

*Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528 (1985) ...............................18

*Green Stripe, Inc. v. Berny's Internacionale, S.A.,* 159 F.Supp.2d 51 (E.D. Pa. 2001) ...............20

*Hall v. U.S. Dep't of Labor,* 476 F.3d 847 (10th Cir.2007). ..........................................9

*Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114 (10th Cir. 2013)...........................7

*Interphoto Corp. v. Minolta Corp.*, 417 F.2d 621 (2d Cir.1969)..................................................... 20

*Jacobson & Co. v. Armstrong Cork Co.*, 548 F.2d 438 (2d Cir.1977) ........................................... 20

*Johnson v. Bd. of Governors of Registered Dentists*, 1996 OK 41, 913 P.2d 1339 ...................... 10

*Landgraf v. USI Film Prods.*, 511 U.S. 244, 114 S. Ct. 1483, 1500 (1994) ................................. 13

*Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949)........................................ 10

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) ..................................................... 3, 11

*Maddox v. Grandview Care Center, Inc.,* 607 F. Supp. 1404 (M.D.Ga.1985),
    *aff'd,* 780 F.2d 987 (11th Cir. 1986) ................................................................................ 9

*Mustard Seed Enters., Inc v. State ex rel. Dep't of Hum. Servs.*,
    2025 OK CIV APP 26, 576 P.3d 966 ....................................................................... 11, 19

*Nexstar Media, Inc. v. Walters*, 776 F. Supp. 3d 1053 (W.D. Okla. 2024) .................................... 7

*Oklahoma Alcoholic Beverage Control Bd. v. Moss*, 1973 OK 45, 509 P.2d 666 ........................ 12

*Price v. Reed*, 1986 OK 43, 725 P.2d 1254................................................................................ 10

*Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904 (2d Cir. 1990)........................................... 21

*RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009)............................................. 6

*Romer v. Evans*, 517 U.S. 620 (1996).......................................................................................... 17

*Schware v. Bd. of Bar Exam. of State of N.M.*, 353 U.S. 232 (1957)............................................. 9

*SEC v. Jarkesy,* 603 U.S. 109 (2024) ..................................................................... 3, 11, 18, 19

*Starkey v. Oklahoma Dep't of Corr.*, 2013 OK 43, 305 P.3d 1004, 1018.................................... 13

*Steffel v. Thompson*, 415 U.S. 452 (1974)................................................................................... 20

*Stephens v. Borgman,* 1949 OK 166, 202 Okla. 41, 210 P.2d 176............................................... 12

*Lisa Tran, LLC, et al. v. State of Oklahoma, ex rel., et al.*
Brief in Support of Emergency Motion for TRO
iii

*The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972) ....................................... 10, 18

*Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27 (2d Cir. 1995) .................................... 20

*Trans World Airlines v. Thurston,* 469 U.S. 111 (1985)................................................................. 9

*U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528 (1973) .................................................................. 17

*Weaver v. Graham*, 450 U. S. 24, 101 S.Ct. 960 (1981) ............................................................... 13

*Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7 (2008)......................................................... 7

*XMission, L.C. v. Click Sales, Inc.*, No. 2:17CV1287DAK,
   2019 WL 1574810 (D. Utah Apr. 11, 2019)................................................................. 3, 4, 7, 9

**Statutes**

63 O.S. § 2-101 et seq. .............................................................................................................. 11

63 O.S. § 2-304(A)...................................................................................................................... 11

63 O.S. § 2-305(A)...................................................................................................................... 11

63 O.S. § 420 et seq. ........................................................................................................... 4, 11, 14

74 O.S. § 324.1 et seq. ........................................................................................................... 11, 12

75 O.S. § 306 .............................................................................................................................. 11

OAC 475:1-5-2 ..................................................................................................................... 11, 12

**Rules**

Federal Rule of Civil Procedure 65 ............................................................................................ 6, 23

Plaintiffs At Joy Growers, and their owners (Plaintiffs' Nos. 22-26) (collectively the "Moving Plaintiffs"), by and through their counsel, Dana L. Kurtz of Wirth Law Office, hereby move this Court on an *emergency* basis pursuant to Federal Rule of Civil Procedure ("FRCP") 65 for a Temporary Restraining Order ("TRO") and Preliminary Injunction, enjoining Defendants from enforcing the Final Order issued by the Oklahoma Bureau of Narcotics and Dangerous Drugs Control ("OBNDD") as to their outdoor grow (the "Final Order"), which revoked Plaintiffs' OBNDD registration.

This motion is limited to ***At Joy Growers' outdoor grow only***, as OBNDD exceeded its administrative authority as to the outdoor grow, because no Certificate of Occupancy is required for an outdoor grow. Plaintiffs, through their counsel, have attempted to resolve this matter with Defendants' counsel and as of February 9, 2026, the Parties reached an impasse.

Plaintiff At Joy Growers ***must enter into contract by no later than February 20, 2026 in order to prepare for the outdoor grow season that starts June 1, 2026***. Plaintiffs do ***not*** use buildings for their outdoor grow; the plants are cut and frozen and put into the back of truck trailers and transported off the property. Even if a COO was required, which it is not required for an outdoor grow, Plaintiff At Joy Growers is at 50% inspection for their COO and should be at 100% and final inspection before they put any plants in the ground on June 1, 2026.

The Moving Plaintiffs seek a TRO on or before February 20, 2026, to preserve the status quo, allowing them to continue to operate as to their outdoor grow exclusively, as they have done since 2020 without incident, Exhibit 5, Declaration of Darin Atkinson ¶ 3, pending a hearing on their request for a preliminary injunction. Because Defendants have appeared in this action (*see* Dkts. 10-15), this Motion is not *ex parte*, and the Moving Plaintiffs request expedited consideration and a hearing at the Court's earliest convenience. Absent injunctive relief, the

*Lisa Tran, LLC, et al. v. State of Oklahoma, ex rel., et al.*
Plaintiff At Joy Growers Brief in Support of Emergency Motion for TRO
Page **1**

Moving Plaintiffs will suffer irreparable injury that cannot be remedied by damages, rendering any later judgment ineffectual.

