UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LISA TRAN, LLC, an Oklahoma Limited Liability company, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF OKLAHOMA, ex rel., OKLAHOMA MEDICAL MARIJUANA AUTHORITY, *et al.*,<br><br>Defendants. | Case No. 25-cv-512-CDL |

**DEFEDENDANT GOVERNOR J. KEVIN STITT'S RESPONSE TO PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

Defendant Governor Stitt hereby submits his Response to Plaintiff's Emergency Motion for a Temporary Restraining Order [Doc. 97], by and through his undersigned counsel shows the Court the following:

**STATEMENT OF THE CASE**

Plaintiff alleges they are individuals or business entities involved in the cultivation, processing, and/or sale of medical marijuana in Oklahoma. They collectively assert federal constitutional claims as well as state-law claims against four state agencies and four state officials challenging the State of Oklahoma's regulation of marijuana. The five state agency defendants are: (1) the State of Oklahoma *ex rel.* Oklahoma Medical Marijuana Authority ("OMMA"), (2) the Oklahoma Bureau of Narcotics and Dangerous Drugs ("OBNDD"), (3) Oklahoma State Fire Marshall ("OSFM"), and (4) the Oklahoma Attorney General's Office ("OAG") and (5) "LP Gas

Administration."[1] These state agencies are collectively referred to herein as "State Agencies" or "State Agency Defendants." The state officials sued in this action are: (1) G. Keith Bryant, Oklahoma State Fire Marshal; (2) Oklahoma Governor Kevin Stitt; (3) Adria Berry, Director of the Oklahoma Medical Marijuana Authority; and (4) Donnie Anderson, Executive Director of OBNDD. These officials are collectively referred to herein as "State Officials" or "State Official Defendants."

Because Plaintiffs have failed to state a claim upon which relief may be granted, the motion must be denied.

### ARGUMENT AND AUTHORITIES

### DENIAL OF PLAINTFF'S MOTION IS PROPER BECAUSE GOVERNOR STITT'S GENERALIZED DUTY TO ENFORCE THE LAW OR SUPERVISE STATE AGENCIES DOES NOT PROVIDE A VIABLE CLAIM FOR RELIEF.

Under Federal Rule 12(B)(6), a plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although motions to dismiss are generally disfavored, dismissal is appropriate when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" or "if as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations . . . .'" *Id.* at 679; *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (citation omitted); *see also Dani v. Miller*, 2016 OK 35, ¶ 11, 374 P.3d 779, 786 ("A motion to dismiss is properly granted only when there are no facts consistent with the allegations under any cognizable legal theory or there are insufficient facts under a cognizable legal theory."). Here, Plaintiff has failed

---

[1] Although "LP Gas Administration" is sometimes referred to as the "LP-Gas Board," its formal name is the "Oklahoma Liquefied Petroleum Gas Board." 52 O.S. § 420.3(A). The Defendant is a governmental agency of the State of Oklahoma. *See id*. Defendant anticipates the style of the case will be corrected by stipulation to reflect the Defendant's correct formal name in the near future.

to plead any set of facts that could support a cognizable legal theory against Governor Stitt. Because Plaintiff relies solely on a generalized notion of Governor Stitt's duty to enforce the law or supervise state agencies, denial of Plaintiff's Motion is proper.

To start, claims against the State and her officials are barred by the doctrine of sovereign immunity, which is confirmed in the Eleventh Amendment to the U.S. Constitution and the Oklahoma Governmental Tort Claims Act ("Act"). It is long settled that "States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution." *Alden v. Maine*, 527 U.S. 706, 713 (1999). And "[u]nder the common law, the doctrine of sovereign immunity protected states from suit." *Schmidt v. Grady Cnty.*, 1997 OK 92, ¶ 4, 943 P.2d 595, 597. The Act confirms that "[t]he State of Oklahoma does hereby adopt the doctrine of sovereign immunity. The state, its political subdivisions, and all of their employees acting within the scope of their employment, whether performing governmental or proprietary functions, shall be immune from liability for torts." 51 O.S. § 152.1(A). The State waives that immunity "only to the extent and in the manner provided in this act . . . ." *Id.* at § 152.1(B). What's more, the Act expressly provides that the State is not liable for a claim resulting from the "[a]doption or enforcement of or failure to adopt or enforce a law, whether valid or invalid, including, but not limited to, any statute, charter provision, ordinance, resolution, rule, regulation or written policy" or "[p]erformance of or the failure to exercise or perform any act or service which is in the discretion of the state or political subdivision or its employees . . . ." 51 O.S. § 155(4), (5). Here, Plaintiffs' allegations against Governor Stitt, "as the chief executive officer" who is "responsible for overseeing enforcement of state laws", Amended Compl. ¶ 305, falls squarely within this bar.

