## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

SPLASH FARMS, INC., et al.,     )
      )
     Plaintiffs,    )
      )   **Case No.  25-CV-512-CDL**
v.      )
      )
STATE OF OKLAHOMA ex rel.   )
OKLAHOMA MEDICAL   )
MARIJUANA AUTHORITY; et al.,   )
      )
     Defendants.   )

### OPINION AND ORDER

Before the Court is the Emergency Motion by Plaintiffs At Joy Growers and Their Owners for Temporary Restraining Order and Preliminary Injunction (the "Emergency Motion"). (Doc. 96).[1] Responses were timely filed by Defendant Governor J. Kevin Stitt (Doc. 103) and by all other Defendants (Doc. 104).[2]

The Court held an evidentiary hearing on the Emergency Motion on February 17 and 18, 2026. The Moving Plaintiffs—At Joy Growers LLC ("At Joy"), Darin Atkinson,

---

[1]    By consent of the parties, the undersigned has the authority to grant or deny this Motion in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

[2]    The Response filed on behalf of Governor Stitt adopts the arguments advanced in the Response filed by all other Respondents. (Doc. 103 at 7). To the extent Governor Stitt's Response also asserts that the Emergency Motion should be denied because it fails to state a claim as to Governor Stitt, that issue is squarely addressed in a separately filed motion to dismiss (Doc. 94), which has not been fully briefed and is not yet ripe for the Court's determination. Accordingly, the Court will reserve its consideration of those arguments until they have been fully presented on the motion to dismiss. The injunction granted herein does not require or restrain action by the Governor or his Office in any event.

Melissa Atkinson, Dan Joy, and Jane Joy—and the Defendants appeared through counsel and presented witness testimony, documentary evidence, and oral arguments on the Emergency Motion. (*See* Doc. 108–109). Six witnesses testified: Jessica McGuire, Ph.D., who oversees the registration division of the Oklahoma Bureau of Narcotics and Dangerous Drugs Control ("OBNDD"); Darryl Beebe, the Oklahoma State Fire Marshal's Chief Agent of Plan Review Enforcement; Jonathan Darin Atkinson, one of At Joy's owners; Jodi Francisco, a volunteer fire chief and a full-time firefighter for Quapaw Nation; Richard Rogers, who has been retained by medical marijuana businesses to obtain their certificates of occupancy ("COO"); and Lieutenant Colonel Mitch Smith, who supervises three marijuana enforcement teams for OBNDD. Plaintiff's Exhibits 1–21, and 23–27, and Defendant's Exhibits 1–9, 13–19, and 21–26 were admitted. Following the evidentiary hearing, the Moving Plaintiffs filed Proposed Findings of Fact and Conclusions of Law (Doc. 112), and Defendants filed a supplemental brief in opposition to the Emergency Motion (Doc. 111, 113).

Upon consideration of the parties' submissions, arguments, and the evidentiary record at this stage of the litigation, the Court finds that the Emergency Motion should be granted to the extent it seeks a preliminary injunction, limited to the continued operation of At Joy's outdoor growing operation only, pursuant to its existing, state-issued license.

## I.    Background

The distribution, dispensation, manufacture, and possession of medical marijuana became legal under Oklahoma law following the passage of a statewide ballot initiative in 2018. *See generally United States v. Stacy*, 156 F.4th 994, 1001 (10th Cir. 2025)

2

(discussing development of Oklahoma's medical-marijuana law and industry regulations). Medical marijuana businesses quickly emerged and proliferated to become a significant industry in Oklahoma. *See Orig. Investments, LLC v. State of Okla.*, 542 F. Supp. 3d 1230, 1234 (W.D. Okla. 2021) (noting, nearly five years ago, evidence that the state had licensed more than 2,000 dispensaries alone, and that Oklahoma was "profiting from an $800 million medical marijuana market" at that time). Thousands of medical-marijuana manufacturing, processing, and distribution businesses have operated in the state since.

The Moving Plaintiffs created At Joy, a medical marijuana growing and processing business in Ottawa County, Oklahoma. At Joy has been operating since 2020 and is licensed, as required under Oklahoma law, through the Oklahoma Medical Marijuana Authority ("OMMA"). At Joy holds three active OMMA licenses, including (1) Commercial Indoor Grower License # GAAI-6IC9-YBBG; (2) Commercial Outdoor Grower License # GAAO-6IC9-YBBG, and (3) Commercial Processor License # PAAA-QV7G-Q4QZ. (Pl. Ex. 27). Both grower licenses are currently valid, expiring July 28, 2026. *Id*. The Commercial Processor License expires August 14, 2026. *Id*. Thus, all of At Joy's OMMA licenses remain active.