At least three (3) other Oklahoma District Courts have granted similar TROs under the same or substantially similar circumstances. *See* Exhibit 1, *C3E Management LLC, et al. v. Oklahoma State Bureau of Narcotics and Dangerous Drugs Control*, Case No. 25-cv-192, Order Granting TRO (Nov. 25, 2025); Exhibit 2, *Canna Plus Farm LLC v. Oklahoma State Bureau of Narcotics and Dangerous Drugs Control*, Case No. 25-cv-19, Order Granting TRO (Dec. 19, 2025); Exhibit 3, *Canna-Buds LLC v. Oklahoma State Bureau of Narcotics and Dangerous Drugs Control*, Case No. 25-cv-108, Order Granting TRO (Dec. 29, 2025). In support of this Motion, the Moving Plaintiffs state as follows:

## I.     INTRODUCTION

As detailed in the Second Amended Class Action Complaint, Plaintiffs challenge Defendants' unconstitutional, ultra vires, and ex post facto enforcement actions against licensed and legally operating medical marijuana businesses in Oklahoma. (Dkt. 41.) Defendants have systematically deprived class members, including the Moving Plaintiffs, of their protected property interests in state-issued licenses and registrations without due process and selective enforcement, in violation of the U.S. Constitution and Oklahoma law. The statement by the OBNDD Director that "Even the people that do this legally, we're driving them out of business," and other statements by Defendants constitute direct evidence of intent to suppress the industry beyond any legitimate regulatory goals.

These Constitutional deprivations stem not only from the ultra vires, ex post facto, and retroactive application of requiring a Certificate of Occupancy ("COO"), but also from OBNDD exceeding its administrative authority, as well as, prolonged delays by the Oklahoma State Fire Marshal ("OSFM") in processing and issuing COOs. The COO requirement written into 63 OK

*Lisa Tran, LLC, et al. v. State of Oklahoma, ex rel., et al.*
Plaintiff At Joy Growers Brief in Support of Emergency Motion for TRO
Page **2**

Stat § 426.1 in 2024 (*see* Dkt. 41 ¶¶ 33-36) became a prerequisite imposed retroactively and arbitrarily enforced by OBNDD, and more recently by Oklahoma Medical Marijuana Authority ("OMMA"), in an ultra vires, unconstitutional manner. OBNDD and OMMA have exceeded their authority by enforcing COO requirements, which are not delegated to those authorities and are limited specifically by statute to the jurisdiction of the OSFM. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412-13 (2024) ("[W]hen a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it. But courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous."); *SEC v. Jarkesy,* 603 U.S. 109 (2024).

On November 14, 2025, Plaintiffs were issued a Final Order from OBNDD, revoking their registration, which included their outdoor grow, ***solely due to the lack of COOs***. (Exhibit 4, 11/14/25 Final Order; Exhibit 5, ¶ 12.) The Final Order mandates closure of ***all*** operations without distinction for those operations that do not require a COO.

Moving Plaintiffs note they have not delayed in filing this Motion. Plaintiffs' counsel attempted in good faith to resolve the issues raised herein with Defendants' counsel to see if a partial or full settlement could be reached as to these Plaintiffs. Those settlement conversations continued through February 9, 2026, when the Parties reached an impasse. *See XMission, L.C. v. Click Sales, Inc.*, No. 2:17CV1287DAK, 2019 WL 1574810, at *7 (D. Utah Apr. 11, 2019) ("While this court has denied preliminary injunctions based on delay, it has never done so when the delay is based on a party pursuing a settlement. A negotiated settlement that could resolve the dispute would typically be an efficient endeavor. Although it was not successful in this case, the time spent toward such resolution was not unduly long or unreasonable."). [1]

---

[1]     Moving Plaintiffs distinguish the delay in filing the original TRO by attorney Wilkin (*see* Dkt.

*Lisa Tran, LLC, et al. v. State of Oklahoma, ex rel., et al.*
Plaintiff At Joy Growers Brief in Support of Emergency Motion for TRO
Page **3**

## II. FACTUAL BACKGROUND

1. The facts applicable to all Plaintiffs, including the Moving Plaintiffs, are set forth in detail in Section III of the Second Amended Complaint (Dkt. 41, pp. 8-17). In summary, following the passage of Senate Bill 1635 (2024 Okla. Sess. Laws ch. 332), Defendants imposed new and ex post facto COO requirement on existing, legally operating medical marijuana licensees, with a retroactive February 1, 2024, deadline for submission.

2. Plaintiff At Joy Growers is an Oklahoma limited liability company owned by Darin Atkinson, Melissa Atkinson, Dan Joy, and Jane Joy. They operate licensed medical marijuana processing, indoor grow, and outdoor grow facilities, having obtained and maintained OMMA licenses and OBNDD registrations since their inception in 2020, without incident and with timely annual renewals. Exhibit 5, Declaration of Darin Atkinson ¶ 3.

3. Plaintiffs have invested over $2 million in the Oklahoma Medical Marijuana business in reliance on Oklahoma's regulatory framework. Exhibit 5, ¶ 4.

4. In or about August 2023, OMMA and OMBDD informed Plaintiffs that they had to submit a COO with their 2023 renewal application for fiscal year 2024. Plaintiffs had never previously been required to submit a COO, despite having operated without incident. In fact, Plaintiff was told that a COO was not required. The only requirement by OMMA was for a Certificate of Compliance, which Plaintiff has obtained every year. The renewal application fee also changed from $500 to $2,500 that same year. *Id.* ¶¶ 5-8.

5. Plaintiffs' OMMA licenses state for every year: "The license issued by the Oklahoma State Department of Health, Oklahoma Medical Marijuana Authority to certify ***the above has fulfilled the requirements of 63 O.S. § 420 et seq. . . .***" (Emphasis added.) *Id.* ¶ 9.

---

17, 10/14/25 Order) from the delay here, which has been based on the undersigned counsel's good faith attempts to see if a resolution could be reached before burdening the Court with this Emergency Motion. *Cf. XMission, L.C. v. Click Sales, Inc.*, 2019 WL 1574810, at *7.

*Lisa Tran, LLC, et al. v. State of Oklahoma, ex rel., et al.*
Plaintiff At Joy Growers Brief in Support of Emergency Motion for TRO
Page **4**

6. On October 19, 2023, Plaintiffs submitted their renewal application with our COO requirements to the Oklahoma State Fire Marshall ("OSFM"). *Id.* ¶ 10.

7. OMMA shows At Joy Growers as "active" and falling within the safe harbor since Plaintiffs submitted their application before the February 14, 2024 retroactive deadline date. *Id.* ¶ 11.

8. On November 14, 2025, OBNDD issued a Final Order revoking Plaintiffs' registration, despite their diligent attempts to comply with all applicable ex post facto requirements, including attempting to comply with the COO applications and valid attestations, and despite the fact that OMMA shows them as "active" and falling within the safe harbor, since they submitted our application before the February 14, 2024 retroactive deadline date. *Id.* ¶ 12.

9. The Final Order revoked Plaintiffs' outdoor grow, even though no COO is required for an outdoor grow registration. *Id.* ¶ 13.