Although not explicitly mentioned, Plaintiffs attempt to avoid the sovereign immunity bar by invoking the U.S. Supreme Court's *Ex parte Young*, but that doctrine provides a narrow and carefully limited exception that does not apply here. *See Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021) ("To be sure, in *Ex parte Young*, this Court recognized a narrow exception grounded in traditional equity practice—one that allows certain private parties to seek judicial orders in federal court preventing state executive officials from enforcing state laws that are contrary to federal law."). Courts consistently reject attempts to apply *Ex parte Young* to state officials, including governors, based solely on a generalized duty to enforce the law.[2] *See, e.g., Bishop v. Oklahoma*, 333 Fed. App'x 361, 365 (10th Cir. 2009) ("Here, the Oklahoma officials' generalized duty to enforce state law, alone, is insufficient to subject them to a suit challenging a constitutional amendment they have no specific duty to enforce.") (citing *Women's Emergency Network v. Bush*, 323 F.3d 937, 949–50 (11th Cir. 2003) ("Where the enforcement of a statute is the responsibility of parties other than the governor (the cabinet in this case), the governor's general executive power is insufficient to confer jurisdiction."); *United States v. Abbott*, 85 F.4th 328, 334 (5th Cir. 2023) ("[W]here the challenged law 'makes clear that [another agency] is the agency responsible for the [law's] administration and enforcement,' only that agency is a proper defendant under *Ex parte Young*."); *Doyle v. Hogan*, 1 F.4th 249, 255 (4th Cir. 2021) ("Doyle relies on the Governor's general duty to enforce state laws and general control over Maryland's Executive Branch to provide the requisite 'specific connection' to enforcement of the Act. But neither suffices.").

---

[2] Because the *Ex Parte Young* exception to the Eleventh Amendment's sovereign immunity bar is a product of federal case law, federal case law is both persuasive and controlling.

As *Ex parte Young* itself makes clear, the exception applies only where state officers "are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence" enforcement proceedings against affected parties. 209 U.S. 123, 155–56 (1908). Absent such a connection, the suit "is merely making [the officer] a party as a representative of the state, and thereby attempting to make the state a party[,]" which sovereign immunity forbids. *Id.* at 157.

This consistent principle—that a generalized duty is insufficient to invoke the *Ex parte Young* exception—is rooted not only in sovereign immunity, but also in judicial economy and standing. As the Third Circuit aptly explained:

> If we were to allow [plaintiffs] to join . . . [the State officials] in this lawsuit based on their general obligation to enforce the laws . . . , we would quickly approach the nadir of the slippery slope; each state's high policy officials would be subject to defend every suit challenging the constitutionality of any state statute, no matter how attenuated his or her connection to it.

*1st Westco Corp. v. Sch. Dist. of Phila.*, 6 F.3d 108, 112–13, 116 (3d Cir. 1993). Without some real connection between the named state official and the challenged action or law, courts would be transformed into forums for abstract supervision, burdening the judiciary with intangible disputes incapable of producing concrete relief. Moreover, such an approach would substantially interfere with state officials' (in this case the Governor's) ability to discharge the duties of their office, diverting time and attention away from those important functions and toward defending lawsuits to which they have no direct connection simply because they challenge a statute or the actions of one of hundreds of state agencies in Oklahoma.