Any licensed business seeking to handle any controlled substances in Oklahoma must also have an active registration issued by OBNDD. Under Title 63, § 303 of the Oklahoma Statutes, OBNDD "shall register an applicant to . . . manufacture" a subject controlled substance, "unless the Director determines that the issuance of such registration is inconsistent with the public interest," which the agency is to determine based on factors including public health and safety. OKLA. STAT. tit. 63 § 2-302(A). Despite holding valid

and unexpired OMMA licenses, At Joy's business has been effectively shut down, in its entirety, pursuant to a November 14, 2025 Final Order of the Director of the OBNDD revoking At Joy's registration, which covers operations under all three OMMA licenses. (Def. Ex. 2, "Final Order"). The OBNDD Final Order revoked the Moving Plaintiffs' registration and prohibits them from possessing, manufacturing, distributing, dispensing, prescribing, administering, or using for scientific purposes any controlled dangerous substance within or into the State of Oklahoma, effective thirty days from the date of the Final Order.

The Final Order revoked At Joy's OBNDD registration solely because At Joy failed to submit a COO for two buildings on its farm that were used for its indoor manufacturing and processing operations. Moving Plaintiffs do not dispute that COOs have not been issued for the buildings located on At Joy's property. During the first few years of At Joy's operation, OBNDD did not require proof of a COO for OMMA-licensed businesses to obtain a registration from OBNDD. At Joy operated its outdoor grow for years without incident or apparent interference by OBNDD and OMMA. Moving Plaintiffs assert that they have diligently sought to comply with OBNDD requirements but have been hampered by delays that are no fault of their own. At Joy has passed an interim (50%) Fire Marshal inspection and anticipates that, within the next few months, it will receive final approval of the required COOs to resume indoor operations. (Doc. 97 at 6; *see* Def. Exs. 23-25).

It is undisputed that outdoor-only grow operations are **_not_** subject to the COO requirement. Moving Plaintiffs contend that OBNDD has violated the Constitution by revoking At Joy's ability to continue its outdoor grow operation, under License # GAAO-

4

6IC9-YBBG, based solely on OBNDD's cited reason that At Joy has not produced a COO for certain buildings, even though those buildings are not involved in At Joy's outdoor grow operation. (Docs. 97 at 6; 97-4 at 2).

Moving Plaintiffs assert claims pursuant to 42 U.S.C. § 1983 and the Oklahoma Constitution for alleged violations of their rights. (Doc. 41 at 48–61). They filed the Emergency Motion on February 11, 2025, seeking a temporary restraining order ("TRO") and preliminary injunction prohibiting OBNDD from enforcing the Final Order only as it affects the outdoor grow portion of At Joy's business. Without immediate relief, At Joy would miss the entire 2026 outdoor grow season, which starts June 1, 2026 and yields a harvest in the fall, because customers and suppliers require commitments before the end of February to prepare for June planting. Moving Plaintiffs assert that, if they are unable to enter contracts in this short window of time, they face a loss of their livelihood for an indefinite period of time, will lose customer business worth "millions of dollars," risk the future of established customer relationships, and face other likely harms that would devastate their business irreparably. (Doc. 97 at 13, 20; *see* Doc. 97-5 ¶ 20).

## II.    Legal Standards

"The function of a preliminary injunction is to preserve the status quo pending a final determination of the rights of the parties." *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980) (citing *Penn v. San Juan Hosp., Inc*., 528 F.2d 1181 (10th Cir. 1975); *Cont'l Oil Co. v. Frontier Refin. Co*., 338 F.2d 780 (10th Cir. 1964)).

> [B]road discretion is given to the district court to manage the timing and
> process for entry of all interlocutory injunctions—both TROs and
> preliminary injunctions—so long as the opposing party is given a reasonable

5

opportunity, commensurate with the scarcity of time under the circumstances, to prepare a defense and advance reasons why the injunction should not issue.

*Ciena Corp. v. Jarrard*, 203 F.3d 312, 319 (4th Cir. 2000).

A party requesting preliminary injunctive relief must "demonstrate four factors: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (citing *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008)). Preliminary injunctive relief is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22; *see also Schrier v. Univ. of Colo.,* 427 F.3d 1253, 1258 (10th Cir. 2005).

 "In hearings upon motions for temporary or preliminary injunctive relief, the burden is upon the one requesting such relief to make a prima facie case showing a reasonable probability that he will ultimately be entitled to the relief sought. The applicant has the additional burden of showing a right to the specific injunctive relief sought because of irreparable injury that will result if the injunction is not granted. There must exist a probable right and a probable danger." *Lundgrin*, 619 F.2d at 63 (quoting *Crowther v. Seaborg*, 415 F.2d 437, 439 (10th Cir. 1969)).

Certain injunctions are disfavored, such as those that (1) alter the status quo; (2) compel the non-movant to do something it was not already doing during the last uncontested period preceding the injunction; or (3) afford the movant all the relief that it could recover at the conclusion of a full trial on the merits. *Schrier*, 427 F.3d at 1259.

Disfavored injunctions "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id.* (quoting *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004), *aff'd*, 546 U.S. 418 (2006)). At the close of the evidentiary hearing, Defendants' counsel argued that this heightened standard applies because the Emergency Motion seeks relief that is mandatory. Counsel averred that At Joy's OBNDD registration is "gone," and there is no mechanism to reinstate it under state law. Counsel argued that, to effect relief, the Court would have to create a novel, federal registration.

The undersigned finds that the requested injunction is not mandatory, and the heightened standard of scrutiny does not apply.