10. Before OBNDD, Plaintiffs were not allowed discovery or an opportunity to be heard. They were not allowed to present any evidence, including the attempts they made to obtain a COO by the arbitrary deadline, the OSFM delays that prevented them from obtaining a COO. Plaintiffs were also deprived of the right to a jury trial, while facing substantial fines, revocation, and criminal arrest for any violations. *Id.* ¶ 14.

11. Despite diligent compliance attempts, Plaintiffs have been unable to obtain finalized COOs as a direct result of systemic backlogs and the change in policy from allowing 3rd Party reviews and not allowing 3rd Party reviews. *Id.* ¶ 15.

12. Plaintiffs are at 50% inspection with the OSFM, and should have their COO before the June 1, 2026 outdoor grow season begins and before any plants are planted in the ground. ¶ 16.

13. Plaintiffs cannot enter into necessary contracts because OBNDD revoked our

*Lisa Tran, LLC, et al. v. State of Oklahoma, ex rel., et al.*
Plaintiff At Joy Growers Brief in Support of Emergency Motion for TRO
Page **5**

registration completely, even for the outdoor grow, for which no COO is required. *Id.* ¶ 17.

14. Plaintiffs' outdoor growing process does not utilize any buildings. The plants are cut, frozen, packed, and shipped in truck trailers directly from the fields. *Id.* ¶ 18.

15. Plaintiffs have employed over 10 employees, all Oklahoma residents. *Id.* ¶ 19.

16. Plaintiffs must be able to engage in contracts for their outdoor grow season **by no later than February 20, 2026,** to participate in the 2026 outdoor grow season, which they cannot do if their OBNDD registration for their outdoor grow is revoked. No one will contract with them if they do not have an active OBNDD registration for their outdoor grow. *Id.* ¶ 20.

17. If Plaintiffs are not able to operate and engage in contracts by February 20, 2026, they will lose all necessary contracts to start the outdoor grow season by June 1, 2026, and will lose millions of dollars, customer good will, and competitive business advantages. *Id.* ¶ 20.

18. Absent relief, Plaintiffs will suffer irreparable harm to the outdoor grow business, loss of unique strains, loss of livelihood, loss of property, lost revenue, loss of investment, loss of goodwill, erosion of customer base, loss of future customers based on customer referrals, and diminution of corporate image. *Id.* ¶ 20.

19. Absent relief, Plaintiffs will also suffer ongoing violations of their Constitutional Rights. (*See* Dkt. 41.)

## III. LEGAL STANDARD

Pursuant to FRCP Rule 65, a court may issue a TRO or preliminary injunction to preserve the status quo and prevent irreparable harm. The moving party must demonstrate four factors: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (affirming the district court's grant of a TRO and finding no abuse of

*Lisa Tran, LLC, et al. v. State of Oklahoma, ex rel., et al.*
Plaintiff At Joy Growers Brief in Support of Emergency Motion for TRO
Page **6**

discretion where the district court applied the correct legal standard), citing *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008); *see also Nexstar Media, Inc. v. Walters*, 776 F. Supp. 3d 1053, 1057 (W.D. Okla. 2024). The second factor – a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief – is the single most important prerequisite for the issuance of a preliminary injunction. *XMission, L.C. v. Click Sales, Inc.*, No. 2:17CV1287DAK, 2019 WL 1574810, at *6 (D. Utah Apr. 11, 2019).

The Tenth Circuit has recognized that "it is always in the public interest to prevent the violation of a party's constitutional rights." *Abay v. City of Denver*, 445 F. Supp. 3d 1286, 1293 (D. Colo. 2020), quoting *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013), *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012). Even where individuals' constitutional rights come into conflict with other important values or public objectives, the Tenth Circuit has held that those other values must yield to the protection of individuals. *Abay*, 445 F. Supp. 3d at 1293 (D. Colo. 2020), citing *Awad*, 670 F.3d at 1132. In *Awad*, the court affirmed a district court's grant of a preliminary injunction, holding that "[i]t is always in the public interest to prevent the violation of a party's constitutional rights." *Id.* at 1132. This precedent directly supports granting injunctive relief here, where Moving Plaintiffs face imminent deprivation of their constitutional rights.

Similarly, in *Fish v. Kobach*, 840 F.3d 710 (10th Cir. 2016), the Tenth Circuit affirmed a preliminary injunction protecting voting rights where a state law imposed burdensome documentation requirements. The court emphasized that when First Amendment or other constitutional freedoms are at stake, even minimal deprivations constitute irreparable injury warranting injunctive relief. *Id.* at 752. Here, Moving Plaintiffs face not minimal but complete deprivation of their property interests and livelihood.

Here, the TRO and injunction that is sought by the Moving Plaintiffs seeks to maintain

*Lisa Tran, LLC, et al. v. State of Oklahoma, ex rel., et al.*
Plaintiff At Joy Growers Brief in Support of Emergency Motion for TRO
Page **7**

the status quo, allowing Moving Plaintiffs to continue to operate as they have done without incident since 2019.

## IV.     ARGUMENT

### A.      Likelihood of Success on the Merits

Moving Plaintiffs have a strong likelihood of success on the merits of their claims. In at least three (3) other cases involving the same issues before the Court here, Courts have granted TROs, *ex parte* in those cases:  *See* Exhibit 1, *C3E Management LLC, et al. v. Oklahoma State Bureau of Narcotics and Dangerous Drugs Control*, Case No. 25-cv-192, Order Granting TRO (Nov. 25, 2025); Exhibit 2, *Canna Plus Farm LLC v. Oklahoma State Bureau of Narcotics and Dangerous Drugs Control*, Case No. 25-cv-19, Order Granting TRO (Dec. 19, 2025); Exhibit 3, *Canna-Buds LLC v. Oklahoma State Bureau of Narcotics and Dangerous Drugs Control*, Case No. 25-cv-108, Order Granting TRO (Dec. 29, 2025).

Plaintiffs have and will be able to demonstrate a substantial likelihood of success on the merits of their claims, including but not limited to, the following, as alleged in Plaintiffs' Second Amended Complaint (Dkt. 41):

(1)     OBNDD exceeded its statutory authority by revoking Plaintiff's registration solely based on no COO as to its outdoor grow, because no COO is required for an outdoor grow.