Allowing generalized duties to serve as the basis for suit would also contravene the settled principle, confirmed in Article III of the U.S. Constitution, that courts exist to resolve actual cases and controversies, not to "adjudicate hypothetical or abstract disputes." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *see also In re Guardianship of Doornbos*, 2006 OK 94, ¶ 2,

5

151 P.3d 126, 126 ("This Court has consistently held that it will not decide abstract or hypothetical questions when no practical relief will result."). Standing requires: (1) a legally protected interest which must have been injured in fact— *i.e.*, suffered an injury which is actual, concrete and not conjectural in nature, (2) a causal nexus between the injury and the complained-of conduct, and (3) a likelihood, as opposed to mere speculation, that the injury is capable of being redressed by a favorable court decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *Bank of America, NA v. Kabba*, 2012 OK 23, ¶ 4, 276 P.3d 1006, 1008. Important here, "[c]ausation requires the plaintiff to show 'that the injury was likely caused by the defendant,' and redressability requires the plaintiff to demonstrate 'that the injury would likely be redressed by judicial relief.'" *Diamond Alternative Energy, LLC v. Envtl. Prot. Agency*, 606 U.S. 100, 111 (2025) (citation omitted).

      Consistent with these principles, *Ex parte Young* requires that the named state official "have some connection with the enforcement of the act," or be "specially charged with the duty to enforce" the law at issue. 209 U.S. at 157–58. Where the connection is too attenuated, standing is absent. And without standing, this Court lacks jurisdiction. *See Lujan*, 504 U.S. at 561 ("The party invoking federal jurisdiction bears the burden of establishing these [standing] elements."); *Matter of the Estate of Doan*, 1986 OK 15 at ¶ 7 ("Standing, as a jurisdictional question, may be correctly raised at any level of the judicial process or by the Court on its own motion.").

      That is precisely the case here. Plaintiff alleges only that Governor Stitt possesses a generalized duty to enforce the law or supervise the named state agencies. See Amended Compl. ¶ 305. They fail to identify any specific action taken by Governor Stitt, any enforcement decision attributable to him, or any action that he has threatened or is imminently about to undertake with respect to Plaintiffs. Because no set of facts could establish a viable claim against Governor Stitt under these circumstances, Plaintiff's Motion should be denied.

Permitting this action to proceed against Governor Stitt would also raise significant separation-of-powers concerns. To grant relief, the Court would have to find that Governor Stitt was required to take some undefined action within the purview of his general duty to execute the law or oversee the executive branch. *See, e.g.,* OKLA. CONST. art. VI, §§ 2, 8. That would require this Court to compel executive action in the absence of any alleged legal violation or failure to perform a specific duty. Oklahoma law does not permit such roving judicial intervention. The Oklahoma Supreme Court has made plain that the "actions of the Governor cannot be controlled by the courts through mandamus or in any other manner." *Hall v. Tirey*, 1972 OK 118, ¶ 20, 501 P.2d 496, 502 (citing *State v. Huston*, 1910 OK 259, ¶¶ 13–21, 113 P. 190, 192—193). As the Court long ago explained, "[t]he current weight of state authority appears to clearly sustain the rule that state courts may not control the Governor of a state even in the exercise of a ministerial act." *Huston*, 1910 OK 259 at ¶ 13. No special circumstance is alleged here that would justify departure from that settled rule. For this reason Plaintiff's Motion should be denied.

## **DISMISSAL IS ALSO PROPER ON ANY ADDITIONAL GROUNDS ASSERTED BY OTHER DEFENDANTS.**

Governor Stitt adopts all arguments advanced by other Defendants that support denial. To the extent denial is warranted on any ground asserted by another Defendant, denial is likewise required as to all claims against Governor Stitt.

## CONCLUSION

For the foregoing reasons, the Governor respectfully asks the Court to deny Plaintiff's motion.

Respectfully submitted,

*s/A.J. Reding*
**DEVAN PEDERSON, OBA #16576**
**A.J. REDING, OBA # 32490**
*Assistant Attorneys General*
Oklahoma Attorney General's Office
313 NE 21st Street
Oklahoma City, OK 73105
T: (405) 521-1263 | F: (405) 521-4518
devan.pederson@oag.ok.gov
aj.reding@oag.ok.gov
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of February, 2026, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and for Notice of Electronic Filing to all counsel of record, who are registered participants.

*s/A.J. Reding*
A.J. Reding