> [T]he nature of any injunction requires the nonmovant to act in some particular fashion, and not all injunctions are mandatory. For example, the injunction issued in *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.* required EchoStar to continue activating new Dominion subscribers on the same terms and conditions it previously had used for other customers. But this restraint did not make the injunction a mandatory one because it "did not compel EchoStar to do something that it was not already doing during the last uncontested period preceding the injunction."

*State of Kansas v. United States*, 192 F. Supp. 3d 1184, 1210 (D. Kan. 2016), *aff'd in part*, 874 F.3d 1226 (10th Cir. 2017) (quoting *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149 (10th Cir. 2001)). The Emergency Motion seeks relief that is prohibitory and would restore the parties' positions as they existed before the Final Order became effective, limited to At Joy's outdoor grow. *See Schrier*, 427 F.3d at 1260 (quoting *Dominion Video Satellite, Inc.*, 269 F.3d at 1155) ("[T]he status quo is 'the last uncontested

status between the parties which preceded the controversy until the outcome of the final hearing.'").

"It is in the nature of a preliminary injunction that it may issue even though the plaintiff's right to permanent relief still is uncertain." 11A Mary Kay Kane & Alexandra D. Lahav, *Purpose and Scope of Preliminary Injunctions*, in WRIGHT & MILLER'S FEDERAL PRACTICE AND PROCEDURE § 2947 (3d ed. 2025 update). A preliminary injunction that is not obtained *ex parte* (i.e., a TRO) "remains in effect until a final judgment is rendered or the complaint is dismissed, unless it expires earlier by its own terms, or is modified, stayed, or reversed." *Id*.

## III.    Discussion

In examining the four relevant factors, "[b]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Dominion Video Satellite, Inc.*, 356 F.3d at 1260 (alteration in original) (quoting *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990)).

### A.    Irreparable Harm

Irreparable harm "must be both certain and great. . . not [ ] merely serious or substantial." *Prairie Band of Potawatomi Indians v. Pierce,* 253 F.3d 1234, 1250 (10th Cir. 2001); *see also Dominion Video Satellite, Inc.*, 356 F.3d at 1262–63. "To constitute irreparable harm, an injury must be certain, great, actual, 'and not theoretical.'" *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (quoting *Wisconsin Gas Co. v.*

*FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). "[T]he party seeking injunctive relief must show that the injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Id.* (alteration in original) (emphasis in original).

Darin Atkinson, a co-owner of At Joy, testified credibly that the loss of At Joy's OBNDD registration has already strained Moving Plaintiffs' ability to sustain their livelihood while awaiting final inspection and anticipated receipt of COOs for its buildings from the State Fire Marshal. The business currently employs five people, including Atkinson and his wife, but during the planting and harvesting season, he expects the business will hire another ten employees. Atkinson testified that, in the wake of shutting down the business after the Final Order, "just making payroll right now is bleeding us because we have no income coming in from the farm and processing."

Atkinson further testified that At Joy produces "a large outdoor crop" requiring it to order 3,000 to 5,000 plants in advance of planting season, which begins in June each year. At Joy's outdoor crop would usually require an outlay of between $15,000 and $40,000 to purchase supplies for planting, but At Joy needs to have sales contracts in place to determine its supply needs for the season. The business in past years has relied on a large customer committing to buy the entire crop. However, due to the revocation of its registration by OBNDD, At Joy is unable to enter both the supply and sales contracts necessary to take part in the planting season that begins in June. If At Joy were currently operating, Atkinson expects it would secure commitments for $1.6 million in sales revenue for the 2026 outdoor grow season.

According to Atkinson, the Moving Plaintiffs need immediate relief to be able to prepare for, plant, and harvest this year's crop. At Joy's ability to supply a crop for the season requires it to place orders and corresponding financial outlays well before June 1. Business is already a month behind in preparations due to the ceasing of all operations due to the OBNDD Final Order. Based on the evidence, if At Joy is unable to enter the contracts this week, it is foreseeable and probable that their past customers will seek other suppliers. Atkinson testified that Moving Plaintiffs' business "will be done if we miss a crop." Without injunctive relief, At Joy will not be able to grow any crops this season, resulting in the probable permanent destruction of the outdoor grow business, with loss of valuable product, customer relationships, and other damages incapable of precise monetary calculation.

Although competitive injury alone does not necessarily constitute irreparable harm, it is an appropriate factor for the district court to consider on a motion for preliminary injunction. *See DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1271 (10th Cir. 2018) (describing "types of factors that district courts should consider," including "loss of customers, loss of goodwill, and further erosion of [movant's] competitive position in the . . . industry, [which] would be difficult to calculate in monetary terms") (citing *Dominion Video Satellite, Inc.*, 356 F.3d at 1264). "Bankruptcy or substantial loss of business may constitute irreparable harm, however, because 'loss of business renders a final judgment ineffective, depriving the movant of meaningful judicial review.'" *U.S. Auto Parts Network, Inc. v. United States*, 307 F. Supp. 3d 1373, 1377 (Ct. Int'l Trade 2018) (quoting

*Harmoni Int'l Spice, Inc. v. United States*, 211 F. Supp. 3d 1298, 1307 (Ct. Int'l Trade 2017)).