(2)     violations of the Substantive Due Process Clause of the Fourteenth Amendment to the United States Constitution (Count II), and the Oklahoma Constitution, Article 2, § 2, which provides that all persons have inherent rights to life, liberty, the pursuit of happiness, and the enjoyment of the gains of their own industry (Count VI);

(3)     violations of the Ex Post Facto Clause, Article I, §§ 9, Clause 3, and 10, Clause 1 of the United States Constitution (Count I) and the Oklahoma Constitution Article 2, § 15, which prohibits the passage of any ex post facto law or any law impairing the obligation of contracts (Count VI);

(4)     violations of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution (Count III) and Article 2, § 7 of the Oklahoma Constitution (Count VI);

*Lisa Tran, LLC, et al. v. State of Oklahoma, ex rel., et al.*
Plaintiff At Joy Growers Brief in Support of Emergency Motion for TRO
Page **8**

(5)     violations of the Procedural Due Process Clause of the Fourteenth Amendment to the United States Constitution (Count IV) and Article 2, § 7 of the Oklahoma Constitution (Count VI);

(6)     declaratory judgment under 12 0. S. §§ 1651-57 (Count VII).

In this case, there is direct evidence of Defendants' intent to violate Plaintiffs' constitutional rights. (Dkt. 41 ¶¶ 7-15.) *See, e.g., XMission, L.C. v. Click Sales, Inc.*, No. 2:17CV1287DAK, 2019 WL 1574810, at *8 (D. Utah Apr. 11, 2019) ("XMission's direct evidence and the inferences reasonably drawn from it demonstrate a threat of imminent irreparable harm to XMission. Accordingly, the court concludes that XMission has met this essential element for the issuance of a preliminary injunction."). "Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption." *Hall v. U.S. Dep't of Labor,* 476 F.3d 847, 855 (10th Cir.2007). Examples of direct evidence are statements of discriminatory intent, facially discriminatory policies, *see, e.g., Maddox v. Grandview Care Center, Inc.,* 607 F. Supp. 1404 (M.D.Ga.1985), *aff'd,* 780 F.2d 987 ( [11th Cir.] 1986), or rules expressly disfavoring a group based on its protected characteristic, *see, e.g., Trans World Airlines v. Thurston,* 469 U.S. 111 (1985) (mandatory retirement age for cockpit employees). If that evidence is believed, the court needs to make no further inference to conclude discrimination. *Id.; see also Hall*, 476 F.3d at 855.

### 1.     Plaintiffs Have a Likelihood of Success on the Merits of Their Substantive Due Process Claim

Plaintiffs' OBNDD credentials and OMMA licenses constitute protected property interests under both the Fourteenth Amendment and Article 2, § 7 of the Oklahoma Constitution. *See, e.g., Schware v. Bd. of Bar Exam. of State of N.M.*, 353 U.S. 232, 238-39 (1957) ("A State cannot exclude a person [] from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment."); *The Bd. of Regents*

*Lisa Tran, LLC, et al. v. State of Oklahoma, ex rel., et al.*
Plaintiff At Joy Growers Brief in Support of Emergency Motion for TRO
Page **9**

*of State Colleges v. Roth*, 408 U.S. 564, 576 (1972) ("The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits. These interests – property interests – may take many forms.").

Defendants' actions also violate Plaintiffs' Oklahoma Constitutional rights to substantive due process. *See Price v. Reed*, 1986 OK 43, ¶ 11, 725 P.2d 1254, 1260 ("One's claim to a driver's license is indeed a protectible property interest that comes within the shelter of the Fourteenth Amendment . . . as well as Article 2, § 7 of the Oklahoma Constitution."); *Johnson v. Bd. of Governors of Registered Dentists*, 1996 OK 41, 913 P.2d 1339 (Professional licenses are protected property rights requiring clear and convincing evidence before revocation). Oklahoma law is unequivocal that a business license issued pursuant to state statute is a constitutionally protected property right requiring full due process before suspension or revocation.

Given these binding precedents, Plaintiffs' OBNDD registrations and OMMA licenses, statutorily created business-operation licenses, authorizing ongoing commercial activity, are protected property interests. Defendants' revocations – issued despite Plaintiffs' good faith compliance – are caused by the ultra vires, ex post facto, and retroactive application of requiring COO, and also caused by prolonged delays by the OSFM in processing and issuing COOs.

### *Ultra Virus Acts Violate Substantive Due Process*

Defendant OBNDD's ultra vires acts also violate substantive due process rights when they deprive individuals of protected property interests without lawful authority. As the Supreme Court explained in *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689-90 (1949), relief from ultra vires agency action is available because "an officer acting, not within his authority, but under the claimed authority of an unconstitutional statute, is . . . stripped of his official or representative character." The agency's lack of authority means its actions cannot be considered acts of the sovereign and thus are not entitled to sovereign immunity.

*Lisa Tran, LLC, et al. v. State of Oklahoma, ex rel., et al.*
Plaintiff At Joy Growers Brief in Support of Emergency Motion for TRO
Page **10**

OBNDD has exceeded its authority here in two respects: (1) by acting outside of its authority in revoking Plaintiff's outdoor grow, which requires no COO; and (2) by enforcing COO requirements, which are not delegated to those authorities and is limited specifically by statute to the jurisdiction of the OSFM. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412-13 (2024) ("[W]hen a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it. But courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous."); *SEC v. Jarkesy*, 603 U.S. 109 (2024) (agency exceeded statutory authority in pursuing enforcement actions without providing right to jury trial). The COO requirement written into 63 OK Stat § 426.1 in 2024 (*see* Dkt. 41 ¶¶ 33-36) became a prerequisite imposed retroactively and arbitrarily enforced by OBNDD, and more recently by OMMA, in an ultra vires, unconstitutional manner.

Defendant OBNDD has acted ultra vires by conditioning credentials on COOs, exceeding their statutory scopes under 63 O.S. § 2-101, *et seq.* and § 420, *et seq.*, as fire safety is delegated to the OSFM under 74 O.S. § 324.1, *et seq.* This violates the APA (75 O.S. § 306) and non-delegation doctrine (Okla. Const. art. V, § 1). The Final Orders' citation to 63 O.S. § 2-305(A) and OAC 475:1-5-2 for revocation does not authorize OBNDD to enforce COO requirements, confirming overreach. As stated in *Mustard Seed Enters., Inc v. State ex rel. Dep't of Hum. Servs.*, 2025 OK CIV APP 26, ¶ 25, 576 P.3d 966, 972: "The validity []of a rule may be determined in an action for declaratory judgment in the district court . . . if it is alleged the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff."