The evidence establishes that At Joy's inability to operate over the next few months, pending its anticipated receipt of COOs after passing 100% inspection, will likely be devastating for the Moving Plaintiffs, resulting in losses exceeding one million dollars, loss of customer goodwill and competitive business advantages, loss of unique plant strains, loss of livelihood, and other harm that is not quantifiable or compensable by money damages. "The Supreme Court has 'repeatedly recognized the severity of depriving someone of his or her livelihood.'" *Tanasse v. City of St. George*, No. 97-4144, 172 F.3d 63 (Table), 1999 WL 74020, at *3 (10th Cir. 1999) (unpublished) (quoting *FDIC v. Mallen*, 486 U.S. 230, 243 (1988)). "Because of the nature of this interest, a licensee erroneously deprived of a license cannot be made whole by mere reinstatement of the license. In fact, the interim period between erroneous deprivation and reinstatement can be financially devastating to the licensee." *Id*.

Jessica McGuire, Ph.D., who appeared on behalf of OBNDD, testified that OBNDD's director could carve out the outdoor grow from the revoked registration, but to do so, At Joy would have to surrender its existing OMMA licenses for the indoor and processing portion of its business. However, she acknowledged that there is currently a moratorium on the issuance of such licenses to new applicants. As such, Moving Plaintiffs' only option at this point places it in a Catch-22 situation: the only way At Joy could rescue its outdoor grow for the 2026 season would be to surrender its indoor and processing licenses, pending receipt of COOs for the buildings involved in those operations. If At Joy

11

were to forfeit its indoor and processing licenses in order to operate as an outdoor-only grow, it would be unable to obtain new indoor grow and processing licenses due to the moratorium, even if it receives the required COOs in the coming months, as it anticipates. Thus, absent preliminary injunctive relief, the Moving Plaintiffs have no viable option to continue their outdoor grow with the possibility of resuming the rest of their business operations upon receipt of a COO. *Cf., e.g.*, *S.F. Unified Sch. Dist. v. AmeriCorps*, 789 F. Supp. 3d 716 (N.D. Cal. 2025) (affirming finding of irreparable harm where, inter alia, plaintiffs faced a "Hobson's choice of cutting certain services to minimize the risk of being found in non-compliance or continuing to provide current services and programs . . . and run the substantial risk of losing all funding").

Accordingly, the Court finds that Moving Plaintiffs have demonstrated that, absent interlocutory injunctive relief, they face irreparable harm that is imminent, certain, great, actual, and not theoretical.

### B.    Likelihood of Success on the Merits

To obtain preliminary relief, a plaintiff must show "a substantial likelihood of prevailing on the merits." *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (quoting *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002)). This likelihood of success is a necessary predicate to relief even where "questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." *Id*. A likelihood of success on any one of multiple claims can be enough to satisfy this factor for the purpose of granting temporary injunctive relief. *See Roda Drilling Co.*, 2008 WL 4056229, at *5

12

(citing *Eve of Milady v. Impression Bridal, Inc.*, 957 F. Supp. 484, 487 (S.D.N.Y. 1997))

("Although Plaintiffs have asserted several claims against Defendant, Plaintiffs are not

required to establish a likelihood of success on every one of their claims for a preliminary

injunction to issue. Plaintiffs are required only to establish likelihood of success on the

claim that would result in the transfer of record title to them.").

Moving Plaintiffs argue that they are likely to succeed on their substantive due

process claim against Defendants. The Tenth Circuit, in considering a restaurant owner's

claim against a city health inspector, has opined that "[a]n arbitrary deprivation of an

individual's property right can violate the substantive component of the Due Process

Clause." *Camuglia v. The City of Albuquerque*, 448 F.3d 1214, 1222 (10th Cir. 2006)

(quoting *Clark v. City of Draper*, 168 F.3d 1185, 1190 (10th Cir. 1999)). For such a claim

to succeed, the claimed "arbitrariness must be extreme." *Id*.

> The ultimate standard for determining whether there has been a substantive
> due process violation is whether the challenged government action shocks
> the conscience of federal judges. It is well settled that negligence is not
> sufficient to shock the conscience. In addition, a plaintiff must do more than
> show that the government actor intentionally or recklessly caused injury to
> the plaintiff by abusing or misusing government power.

*Id*. (quoting *Moore v. Guthrie,* 438 F.3d 1036, 1040 (10th Cir. 2006)). The Tenth Circuit

has observed three principles that guide courts' evaluation of substantive due process

claims: "(1) the need for restraint in defining their scope; (2) the concern that § 1983 not

replace state tort law; and (3) the need for deference to local policymaking bodies in

making decisions impacting upon public safety." *Id*. at 1223 (quoting *Uhlrig v. Harder,* 64

F.3d 567, 574 (10th Cir. 1995) (collecting Supreme Court cases defining the scope of substantive due process)).