*Lisa Tran, LLC, et al. v. State of Oklahoma, ex rel., et al.*
Plaintiff At Joy Growers Brief in Support of Emergency Motion for TRO
Page **11**

Title 63 grants OBNDD authority over controlled dangerous substances, including criteria for revocation only as listed in 63 O.S. § 2-304(A). The statutory factors in § 2-304(A) authorize revocation for: (a) violations of the CDS Act; (b) convictions; (c) falsification; (d) inadequate controls against diversion; (e) and other factors relevant to public health and safety. Nowhere in § 2-304(A), or anywhere in Title 63, does the Legislature authorize OBNDD to condition the issuance, renewal, or revocation of controlled-substance registrations on the existence of a COO. Moreover, OBNDD's own administrative rules under OAC Title 475 do not impose a COO requirement for registration revocation. The Legislature has vested jurisdiction over building code and occupancy compliance in the OSFM under 74 O.S. §§ 324.1, *et seq*. OBNDD and OMMA may not borrow, extend, or assume these authorities.

When an agency enforces a requirement outside the scope of its legislatively delegated power, it acts ultra vires. The Oklahoma Supreme Court held, in *Oklahoma Alcoholic Beverage Control Bd. v. Moss*, 1973 OK 45, 509 P.2d 666, that agencies may only exercise those powers expressly delegated by statute; all others are void. OBNDD's revocations, based on Fire Marshal-related COO issues and related construction matters, constitute an ultra vires action. The Oklahoma Supreme Court recognized in *Stephens v. Borgman*, that: "equity will exercise jurisdiction to restrain acts or threatened acts of public corporations or of public officers, boards, or commissions which are ultra vires and beyond the scope of their authority, outside their jurisdiction, unlawful or without authority, or which constitute a violation of their official duty, whenever the execution of such acts would cause irreparable injury." 1949 OK 166, ¶ 11, 202 Okla. 41, 210 P.2d 176.

### 2. Plaintiffs Have a Likelihood of Success on the Merits of Their Ex Post Facto Claim

The retroactive imposition of COO requirements increases punishment for pre-existing operations. *Collins v. Youngblood*, 497 U.S. 37, 42 (1990). An ex post facto law is "[a] law

*Lisa Tran, LLC, et al. v. State of Oklahoma, ex rel., et al.*
Plaintiff At Joy Growers Brief in Support of Emergency Motion for TRO
Page **12**

passed after the occurrence of a fact or commission of an act, which retrospectively changes the legal consequences or relations of such fact or deed." *Starkey v. Oklahoma Dep't of Corr.*, 2013 OK 43, ¶¶ 36-37, 305 P.3d 1004, 1018. As the Supreme Court held in *Landgraf v. USI Film Prods.*: "The largest category of cases in which we have applied the presumption against statutory retroactivity has involved new provisions affecting *contractual* or *property rights*, matters in which predictability and stability are of prime importance. 511 U.S. 244, 271, 114 S. Ct. 1483, 1500 (1994) (and fn. 25 citing cases therein). In *Landgraf*, Justice Stevens wrote that these constitutional protections: "demonstrate that retroactive statutes raise particular concerns. The Legislature's unmatched powers allow it to sweep away settled expectations suddenly and without individualized consideration. Its responsivity to political pressures poses a risk that it may be tempted to use retroactive legislation as a means of retribution against unpopular groups or individuals." 511 U.S. at 271, 114 S. Ct. at 1500. "[T]he traditional presumption [is] against applying statutes affecting substantive rights, liabilities, or duties to conduct arising before their enactment." *Landgraf*, 511 U.S. at 278. As Justice Marshall observed in his opinion for the Court in *Weaver v. Graham*, the Ex Post Facto Clause not only ensures that individuals have "fair warning," but also "[t]he ban also restricts governmental power by restraining arbitrary and potentially vindictive legislation." 450 U. S. 24, 28-29, 101 S.Ct. 960 (1981). "[A] law need not impair a 'vested right' to violate the *ex post facto* prohibition. Evaluating whether a right has vested is important for claims under the Contracts or Due Process Clauses, which solely protect preexisting entitlements." *Id.* at 30.

Defendants' application of Oklahoma's retroactive COO revocation results in among the following: disadvantages class members by revoking vested license rights and imposing severe economic sanctions, total destruction of a licensed business, permanent occupational debarment, physical seizure of property, forfeiture of property, banishment from a lawful trade, raids,

*Lisa Tran, LLC, et al. v. State of Oklahoma, ex rel., et al.*
Plaintiff At Joy Growers Brief in Support of Emergency Motion for TRO
Page **13**

criminal prosecution, criminal penalties, arrest, substantial fines, embargoed or ordered destruction of millions of dollars in plants and product that cannot be recouped, forced closure, all of which are classic forms of punishment. Further, the application results in strict liability for failing to possess a document that did not exist when the business was created. Defendant OBNDD Director Anderson admitted: "Even the people that do this legally, we're driving them out of business," which is evidence of an explicit deterrent and unlawful purpose. Defendants' application of Oklahoma's retroactive COO revocation also results in destroying 70–80% of an entire state industry segment, and more than $2.9 billion in economic output, which is grossly disproportionate to any conceivable regulatory goal. The retroactive COO requirement is therefore subject to, and violates, the Ex Post Facto Clause.

### 3. Plaintiffs Have a Likelihood of Success on the Merits of Their Equal Protection Claim

Defendants have intentionally subjected Moving Plaintiffs to vastly different treatment compared to other regulated industries, imposing unique, retroactive, and insurmountable regulatory barriers solely on medical marijuana licensees. (Dkt. 41 ¶¶ 12-13, 42, 367.) This differential treatment manifests in multiple ways:

First, retroactive application exclusively to marijuana businesses: Defendants retroactively applied COO requirements to existing, legally operating medical marijuana facilities, despite no such requirement existing at the time of initial licensure or prior renewals. (Dkt. 41 ¶¶ 25-30, 367(a).) OMMA annually certified that Moving Plaintiffs "fulfilled the requirements of 63 O.S. § 420 et seq." without any COO requirement. (Dkt. 41 ¶ 2.) Other regulated businesses – pharmaceuticals, agriculture, veterinary clinics – face no such retroactive burden for existing occupied structures. (Dkt. 41 ¶¶ 12, 368.)

Second, grossly disparate processing times: The OSFM processes non-marijuana COO applications in 2-3 weeks, while medical marijuana applications languish for 2-3 years. (Dkt. 41

*Lisa Tran, LLC, et al. v. State of Oklahoma, ex rel., et al.*
Plaintiff At Joy Growers Brief in Support of Emergency Motion for TRO
Page **14**

¶ 13.) Moving Plaintiffs submitted their COO applications in October 2023 and waited over 15 months with no resolution, while non-marijuana applications are processed expeditiously. (Dkt. 41 ¶¶ 93, 106; Exhibit 5, Declaration of William Lambert ¶ 8.) This disparity is not explained by volume or complexity – it reflects targeted de-prioritization "through understaffing and targeted scrutiny under specific Marijuana Facility Guidance, evidencing differential treatment without rational basis and reflecting animus toward the industry." (Dkt. 41 ¶ 42.)