In considering the evidence presented, the Court finds it sufficiently likely that Moving Plaintiffs may establish Defendants' actions violated their substantive due process rights. Where a business license is only revocable or nonrenewable "for cause" under state law, it is a constitutionally protected property right requiring full due process before suspension or revocation. *Barry v. Barchi*, 443 U.S. 55, 64 (1979); *see also Perry v. Sindermann*, 408 U.S. 593, 601 (1972) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)); *Club Misty, Inc. v. Laski*, 208 F.3d 615, 618 (7th Cir. 2000) (citing *Perry* for proposition that, although state law expressly denied liquor license was "property," because license could only be revoked or not renewed "for cause," entitlement created by that license and interest in its renewal were constitutional property protected by the due process clause); *Price v. Reed*, 725 P.2d 1254, 1260 (Okla. 1986) ("One's claim to a driver's license is indeed a protectible property interest that comes within the shelter of the Fourteenth Amendment . . . as well as Article 2, § 7 of the Oklahoma Constitution."); *Johnson v. Bd. of Governors of Registered Dentists*, 913 P.2d 1339, 1345 (Okla. 1996) (Professional licenses are protected property rights requiring clear and convincing evidence before revocation); *Hund v. Cuomo*, 501 F. Supp. 3d 185, 203 (W.D.N.Y. 2020) ("The right to pursue a profession is a liberty interest for which one enjoys substantive due process protection.")

"The Director [of OBNDD] shall issue a written order to show cause to be served on the parties before annulling, conditioning, suspending, or revoking any registration."

OKLA. STAT. tit. 63 § 2-305. The statute further describes the grounds for revocation and prescribes the procedure for revocation, *see id.*, and provides that, "unless the Director determines that the issuance of such registration is inconsistent with the public interest," a registration shall issue. *See id.*, § 2-302(A). Because an OBNDD registration may only be revoked or withheld for cause, Moving Plaintiff's status as a registrant is a protected property interest under the Fourteenth Amendment. *See Barchi*, 433 U.S. at 64.

The Final Order prohibits At Joy from operating under all three of its OMMA licenses, even though undisputedly, a licensed outdoor grow does not require submission of a COO under Oklahoma law. The Director's Findings of Fact (Def. Ex. 2 at 055, ¶¶ 1– 6) consistently reference "buildings," "structures," "the building official," "building permits" and include findings that the Moving Plaintiffs' "use and occupancy of buildings and structures without a [COO] does not comply with state and local law" and such use and occupancy "concerns the public health and safety." The Findings of Fact do not even refer to the outdoor grow, much less indicate that it requires a COO or presents any concerns for public safety. (*See id.; see also id.*, Conclusions of Law, at 056-057, ¶¶ 14, 15, 16). The blanket refusal to renew registration for the outdoor grow based on the lack of a COO, which is not required for that business under Oklahoma law, is not rationally premised on fire safety, and the Court finds it likely comprises an "extremely arbitrary" act depriving Moving Plaintiffs of their constitutionally protected property rights.

The third *Uhlrig* principle—"the need for deference to local policymaking bodies in making decisions impacting upon public safety," *Uhlrig*, 64 F.3d at 574—does not undermine a finding that Moving Plaintiffs will likely succeed on their substantive due

process claim. OBNDD's stated reason for denying renewal, i.e., the lack of a COO, does not bear on the public safety of the *outdoor grow*, which Defendants admit does not require a COO and does not present the same safety concerns as indoor operations. *See Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 128–29 (1992) (refusing to characterize administration of government program as "arbitrary" due to presumption that it was "based on a rational decision-making process that takes account of competing social, political, and economic forces," a presumption that is here undercut by the lack of rationale as applied to the outdoor grow).

Plaintiffs have also presented evidence of colorable claims that they were denied equal protection and/or due process in the revocation of their business registration. Plaintiffs presented evidence through Wyandotte Fire Chief Jodi Francisco that other businesses, specifically a methadone clinic, were treated differently, wherein the State Fire Marshal and OBNDD accepted his report, rather than requiring a COO. The evidence also includes that approximately 500 medical marijuana businesses are operating indoor marijuana business without COOs, vitiating Defendants' purported public safety rationale. This allegedly selective enforcement may indicate disparate treatment of one class of business from others, rather than a rational relationship to a legitimate state interest, which supports a claim under the Equal Protection Clause. *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973); *Romer v. Evans*, 517 U.S. 620, 632 (1996).

Furthermore, evidence in the record indicates a likelihood that the OBNDD revocation process did not afford Moving Plaintiffs sufficient procedural due process in light of the severe impact it would have on Moving Plaintiffs' livelihood. OBNDD

enforcement proceedings also carry the risk of substantial fines and criminal prosecution. Based on the administrative record (Defs.' Ex. 2), and undisputed by Defendants, Plaintiffs were not permitted to depose the records custodian or take depositions, issue subpoenas, conduct discovery, obtain admissions from OBNDD's representatives or witnesses to establish (as they did in the hearing before this Court) that no COO was required for an outdoor grow and that there are no public safety concerns regarding an outdoor grow, or present evidence of the agency's selective enforcement practices. *See Goldberg v. Kelly*, 397 U.S. 254, 262 (1970), *superseded by statute on other grounds* (due process requires opportunity to be heard "at a meaningful time and in a meaningful manner" before deprivation of property) (internal citation omitted); *see also SEC v. Jarkesy*, 603 U.S. 109 (2024) (holding that, when an agency seeks to impose substantial penalties, due process requires a jury trial). The record thus raises substantial concerns that the process afforded by OBNDD was insufficient to shut down At Joy's entire business.