Third, arbitrary backdating of compliance deadlines: Defendants required COO applications "before February 1, 2024" via legislation not signed until June 14, 2024 – making retroactive compliance literally impossible. (Dkt. 41 ¶¶ 33-37, 367(b).) No other regulated industry faces such impossible retroactive requirements.

Fourth, procedural sabotage designed to ensure failure: Defendants engaged in a coordinated pattern of conduct designed to prevent compliance:

- Rejecting renewal applications for minor, correctable errors and requiring full re-submission, thereby resetting deadlines and ensuring non-compliance (Dkt. 41 ¶¶ 19, 367(d));

- Repeatedly changing the "rules of the game," including whether third-party reviewers could be used, while businesses were in the process of retaining them (Dkt. 41 ¶¶ 20, 196, 367(f));

- Revoking entire registrations affecting both indoor and outdoor grows under the same license, despite outdoor grows not requiring COOs (Dkt. 41 ¶¶ 6, 208, 367(f)).

Fifth, selective enforcement: For example, at least five veterinary clinics in Payne County – which handle controlled substances and are similarly regulated – operate without COOs on record. (Dkt. 41 ¶ 12.) Other OBNDD-regulated entities face no comparable COO requirements. (Dkt. 41 ¶ 368.) Existing occupied buildings generally do not require new COOs under standard building codes. (Dkt. 41 ¶ 369.) Yet, Defendants impose this ex post facto burden exclusively on Plaintiffs and other marijuana licensees. (Dkt. 41 ¶ 369.)

*Lisa Tran, LLC, et al. v. State of Oklahoma, ex rel., et al.*
Plaintiff At Joy Growers Brief in Support of Emergency Motion for TRO
Page **15**

Defendants' discriminatory treatment bears no rational relationship to public safety, regulatory compliance, or any other legitimate state interest. The evidence establishes that Defendants' actions are motivated by illegitimate animus toward the medical marijuana industry rather than any conceivable legitimate regulatory goal. The *directness* and *explicitness* of the evidence of animus here is striking. Officials did not merely engage in disparate treatment; they openly declared their intent to eliminate the industry:

- OMMA representatives explicitly stated their intention to "make all of these licenses go away" and "wipe out everybody and start over" (Dkt. 41 ¶ 7);

- Director Anderson publicly acknowledged that even "the people that do this legally" are being "driven out of business" (Dkt. 41 ¶ 8);

- Director Anderson advocated for reducing the industry from 3,200 grows to only 8-10 – a 99.7% reduction (Dkt. 41 ¶ 9);

- OBNDD's public platforms boast about reducing registrations by thousands with minimal arrests – celebrating business destruction rather than public safety (Dkt. 41 ¶ 10).

Additional evidence of illegitimate animus includes, but is not limited to the following:

- Withholding information to collect fees before shutdowns: Defendants intentionally withheld information about impending retroactive requirements to collect renewal fees, then shut businesses down—evidencing a revenue-maximizing rather than safety-maximizing purpose (Dkt. 41 ¶¶ 16, 370(d));

- 400% fee increase: Defendants increased annual licensing fees from $500 to over $2,500, then issued revocations after collecting the exorbitant fees (Dkt. 41 ¶¶ 17-18, 370(g));

- Impossible compliance standards: Requiring compliance with a law passed in June 2024 by a February 2024 deadline demonstrates the requirement is punitive, not regulatory (Dkt. 41 ¶ 37);

- Selective "safe harbor" enforcement: Defendants granted "safe harbor" protection to some businesses awaiting COOs, while OBNDD is simultaneously enforcing against Moving Plaintiffs, demonstrating arbitrary and discriminatory application (Dkt. 41 ¶ 50).

Defendants cannot articulate – and have never articulated – how revoking licenses of businesses that have operated safely and without incident since 2019 advances public safety when the

*Lisa Tran, LLC, et al. v. State of Oklahoma, ex rel., et al.*
Plaintiff At Joy Growers Brief in Support of Emergency Motion for TRO
Page **16**

facilities operated compliantly for years. (Dkt. 41 ¶ 350.) Moving Plaintiffs passed all prior inspections "with flying colors" without any safety citations. (Dkt. 41 ¶ 64.) If public safety were the true concern, Defendants would not process non-marijuana COO applications 50 times faster than marijuana applications, would not reject applications for minor correctable errors requiring full resubmission, and would not allow some businesses to operate under a "safe harbor," while selectively enforcing against others.

The scale of destruction – eliminating 70-80% of an entire state industry segment and more than $2.9 billion in economic output (Dkt. 41 ¶ 333) – is grossly disproportionate to any conceivable regulatory goal. It is evidence that the true purpose is the elimination of the class, not regulation for safety.

Government action that treats similarly situated persons differently must bear a rational relationship to a legitimate state interest. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). Where, as here, the differential treatment is motivated by "animus" or "a bare . . . desire to harm a politically unpopular group," it violates equal protection. *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973); *Romer v. Evans*, 517 U.S. 620, 632 (1996) (law motivated by "animus toward the class it affects" lacks rational basis).

Here, Defendants' openly stated intent to "wipe out everybody," combined with the systematic imposition of impossible-to-meet requirements exclusively on marijuana businesses, constitutes precisely the type of animus-driven discrimination the Equal Protection Clause prohibits. The differential treatment – faster processing for non-marijuana businesses, no COO requirements for other controlled-substance handlers, procedural sabotage through routing and rule changes, and impossible retroactive deadlines, allowing some medical marijuana businesses and not others to operate with no COO based on an arbitrary retroactive date – bears no rational relationship to public safety or any legitimate interest.

*Lisa Tran, LLC, et al. v. State of Oklahoma, ex rel., et al.*
Plaintiff At Joy Growers Brief in Support of Emergency Motion for TRO
Page **17**

Plaintiffs have demonstrated a strong likelihood of success on their equal protection claim. The combination of (1) direct evidence of intent to eliminate the industry; (2) systematically disparate treatment compared to other regulated businesses; (3) procedural sabotage designed to ensure failure; and (4) the absence of any rational basis related to public safety establishes discriminatory enforcement in violation of the Equal Protection Clause. (Dkt. 41 ¶¶ 360-374.)