Defendants have provided little reasoning for revoking At Joy's entire registration, when undisputedly, only its indoor grow and processing operations require a COO. While OBNDD's representative cited "maintaining public health and safety" as the agency's primary purpose in requiring COOs for medical marijuana manufacturers, she also confirmed in her testimony that outdoor marijuana grow operations do not pose the same public safety and fire risk as indoor marijuana manufacturing operations. For example, an outdoor-only grow does not present the hazard of electrical fires or concern about egress out of a building that an indoor business does.

17

McGuire indicated that OBNDD cannot continuously monitor an outdoor grow operation with a building on the premises to make sure the building is not used. But McGuire acknowledged that hundreds of other manufacturers in the industry continue to operate to the present day without having submitted COOs. According to Defendants, approximately 500 medical marijuana businesses are operating *indoor* marijuana grows *without COOs*, under a "safe harbor" provision created by the Oklahoma Legislature and codified at 63 O.S. § 426.1(E), which allowed some marijuana manufacturers to continue to operate while they were in the process of obtaining a COO. (*See* Def. Ex. 9). That undisputed fact further undermines Defendants' purported public safety rationale for revoking At Joy's registration as to its outdoor grow operation.

Defendants argue that, pursuant to case law applying the Oklahoma Administrative Procedures Act, Moving Plaintiffs are barred from seeking judicial review of the Final Order because they did not seek reconsideration of OBNDD's decision or appeal it directly. (*See* Doc. 111 at 3 (citing *Conoco, Inc. v. State Dep't of Health*, 651 P.2d 125, 128 (Okla. 1982))). However, *Conoco, Inc*. held only that, "where an aggrieved party fails to perfect a timely appeal from a final administrative order, he cannot seek to challenge that order by means of an action for declaratory judgment." *Conoco, Inc*., 651 P.2d at 132. It explicitly excepted claims "which rest on constitutional provisions" and acknowledged that an action brought in federal court is not necessarily barred by a failure to exhaust state administrative remedies. *See id*. at 129-130. Defendants have not persuaded the Court at this stage that judicial review is barred. Nor have Defendants argued that the relief Moving Plaintiffs seek is barred under any abstention doctrine.

18

Accordingly, Moving Plaintiffs have shown a sufficient likelihood of success on the merits of at least one of their claims.

### C.    Balance of Equities and Public Interest[3]

The revocation of At Joy's registration, as set forth in the Final Order, is premised exclusively on At Joy's use and occupancy of "buildings and structures" without a COO. Although no COO has been issued for the buildings on At Joy's farm, the Moving Plaintiffs have sought to meet all applicable requirements to obtain COOs to resume indoor operations if and when issued. Moving Plaintiffs presented evidence that the process to obtain a COO has been complicated and prolonged, largely through no fault of their own.

Furthermore, At Joy is at the 50% inspection stage with both buildings and anticipates obtaining COOs for those buildings in a matter of months. Moving Plaintiffs showed that they have destroyed certain greenhouses that previously existed on their property to meet standards for a COO. The property includes a processing building, but Atkinson testified that the building "has been completely stripped" and has not been used to grow indoors since the revocation became effective. Defendants did not present any evidence refuting that testimony.

Moving Plaintiffs presented evidence that their outdoor growing process does not utilize any buildings or occupied structures. The plants are grown in the field, and then they are cut, frozen, packed, and transported in truck trailers directly from the field. If granted

---

[3]    Elements three and four merge "when the Government is the opposing party." *Nexstar Media, Inc. v. Walters*, 776 F. Supp. 3d 1053, 1060 n.3 (W.D. Okla. 2024) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

injunctive relief, At Joy would be one of only a handful of outdoor-only growing operations in the state. Dr. McGuire testified that there are only three active outdoor only businesses holding an OMMA license and a registration issued by OBNDD.

Defendants have not adequately justified the decision to revoke At Joy's registration as to an outdoor grow operation.[4] In fact, when OBNDD began to notify medical marijuana manufacturers of the new requirement to submit a COO, the agency expressly distinguished outdoor grows from indoor grows. In July 2023, OBNDD issued a Position Statement on Medical Marijuana Registrants Providing Certificates of Occupancy, in order to "clearly articulate" the agency's "position . . . regarding certificates of occupancy/final inspection [ ] related to medical marijuana manufacturers, while also providing the authority and justifications therefore[sic]." (Def. Ex. 6). OBNDD's Position Statement was distributed to registrants through a newsletter, emails, and publication on OBNDD's website. The Position Statement noted that the documentation requirements "**apply only to buildings utilized for commercial purposes. . . . As such, the [COO] requirements do not apply to open-to-the-sky outdoor grows and such businesses can plant their crops outdoors without having to obtain a [COO]**." *Id*. at 6 (emphasis added). It further stated that the agency's "effort has been narrowly tailored to ensure public safety." *Id*. at 7.