### 4. Plaintiffs Have a Likelihood of Success on the Merits of Their Procedural Due Process Claim

Moving Plaintiffs have protected property interests in their licenses and registrations. *The Bd. of Regents of State Colleges*, 408 U.S. at 577. The Tenth Circuit has consistently held that when the government deprives individuals of protected property interests, procedural due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Awad*, 670 F.3d at 1131; *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528 (1985).

Defendant OBNDD's revocation in this case to Plaintiff's outdoor grow, which requires no COO, and without adequate process – attributable to among the following: acting outside of their authority by revoking a registration that does not require a COO without distinction or carve out, denial of discovery; summary disposition procedures without a full evidentiary hearing; violating Plaintiffs' right to a jury trial in light of the penalties, excessive fines, and potential for arrest and seizure; and inter-agency delays Defendants themselves caused – violates the Fourteenth Amendment. *See Goldberg v. Kelly*, 397 U.S. 254, 262 (1970) (due process requires opportunity to be heard "at a meaningful time and in a meaningful manner" before deprivation of property).

In *SEC v. Jarkesy*, 603 U.S. 109 (2024), the Supreme Court held that when an agency seeks to impose substantial penalties, due process requires a jury trial before a neutral adjudicator. The Court emphasized that agencies cannot expand their own authority beyond

*Lisa Tran, LLC, et al. v. State of Oklahoma, ex rel., et al.*
Plaintiff At Joy Growers Brief in Support of Emergency Motion for TRO
Page **18**

statutory limits, and when they do so, their actions violate constitutional protections. *Id.* at 140-41. Here, OBNDD threatens criminal prosecution and substantial fines for businesses that continue operating without COOs – penalties that trigger *Jarkesy*'s protections. The Oklahoma Constitution Article II, Section 19 is even broader than that of the Seventh Amendment, which states: "The right of trial by jury shall be and remain inviolate, except in civil cases wherein the amount in controversy does not exceed [] $1,500.00). . . ." Under OBNDD's regulatory framework, the fines are substantial (more than $1,500), and criminal arrest and prosecution are imminent. As such, OBNDD is required to provide a right to a jury trial for alleged violations consistent with the Oklahoma Constitution and *Jarkesy*. OBNDD's denial of Plaintiffs' right to an opportunity to be heard in all respects violates their procedural due process rights.

### 5.  Plaintiffs Have a Likelihood of Success on the Merits of Their Declaratory Judgment Claim

Plaintiffs are entitled to a declaratory judgment as well and have a strong likelihood of success on the merits of that claim, upon which the injunction should be granted. *See Mustard Seed Enters., Inc*, 2025 OK CIV APP 26, ¶ 25, 576 P.3d at 972. "'In order to invoke the jurisdiction of the court under the declaratory judgments act there must be an actual, existing justiciable controversy between parties having opposing interests, which interests must be direct and substantial, and involve an actual, as distinguished from a possible, potential or contingent dispute.'" *Id.*, citing *Dean v. State ex rel. Doak*, 2012 OK CIV APP 105, ¶ 12, 292 P.3d 58.

### B.  Moving Plaintiffs Will Suffer Irreparable Harm Absent Relief

Without injunctive relief, Plaintiffs will suffer immediate and irreparable harm that cannot be remedied by monetary damages. The Supreme Court has consistently held that the loss of constitutional freedoms "for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Awad*, 670 F.3d at 1131 Further, "a refusal on the part of the federal courts to intervene when no state proceeding is pending may

*Lisa Tran, LLC, et al. v. State of Oklahoma, ex rel., et al.*
Plaintiff At Joy Growers Brief in Support of Emergency Motion for TRO
Page **19**

place the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding." *Steffel v. Thompson*, 415 U.S. 452, 462 (1974).

If Plaintiffs are not able to operate and engage in contracts by February 20, 2026, they will lose all necessary contracts to start the outdoor grow season by June 1, 2026, and will lose millions of dollars, customer good will, and competitive business advantages. Exhibit 5, ¶ 20. Absent relief, Plaintiffs will suffer irreparable harm to the outdoor grow part of our business, loss of unique strains, loss of livelihood, loss of property, lost revenue, loss of investment, loss of goodwill, erosion of customer base, loss of future customers based on customer referrals, and diminution of corporate image. *Id.* ¶ 20. Plaintiffs' Constitutional rights have been violated and will continue to be violated by Defendants' actions and without an injunction and declaratory relief.

All and each of these alone constitute irreparable harm, entitling Plaintiffs to injunctive relief to maintain the status quo. *See, e.g., Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 37 (2d Cir. 1995) ("We overturned a finding of no irreparable injury because the [plaintiff] had demonstrated that some customers would cease dealing with it for news from any source if it was unable to continue supplying those particular foreign news pictures."); *Jacobson & Co. v. Armstrong Cork Co.*, 548 F.2d 438, 445 (2d Cir.1977) ("presented ample evidence to show a threatened loss of good will and customers, both present and potential, neither of which could be rectified by monetary damages"); *Interphoto Corp. v. Minolta Corp.*, 417 F.2d 621, 622 (2d Cir.1969) (per curiam) (affirming finding of irreparable harm because plaintiff "would be unable to calculate its damages since it would suffer not merely loss of profits with respect to [defendant's] goods but loss of good will from the lack of a 'full line'"); *Green Stripe, Inc. v. Berny's Internacionale, S.A.,* 159 F.Supp.2d 51, 56-57 (E.D. Pa. 2001) (violation of exclusivity

*Lisa Tran, LLC, et al. v. State of Oklahoma, ex rel., et al.*
Plaintiff At Joy Growers Brief in Support of Emergency Motion for TRO
Page **20**

clause in sales contract constituted irreparable harm where plaintiff was denied ability to sell unique, perishable grape and lacked market substitute to maintain its presence in Mexican grape market); *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907-909 (2d Cir. 1990) (loss of unique product and goodwill supports finding of irreparable harm when customers indicate a strong preference for the product and threaten discontinuation of business relationship).

### C. Balance of Equities Favors Moving Plaintiffs

The balance of equities strongly favors Moving Plaintiffs. Here, Moving Plaintiffs are seeking only to be able to be active to enter into contracts for the June 1, 2026 growing season, which they must be allowed to do before February 20, 2026 or all will be lost. They seek only to maintain the status quo – continuing operations as they have done legally and without incident since 2019 – pending resolution of their constitutional claims. Defendants, by contrast, suffer no harm from the delayed enforcement of an unconstitutional order. The Tenth Circuit has emphasized that where constitutional violations are shown, "the threatened injury to plaintiff's rights outweighs any injury to defendants." *Awad*, 670 F.3d at 1131. Moreover, "when a law is likely unconstitutional, the government's interest in enforcing the law does not outweigh that of individuals in securing the protection of their constitutional rights." *Browne v. City of Grand Junction*, 27 F. Supp. 3d 1161, 1167 (D. Colo. 2014) (citing *Awad*, 670 F.3d at 1131).