---

[4]     Defendants presented evidence that outdoor marijuana growing operations are subject to certain fencing requirements and that At Joy's outdoor grow does not currently comply with those requirements. However, it is undisputed that Moving Plaintiffs have been authorized to continuously operate their outdoor grow for years without additional fencing requirements. Notably, the Final Order does not cite fencing or any aspect of Plaintiff's outdoor grow as a reason for revocation.

Atkinson affirmed repeatedly in his testimony that Moving Plaintiffs have sought to comply with applicable rules and regulations. Atkinson testified that he and his business partners investigated the state's permitting requirements to start At Joy in 2020. He testified that Moving Plaintiffs have invested up to $2 million in the business in the years since. He described reaching out to state and local officials numerous times in an effort to ensure At Joy could continue to operate in good standing after the COO requirement was implemented. According to Atkinson's testimony, the process of complying with the new COO requirement has been beset with delays, misinformation, and changing requirements that he and his business partners have worked to overcome in order to sustain their business. He indicated that Moving Plaintiffs have struggled to keep up with changing rules and expressed frustration that "the goalpost just keeps moving on us."

In light of the evidence presented and applicable law, Defendants' proffered justifications do not outweigh the significant harm the Moving Plaintiffs will suffer in the absence of preliminary relief. Any public health and/or safety justification is undercut by the undisputed fact that many other medical marijuana businesses—approximately 500, according to OBNDD's counsel—have been and continue to be allowed to operate *indoor* growing and/or processing operations, *even without the COOs required for indoor operations*, pending future action by OBNDD.

Defendants have not shown that any substantial harm to the public interest would result from the granting of limited, preliminary relief allowing At Joy to continue operating its outdoor grow as they have done continuously since 2020. In supplemental briefing, Defendants contend that the requested injunctive relief would require the Court to use its

equitable power improperly to facilitate illegal conduct, in light of standing federal law criminalizing the possession and distribution of marijuana. (Doc. 111 at 7) (citing *Orig. Investments, LLC*, 542 F. Supp. 3d 1230).[5] However, no settled law holds that the Court cannot enforce the constitutional rights of state-sanctioned medical marijuana businesses, and courts have disagreed on the legality issue in circumstances inapposite to the evidence here. *See, e.g.*, *Ne. Patients Grp. v. United Cannabis Patients & Caregivers of Maine*, 45 F.4th 542, 560 n.2 (1st Cir. 2022) (Gelpí, C.J., dissenting) (collecting case law in support of dissent against granting equitable relief to a medical marijuana business); *Fourth Corner Credit Union v. Fed. Rsrv. Bank of Kan. City*, 861 F.3d 1052 (10th Cir. 2017) (per curiam).

Moreover, Congress has promulgated a policy of not interfering with state-law-compliant medical marijuana businesses. For over a decade, the Department of Justice has been explicitly denied congressional appropriations to prosecute the state-law-compliant participants of these businesses in those states that permit the manufacture, sale, and use of medical marijuana. *See United States v. McIntosh*, 833 F.3d 1163, 1177 (9th Cir. 2016) (finding that the medical marijuana appropriations rider "prohibits DOJ from spending funds from relevant appropriations acts for the prosecution of individuals who engaged in conduct permitted by the State Medical Marijuana Laws and who fully complied with such laws"); *Stacy*, 156 F.4th at 1013 (noting that "the rider bars the DOJ from spending appropriated funds to prosecute private individuals who comply with state medical-marijuana laws"); Commerce, Justice, Science; Energy and Water Development; and

---

[5]    Defendants also included this affirmative defense in their motion to dismiss (Doc. 94), which is not yet ripe for determination, as it is not fully briefed.

Interior and Environment Appropriations Act, 2026, Pub. L. No. 119-74, § 531 ("None of the funds made available under this Act to the Department of Justice may be used . . . to prevent [certain states, including Oklahoma] from implementing their own laws that authorize the use, distribution, possession, or cultivation of medical marijuana."). In light of that federal policy, made explicit through congressional appropriations, the Court is unpersuaded that it cannot exercise its equitable power where licensed, compliant medical-marijuana businesses seek redress for alleged violations of their constitutional rights.

The appropriations rider was not considered in Defendants' cited authority, *Original Investments, LLC*. In that case, the plaintiff sought to bypass Oklahoma's residency requirement in order to start a medical marijuana business. The court defined the issue before it as "whether the court should facilitate the plainly criminal activity in which plaintiff proposes to engage in the State of Oklahoma." 542 F. Supp.3d at 1231. The plaintiff had pointed to a policy of "selective inaction by the executive branch" with respect to state-sanctioned medical marijuana businesses, arguing that policy justified the court's exercise of equitable authority, notwithstanding the letter of the law.