Defendants' purported interest in enforcing the COO requirement, especially here on an outdoor grow, is substantially undermined by the fact that the OSFM has been unable to timely process COO applications despite businesses' good-faith compliance efforts. The enforcement delays are attributable to governmental agencies, not to Moving Plaintiffs. Equity does not permit Defendants to benefit from their own delays in implementing the regulatory scheme. The OSFM retains full authority to enforce all fire and building codes, so the TRO does not strip public-safety protections; it only prevents OBNDD from revoking for an outdoor grow that does

*Lisa Tran, LLC, et al. v. State of Oklahoma, ex rel., et al.*
Plaintiff At Joy Growers Brief in Support of Emergency Motion for TRO
Page **21**

not require a COO, and further, based on delays, which SB 1635 was in theory, but not in practice, designed to address. The equities tip in Plaintiffs' favor.

Furthermore, OBNDD has issued "safe harbor" protection to many businesses, who are still waiting for COOs, demonstrating that Defendants recognize that immediate enforcement would be inequitable. This selective enforcement further tips the balance in Plaintiffs' favor.

### D. The Public Interest Favors Injunctive Relief

"[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Awad*, 670 F.3d at 1132 (quoting *Pac. Frontier*, 414 F.3d at 1237); *see also G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) ("It is beyond dispute that the public interest is served by protecting constitutional rights."). "When a law is likely unconstitutional, the government's interest in enforcing the law does not outweigh that of individuals in securing the protection of their constitutional rights." *Browne*, 27 F. Supp. 3d at 1167. Enjoining unconstitutional enforcement serves the public interest by upholding due process, preventing arbitrary agency actions, and supporting Oklahoma's regulated medical marijuana industry. *See G & V Lounge, Inc.,* 23 F.3d at 1079 (public interest favors protecting constitutional rights).

The public interest is served by enjoining unconstitutional enforcement actions for several reasons, including but not limited to the following: First, preventing violations of due process rights upholds the rule of law and maintains public confidence in governmental institutions. Second, protecting businesses from ultra vires agency actions prevents arbitrary government overreach and ensures agencies operate within their lawful authority. Third, maintaining Oklahoma's regulated medical marijuana industry serves the public interest by preserving jobs, tax revenue, and access to medical marijuana for patients who rely on it for treatment. Fourth, allowing businesses to continue operations while awaiting COOs – which they

*Lisa Tran, LLC, et al. v. State of Oklahoma, ex rel., et al.*
Plaintiff At Joy Growers Brief in Support of Emergency Motion for TRO
Page **22**

have diligently applied for but cannot obtain due to OSFM delays – serves the public interest by preventing unnecessary business closures and economic harm. As the Tenth Circuit emphasized in *Awad*, the public interest requires courts to "protect the plaintiffs' [Constitutional] rights and preserve the status quo until the court can address the merits of plaintiffs' claims." 670 F.3d at 1132. The same principle applies here, where Defendants' ultra vires enforcement actions threaten Plaintiffs' constitutional rights.

## V.    REQUEST FOR HEARING AND BOND

Moving Plaintiffs request an expedited hearing on this Motion. If the Court grants a TRO pending the hearing, it should remain in effect until resolution of the preliminary injunction request, or further order of the Court. Plaintiffs maintain that no bond or a nominal bond is appropriate, as Defendants face no financial harm in maintaining the status quo. FRCP 65(c); *Coquina Oil Corp. v. Transwestern Pipeline Co.*, 825 F.2d 1461, 1462 (10th Cir. 1987) (bond may be waived or minimized where defendant suffers no financial harm). Moving Plaintiffs are suffering constitutional injury, and any bond requirement would itself cause irreparable harm. Any alleged harm to Defendants is non-monetary and regulatory, and they are fully indemnified in their official capacities, further supporting a nominal or zero bond.

## VI.    CONCLUSION

For the foregoing reasons, the Moving Plaintiffs respectfully request that the Court grant this Motion and enter an Order granting the following relief:

A.    Enjoining Defendants from enforcing the November 14, 2025 Final Order as it applies to At Joy Growers' outdoor grow and from taking any action based on that Final Order to revoke, suspend, or otherwise interfere with Moving Plaintiffs' OBNDD registration or their lawful medical marijuana operations, as it relates to their outdoor grow, pending further order of this Court.

B.    This TRO shall extend until the Court can hold a hearing within 14 days of this motion pursuant to FRCP 65(b)(2) and rule on Moving Plaintiffs' request for preliminary injunction or by consent of the parties.

*Lisa Tran, LLC, et al. v. State of Oklahoma, ex rel., et al.*
Plaintiff At Joy Growers Brief in Support of Emergency Motion for TRO
Page **23**

C.      The Court to set a hearing on Moving Plaintiffs' request for preliminary injunction as soon as practicable.

D.      Moving Plaintiffs shall post a bond/undertaking in the amount of $0.

E.      Such other relief as is just and equitable.

Respectfully submitted,

**ATTORNEY FOR PLAINTIFFS**

*/s/Dana L. Kurtz*
Dana L. Kurtz

Dana L. Kurtz, Esq., OBA#18092
Wirth Law Office
500 W. 7th St.
Tulsa, OK 74119
(918) 932-2800, Ext. 135
www.wirthlawoffice.com
dana@wirthlawoffice.com

*Lisa Tran, LLC, et al. v. State of Oklahoma, ex rel., et al.*
Plaintiff At Joy Growers Brief in Support of Emergency Motion for TRO
Page **24**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on February 11, 2026, I electronically transmitted the foregoing to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

**Counsel for Defendants**

Devan A Pederson    devan.pederson@oag.ok.gov
Alejandra J Brigida    alejandra.brigida@oag.ok.gov
Anthony Reding     aj.reding@oag.ok.gov

**Counsel for Richard Lynn Dopp (Plaintiff No. 29); Splash Farms, Inc. (Plaintiff No. 6), owner Un Sun Kim (Plaintiff No. 7); Plasma Green, Inc. (Plaintiff No. 8), and owner Qiao Jia Liao (Plaintiff No. 9)**

R. Charles Wilkin    charles.wilkin@wilkinlaw.com

*/s/Dana L. Kurtz*

_____

Dana L. Kurtz

*Lisa Tran, LLC, et al. v. State of Oklahoma, ex rel., et al.*
Plaintiff At Joy Growers Brief in Support of Emergency Motion for TRO
Page **25**