The district court rejected that argument, noting that the plaintiff's evidence reflected *executive branch* policy—not Congress's intent. *See id*. at 1237 (noting the Court is "bound to follow the law as written and may not depart therefrom based on enforcement decision made by the executive branch." *Id*. (citing *In re: Way to Grow, Inc.*, 597 B.R. 111 (Bankr. D. Colo. 2018)). Thus, the court declined to enable the plaintiff to "engage in activities that Congress has expressly declared to be criminal under federal law." *Id.* at 1235. No party apparently raised, and the district court did not address the congressional

23

policy expressed under, the appropriations rider. However, Sec. 531 of the referenced congressional appropriations bill is squarely an exercise of Article I authority and an expression of Congress's intent.

Moreover, under the expedited timeline the Court set on the Emergency Motion, Plaintiffs have not had an opportunity to respond to Defendants' supplemental brief. Defendants also raised this issue in their Motion to Dismiss, to which Plaintiffs' response is not yet due. In the context of the present request for temporary injunctive relief, the Court finds the illegality defense argued by the Defendants to be insufficiently developed at this stage and therefore neutral with respect to the Moving Plaintiffs' likelihood of success on the merits as well as the balancing of equities and public interest.

Moving Plaintiffs presented evidence that At Joy has continuously operated a licensed outdoor medical marijuana grow since 2020. With its license renewed annually, the outdoor grow was established, ongoing, and peacefully operating without apparent incident for more than five years. Defendants have offered no compelling evidence of any hazard at Moving Plaintiffs' property or in At Joy's outdoor grow operation.

Accordingly, at this early stage of the litigation, the Court finds that the balance of equities heavily supports allowing Moving Plaintiffs to continue to operate their outdoor grow, pursuant to At Joy's currently active OMMA outdoor grow license, pending a determination on the merits of At Joy's claims.

The Court notes that the hearing on the Emergency Motion was set on an expedited basis and was limited in scope. All other motions, including Defendants' Motion to Dismiss for Failure to State a Claim (Doc. 94), will be addressed in due course and after

consideration of the parties' briefing and, to the extent the Court deems appropriate, any further hearings that may be necessary or appropriate.[6]

## IV.    Conclusion

The Emergency Motion by Plaintiffs At Joy Growers and Their Owners for Temporary Restraining Order and Preliminary Injunction (the "Emergency Motion"). (Doc. 96) is **granted**, as specified herein.

IT IS THEREFORE ORDERED that a **PRELIMINARY INJUNCTION** shall issue as follows:

1. **Enforcement Prohibition.** Defendants OMMA and OBNDD, and all officers, agents, employees, attorneys, and persons acting in active concert or participation with them, are hereby **PROHIBITED** from enforcing, giving effect to, or taking any action in furtherance of the November 14, 2025 Final Order (OBNDD Case No. 2024-1494) as it applies to At Joy Growers LLC's outdoor grow operations (OMMA License No. GAAO-6IC9-YBBG). Defendants OMMA and OBNDD shall not treat the revocation as effective with respect to the outdoor grow operation or take any adverse action against Moving Plaintiffs' outdoor grow business based on that Final Order to revoke, suspend, interfere with, or otherwise impair Moving Plaintiffs' OBNDD Registration No. 77283 solely as it relates to the outdoor grow.

---

[6]    The parties have proposed a briefing schedule for several other motions, including Defendants' Motion to Dismiss for Failure to State a Claim (Doc. 94); a forthcoming motion for preliminary injunction to be filed on behalf of *all* Plaintiffs; and an anticipated motion for class certification (*See* Doc. 95). A scheduling order will be issued in the coming days for briefing and other submissions in relation to those motions.

2. **Registration Status.** Defendants OMMA and OBNDD are **PROHIBITED** from representing, treating, or acting upon OBNDD Registration No. 77283 as revoked insofar as that registration pertains to Moving Plaintiffs' outdoor grow operations. Defendants OMMA and OBNDD shall make no record entry, transmit no notice, and take no administrative or enforcement step that treats the outdoor grow component of Registration No. 77283 as revoked or inactive pursuant to the Final Order, during the pendency of this Preliminary Injunction. For the avoidance of doubt, this Order does not compel Defendants to issue a new registration, grant a new license, or conduct any new administrative proceeding; it restores only At Joy's ability to lawfully operate its outdoor grow operation as it did before the Final Order became effective.

3. **No Interference with Contracting.** Defendants OMMA and OBNDD are **PROHIBITED** from taking any action, direct or indirect, that interferes with Moving Plaintiffs' ability to enter into contracts for the 2026 outdoor grow season based upon, or in furtherance of, the Final Order as to the outdoor grow.

4. **Scope.** This Preliminary Injunction is strictly limited to At Joy Growers LLC's outdoor grow operations. Nothing herein shall be construed to affect the revocation of At Joy's OBNDD registration as it applies to indoor grow or processing operations.

5. **Duration.** The Preliminary Injunction will remain in effect until this Order is modified or dissolved by further Order of this Court, or until the parties otherwise stipulate in writing, whichever occurs first.

6. **Appealability.** This Order constitutes a preliminary injunction issued pursuant to Federal Rule of Civil Procedure 65(a) and is immediately appealable as of right under 28 U.S.C. § 1292(a)(1).

6. **Bond.** No security bond is required under Federal Rule of Civil Procedure 65(c).

**IT IS SO ORDERED** this 26th day of February, 2026.


Christine D. Little
United States Magistrate Judge